UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | **No. 3:02-CV-1725 (AWT)** |
| | ) | |
| SCOTT CABLE COMMUNICATIONS, INC. and | ) | (Bankruptcy Appeal) |
| STATE STREET BANK AND TRUST CO. as | ) | |
| Indenture Trustee for certain note holders | ) | |
| | ) | |
| Appellees | ) | |
| | ) | **[file separately in each case;** |
| UNITED STATES OF AMERICA, | ) | **motion to consolidate pending]** |
| | ) | |
| Appellant, | ) | |
| v. | ) | **No. 3:03-CV-357 (AWT)** |
| | ) | (formerly No. 3:03-MC-12) |
| AKIN, GUMP, STRAUSS, HAUER & FELD, LLP, | ) | |
| | ) | |
| Appellee. | ) | |

*Caption as it Appears in the Bankruptcy Court*

| | | |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | (Bankr. Ct. Case No. 98-51923) |
| SCOTT CABLE COMMUNICATIONS, INC., | ) | (Chapter 11) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**REQUEST THAT COURT TAKE JUDICIAL NOTICE OF
HEARING AND ORDER IN DELAWARE BANKRUPTCY
COURT POSSIBLY BEARING ON ISSUES IN THESE APPEALS**

The United States requests that the Court take judicial notice of the attached transcript of

the hearing of October 1, 2003, before the Delaware Bankruptcy Court (Walsh, J.),[1] and the

attached letter ruling dated October 16, 2003. The Connecticut Bankruptcy Court, which retains

---

[1] The reporter indicated this was a preliminary transcript and errors might yet be corrected.

jurisdiction over the bankruptcy case from which these appeals arose, previously transferred venue over a an adversary complaint to the Delaware Bankruptcy Court. In the adversary complaint, the United States claims that certain debt securities – called "Junior Secured Subordinated PIK Notes" – are really equity securities. In the alternative, the United States seeks equitable subordination of the note holders' security interest in all of the debtor's assets, so that the administrative tax claim would have priority. The United States further provides the following explanation of the relationships among various issues in order that the Court may better understand the bearing of the matters discussed in the transcript and letter ruling on the issues in these appeals.

**Procedural History of Appeals**

1. No. 3:02-CV-1725 is an appeal from the Bankruptcy Court's order entered July 18, 2002, denying the government's motion to convert the case to Chapter 7 or at least appoint a Chapter 11 trustee ("first appeal").[2/] The debtor moved to dismiss that appeal and the government responded by opposing dismissal and alternatively seeking leave to appeal under Bankruptcy Rule 8003. This Court then stayed deadlines for merits briefs, pending its determination of the  motion to dismiss the appeal.

2. No. 3:03-CV-357 (the "second appeal"), originally docketed as No. 3:03-MC-12, was commenced by the United States' motion pursuant to Bankruptcy Rule 8003 for leave to appeal the Bankruptcy Court's December 23, 2002 order granting interim compensation to debtor's counsel. Before that Rule 8003 motion was docketed, the government filed, on January 8, 2003, a motion in No. 3:02-CV-1725 to consolidate the two appeals and for a stay of the bankruptcy court's 12/23/02 order pending appeal. ["Stay/Consolidation Motion"].

3. A compensation order was also entered by the Delaware Bankruptcy Court (on

---

2/ A trustee is automatically appointed upon conversion to Chapter 7.

December 12, 2002) and the United States moved for leave to appeal it to the Delaware District Court ("the Delaware appeal"), and separately moved for a stay of the 12/12/02 order. The Delaware appeal was assigned to Judge Kent Jordan and is docketed as No. 03-CV-33-KAJ in the Delaware District Court.

4. On January 28, 2003, a telephonic preliminary hearing was held before this Court. During that hearing, Judge Thompson noted that he had reviewed the pending motion of the debtor to dismiss the first appeal and the government's response opposing dismissal and alternatively requesting leave to appeal under Rule 8003. Although not ruling definitively, Judge Thompson indicated that he was inclined to rule that the first appeal would go forward.

5. On February 6, 2003, Judge Thompson, under docket No. 3:03-MC-12, granted the United States' motion for leave to appeal from the Bankruptcy Court's 12/23/02 order.

6. On or about March 10, 2003, the United States filed a motion seeking several forms of relief regarding procedure, that the appellees then agreed to. First it sought to relieve the parties of the need to designate the record under Bankrutpcy Rule 8006 in the second appeal, since most if not all items needed are either in the record transmitted previously with respect to the first appeal, or were made exhibits to the Rule 8003 motion and response in the second appeal, with the parties able to submit additional record items with their merits briefs if necessary. Second it sought to have the Court provide that briefs in the second appeal not be due until 21 days after the Court determines whether to consolidate the appeals and, if the appeals are consolidated, that the parties, at their election, be permitted to file a single combined brief with an enlarged page limit, but that a combined brief not be mandated (for reasons explained in the March 10, 2003 motion).

7. The March 10, 2003 motion also informed this Court that the Delaware District Court had stayed the matter before it pending this Court's determination of this appeal.

8.   Currently pending before this Court are (1) the debtor's motion to dismiss the first appeal; (2) the United States' motion to continue in effect the stay of the 12/23/02 order of the Connecticut Bankruptcy Court, and (3) the motion to consolidate the two appeals.

## Synopsis of Core Issues in Appeals

9.   The two appeals include a range of issues that are beyond the scope of this submission, but the core issues are capsulized to better reveal the bearing of the attached transcript.  Among the grounds given for conversion to Chapter 7 or the appointment of a Chapter 11 trustee – the denial of which is on appeal in No. 3:02-CV-1725 – were (1) the impossibility of implementing a Chapter 11 reorganization, (2) the continuing diminution of the estate due in part to the litigation expense of the Delaware adversary proceeding, particularly if the debtor's attorneys are indeed entitled to an administrative priority claim for compensation (one of the issues in the second appeal); and (3) the conflict of interest of the debtor's current management (with a right to 21.5% of any recovery on the Junior Subordinated PIK Notes).  The United States maintains that the conflict influenced the debtor's determination to side with the note holders and indenture trustee in the Delaware adversary proceeding, and also influenced the debtor's determination to assert the debtor's attorney-client privilege and attorney work product immunity in response to the United States' discovery in that adversary proceeding.  It is the United States' position (to be addressed in briefs on the merits in these appeals) that the estate's fiduciary – trustee or a debtor in possession (see 11 U.S.C. § 1107) – owes its primary duty to unsecured creditors and owes secured creditors only a limited duty of preserving their collateral.  Thus, the United States maintains that a trustee would never have intervened in the Delaware adversary proceeding on the side of trying to uphold a security interest against the estate, and would instead have a duty to seek to avoid the lien, unless the trustee felt the arguments were meritless.  A trustee also assumes control of the debtor's

attorney-client privilege and must act in the best interests of the estate when determining whether to waive it.  See C.F.T.C. v. Weintraub, 471 U.S. 343, 355-56 (1985).

10.  In the second appeal, again there are a myriad of sub-issues, but one of the core issues is whether it is appropriate to use estate funds to compensate the estate's lawyers for helping to uphold a security interest *against* the estate, particularly when the estate's lawyers receive their marching orders from management holding a 21.5% personal stake in having the security interest be upheld.

### Purpose of 10/1/03 Hearing in Delaware

11.  The attached transcript reflects a hearing on the government's motion to compel production of documents and for follow-up depositions, and more specifically its claim to overcome the various assertions of the attorney-client privilege and work product immunity. Among the arguments the government advanced in its motion papers prior to the hearing was the crime-fraud exception to the assertion of the privileges.  Under the crime-fraud exception, the government argued that it presented a prima facie case that the security interest for the note holders, which was issued pursuant to the prior Chapter 11 plan confirmed in the debtor's previous bankruptcy case in Delaware in 1996, was created to hinder, delay, or defraud the government by providing the holders of the virtually worthless pre-bankruptcy unsecured notes with new secured subordinated notes in an attempt to try to position the notes to be paid ahead of capital gain tax that they knew would have to be recognized in any future sale of the debtor's assets.

### Judge Walsh's Bench Ruling, Comments, and Inquiry

12.  With respect to the discovery motion before the Delaware Bankruptcy Court, Judge Walsh agreed that the government had presented a prima facie case of fraud and ordered an in camera inspection of the documents being withheld under the assertion of the attorney-client

privilege, defering whether to order their disclosure. In his letter ruling, Judge Walsh then ordered the disputed documents turned over to the government (except for one that he found to be irrelevant). The United States will now be asking for follow-up depositions (based on the information contained in the documents) and for the re-deposition of debtor's former outside corporate counsel who refused to answer many of his deposition questions on grounds of attorney-client privilege.[3]

13. On the one hand, if debtor complies with Judge Walsh's order, and assuming further that the government is permitted to take depositions of the debtor's former attorneys (regarding their activities during the previous bankruptcy case in Delaware) and they answer all questions (on court orders compelling them to do so if necessary), then one of the several grounds for conversion or the appointment of a Chapter 11 trustee would be mitigated – that is, the government would no longer need a trustee simply to have him or her waive the privilege.

14. On the other hand, the fact that Judge Walsh found enough evidence to support invoking the crime-fraud exception is strong support for the government's contention that the conflicts of interest of the debtor's management require the appointment of a *disinterested* trustee. Apart from the financial conflicts, Judge Walsh indicated during the hearing that the evidence presented by the government – which the government proffered only as evidence of possible fraud for the purpose of establishing the "crime-fraud exception" to the attorney-client privilege – also "possibly implicates a bankruptcy fraud under Section 157 of Title 18."

15. Furthermore, Judge Walsh's comments during the hearing reveal that this bankruptcy case does not belong under Chapter 11 regardless of the conflict of interest issue. Judge Walsh

---

[3] The United States previously took the deposition of Stanley Bloch, Esq., who was outside corporate counsel for Scott Cable during the 1990s, but Mr. Bloch declined to answer many questions, asserting attorney-client privilege. The United States deferred moving to compel answers to the deposition questions that Mr. Bloch refused to answer, because the United States was awaiting a ruling on its motion to compel the production of the allegedly privileged documents.

began the hearing by commenting *sua sponte* on the apparent inability to confirm any plan of reorganization and, not being completely familiar with the instant appeals, wondered why the case had not been converted to Chapter 7 and, if it was converted, whether a Chapter 7 trustee would be required to pay the administrative tax claim regardless of the outcome of the adversary proceeding. Judge Walsh also observed that the third-party releases that could be included in a plan of reorganization could not be ordered in a Chapter 7 case. Although difficult to be sure, he seemed also to be wondering whether the lack of such third-party releases would leave the government free, if the case is converted to Chapter 7, to pursue collection of the tax through third parties, perhaps including the note holders. See transcript at 4.

16. Without realizing that a motion to convert had been filed and its denial was on appeal, Judge Walsh, after pointing out that it is impossible to confirm a plan without full payment of the administrative tax claim, added: "And I guess my question is why doesn't somebody move to convert the case to Chapter 7." Judge Walsh also wondered whether conversion might somehow moot the adversary proceeding – "I guess I'm wondering why this dispute can't be resolved in the context of the Chapter 7 case without regard to the adversary proceeding being resolved." Judge Walsh also observed that "conversion or dismissal is inevitable" if a plan cannot be confirmed, and was "curious as to why that course of the proceeding hasn't taken place" already. (Transcript at p.6-7.) Indeed, the only question is when the case will be converted or dismissed – the government seeks immediate conversion whereas the debtor seeks to keep it in Chapter 11 solely to finish the Delaware adversary proceeding and then, assuming it and the note holders prevail therein, they will then seek dismissal. As Judge Walsh put it, though, "I don't know how – I don't know why it's not

proceeding to a Chapter 7 or dismissed."[4/]  (Ibid. at 7.)

17.   Counsel at the Delaware hearing – for the government and the debtor – were not certain whether the motion on appeal before this Court included only a motion to appoint a Chapter 11 trustee or also a motion to convert to Chapter 7 (it seeks both forms of relief in the alternative).  (Ibid. at 4-7.)  At the end of the hearing, Judge Walsh directed the parties to file letter briefs in twenty days, with a statement of position, first, "as to whether you people believe that it is not possible to have a Chatper 11 plan confirmed in the pending case without paying the $29 million worth of tax liability."  (The tax claim is actually much larger.)  "Next, assuming that it is not possible to have such a plan, what would be the effect of converting the case to Chapter 7 in terms of, number one, whether the Chapter 7 Trustee would be obligated to pay the tax.  And two, if not so obligated, what recourse the government would have to any other person or entity other than the debtor's estate with respect to the collection of the tax."  (Ibid. at 56.)  Judge Walsh explained that the latter inquiry should recognize that there are no third-party releases in a Chapter 7 liquidation.  (Ibid. at 57.)  Judge Walsh acknowledged that he had no authority over conversion, but indicated that he "may want to follow-up with Judge Shiff on this" depending upon the answers – again no doubt reflecting Judge Walsh's lack of knowledge that Judge Shiff already denied conversion and the issue is now before this Court on appeal.  (Ibid. at 58.)

18.   We are also attaching hereto a copy of the letter brief submitted in response to Judge Walsh's request.  We note that the answer to Judge Walsh's question as to whether a Chapter 7 trustee would have a duty to pay the tax is partly a function of the outcome of the Delaware

---

[4/] In its merits brief, the government will argue that is improper to keep a bankruptcy case in Chapter 11 for this purpose.  The debtor has no intention of achieving any lawful bankruptcy purpose – whether reorganizing or discharging indebtedness, or liquidating for the benefit of *unsecured* creditors.  It is not a purpose of bankruptcy to liquidate an estate solely for the benefit of *secured* creditors and then dismiss the case because there is no longer any bankruptcy purpose.

adversary proceeding and thus would not moot that proceeding with two exceptions, which are related to issues in the first appeal.  The government's motion to convert argued that a *disinterested* Chapter 7 trustee could exercise the trustee's exclusive authority to utilize § 506(c) to charge the expenses of disposing of a secured creditor's collateral against the secured creditor to the extent that the disposal benefitted the secured creditor.  If a Chapter 7 trustee filed a § 506(c) motion and prevailed against the indenture trustee and note holders, that would moot the Delaware adversary proceeding.  Additionally, a trustee could file a § 544 avoidance action with respect to the security interest in favor of the note holders and try to prove that the granting of the security interest was a fraudulent transfer.[5/]  But unless the trustee did prevail in a § 506(c) motion or a § 544 action, the only way the tax gets paid, even under Chapter 7, is if the government (possibly joined by a trustee) were to prevail in the Delaware adversary proceeding by either having the debt be determined to be equity in fact, or by winning equitable subordination of the security interest.   Nonetheless, because a trustee might bring a § 506(c) motion and/or a § 544 action[6/] – which provide alternative possibilities for collecting the tax – the United States indeed maintains that this is one of the reasons that it was error to deny the government's motion to convert and instead allow the debtor to stall the case in an untenable Chapter 11 indefinitely while the debtor's conflicted management continues to try to aid the note holders in defending against the government's debt recharacterization and equitable subordination contentions.

        19.  While the matters discussed in the transcript bear more on the merits issues in these

---

[5/] This is not a remote hypothesis – the government maintains that the information it obtained through discovery, even without piercing the attorney-client privilege, already supports many of the elements of a state-law fraudulent transfer action, which the trustee could bring under § 544.  Some of the evidence (certainly not all) is discussed by government counsel Alan Shapiro in the attached transcript.

[6/] § 544 claims require adversary complaints rather than motions.  *See* Bankruptcy Rule 7001.  A trustee's § 544 action could of course be consolidated with the government's equitable subordination action.

appeals, they also bear on whether the order denying conversion to Chapter 7 is an appealable order and, if not, whether the Court should grant discretionary interlocutory appeal. The discretionary appeal issue in particular considers the extent to which there exists a reasonable ground for difference of opinion on an issue of law, the resolution of which will materially advance the termination of the particular dispute at hand.[7] Similarly, if the denial of conversion is not simply a final ruling on conversion, then the issue of appealability under the "collateral order" doctrine implicates whether there is a separate and important issue of law and whether deferring resolution of the issue may harm the appellant irreparably. The government's opposition to dismissal of the appeal (filed on or about October 15, 2002) argues that whether a conflict of interest under these circumstances requires the appointment of a trustee is a separate issue of law. Whether it is proper to deliberately stall a case in Chapter 11 and deny a motion to convert to Chapter 7 when there is no possibility of confirming a plan (of liquidation or reorganizaton), simply so the debtor can remain "in possession" and thereby both control the litigation decisions on behalf of the estate and have the debtor's counsel get paid out of estate funds, is also a separate legal issue that we maintain supports appeal under the collateral order doctrine. And, the government may be irreparably harmed by allowing that circumstance to continue because the administrative compensation claims of the debtor's counsel will be entitled to share pro rata with the administrative tax claim (unless the compensation is denied as a result of the second appeal, without regard to conversion to Chapter 7).

    20.  Finally, any matter bearing on the merits in either appeal, *ipso facto* bears on whether to grant a stay pending appeal since the likelihood of success on the merits is one of the issues.

----

[7] As this Court ruled in granting leave to appeal the compensation order, 28 U.S.C. § 1292(b) does not control the exercise of discretion under 28 U.S.C. § 158(a)(3), but the § 1292(b) factors do deserve some consideration.

WHEREFORE, the United States asks that the Court take judicial notice of the attached transcript and ruling and give them due consideration in determining the pending motions in the appeal from the denial of conversion to Chapter 7, and again in later determining the merits of the that appeal if it is not dismissed.

KEVIN J. O'CONNOR
United States Attorney

ANN M. NEVINS
Assistant United States Attorney
Federal Bar No. CT06484
915 Lafayette Blvd., Room 309
Bridgeport, CT  06604
(203) 696-3000


*/s/ Peter Sklarew*
PETER SKLAREW
Federal Bar No. CT 17864
U.S. Department of Justice, Tax Div.
P.O. Box 55
Washington, D.C. 20044-0055
(202) 307-6571

Certificate of Service

IT IS CERTIFIED that service of the **REQUEST FOR JUDICIAL NOTICE OF HEARING IN DELAWARE BANKRUPTCY COURT POSSIBLY BEARING ON ISSUES IN THESE APPEALS** has this 21st day of October, 2003, been made upon the following by regular mail (and also by e-mail, omitting the attached transcript), addressed to:

Daniel H. Golden
Akin, Gump, Strauss, Hauer & Feld, LLP
590 Madison Avenue
New York, NY  10022

Patricia Beary
Asst. U.S. Trustee
265 Church Street, Ste. 1103
New Haven, CT  06510-7016

Craig I. Lifland
Zeisler & Zeisler
558 Clinton Avenue
Bridgeport, CT  06605

Joan Pilver
Assistant Attorney General
State of Connecticut
55 Elm Street, 5th Floor
Hartford, CT 06141

Ira Goldman
Shipman & Goodwin
One American Row
Hartford, CT  06103-2819

 /s/ *Ann M. Nevins*
ANN M. NEVINS
ASSISTANT UNITED STATES ATTORNEY