

| | |
|---|---|
| Section Tel. No. (202) 307-6533<br>Section Fax No. (202) 514-5238<br>Attorney: Peter Sklarew<br>Attorney's Direct Line: (202) 307-6571 | **U.S. Department of Justice**<br>**Tax Division**<br>*Civil Trial Section, Northern Region*<br>P.O. Box 55<br>Washington, D.C. 20044<br>555 Fourth Street, N.W. (Rm. 7804)<br>Washington, D.C. 20001 |

CMN: 9860451

**FEDERAL EXPRESS**                                             October 20, 2003

Hon. Peter J. Walsh
United States Bankruptcy Judge
824 Market Street, 6th Floor
Wilmington, Delaware 19801

      Re:    United States v. State Street Bank and Trust Co.
                Adv. No. 01-4605               (USBC DE)

Dear Judge Walsh:

      At the hearing on October 1, 2003, Your Honor requested that the parties submit letter briefs stating their positions on the following questions: (1) whether the parties agree that it is not possible to have a Chapter 11 plan confirmed without paying the administrative tax claim; (2) assuming that it is not possible to have such a plan, what would be the effect of converting the case to Chapter 7 in terms of whether the Chapter 7 trustee would be obligated to pay the tax; and (3) if the trustee would not be so obligated, what recourse would the government have to any other person or entity other than the debtors' estate, bearing in mind that there are no third-party releases in a Chapter 7 liquidation. Your Honor acknowledged that the Delaware Bankruptcy Court does not have these issues before it, but Your Honor indicated that you "may want to follow-up with Judge Shiff on this," depending upon the answers.

      I am answering the inquiry in lieu of Mr. Shapiro because he is focusing on the merits of the adversary proceeding, while I have been handling the matters now included in the various pending appeals in both Connecticut and Delaware. That is why Mr. Shapiro was uncertain at the hearing whether the pending appeals in Connecticut already include an issue over conversion. Debtor's counsel similarly expressed some uncertainty at the hearing, but thought that only a motion to appoint a Chapter 11 trustee had been made and denied, and was the subject of an appeal. In fact, conversion is at issue in the Connecticut appeal, and I think it is useful, as a predicate to answering your inquiry, to briefly chart the history of that motion and the various grounds asserted in support of it.

### History of Motion to Convert

      On June 29, 2000, when the case was being handled by a trial attorney who has since relocated to the IRS, the United States filed a motion in the Chapter 11 case to convert to Chapter 7, pursuant to § 1112(b). The original motion was premised on the debtor's inability to confirm a plan. At a hearing on August 8, 2000, the motion was "marked off" and deferred but expressly "not withdrawn." This reflected that Judge Shiff had recently granted summary judgment denying the government's adversary complaint and, unless the government prevailed in the appeal taken to the Connecticut District Court, the government would have no basis to object to distribution of the "collateral" to the indenture trustee for the Junior Secured Subordinated PIK Noteholders. The summary judgment in the adversary proceeding was eventually reversed in early 2001, after which Judge Shiff transferred the adversary proceeding to the District of Delaware.

On May 29, 2001, the United States requested a hearing on its dormant motion to convert. Shortly thereafter, on or about July 3, 2001, the government supplemented the motion to convert, arguing that the debtor's management had a conflict of interest in determining whether to have the debtor in possession prosecute a § 506(c) claim to recover the capital gains tax from the proceeds of the § 363 sale of assets as an expense of disposing of the assets. This activity was prompted by the recent decision of the Supreme Court in *Hartford Underwriters, Ins. Co. v. Union Planters Bank*, 530 U.S. 1 (2000), holding that only a trustee (or debtor in possession with the powers of a trustee) may invoke § 506(c).[1]

On July 23, 2001, Judge Shiff informed the parties that he was deferring the motion to convert indefinitely. During a hearing held the next day (July 24, 2001), Assistant U.S. Attorney Ann Nevins stated: "Your Honor, I'd also just like to state for the record that the decision to defer the motion to convert . . . was made by the court, not at the request of the Internal Revenue Service. . . ." The Court responded: "Yes, yes. Right. I understand that. I said I wasn't going to do it [calendar the motion], and you didn't -- what were you going to do[?]. You were stuck."

The motion to convert thus became dormant again, until the government reminded the court of it during a hearing on a cash collateral stipulation by the debtor and indenture trustee, and requested that the two contested matters (motion to convert and request for a cash collateral order) be consolidated. Judge Shiff then determined that the motion to convert had to be re-noticed for hearing and the government re-noticed it. On May 22, 2002, the debtor and the indenture trustee filed oppositions to the conversion motion.

On May 31, 2002, the United States filed a reply and "supplemented" its original motion to convert, based on intervening events during the past year since the motion was last supplemented, and for the first time made an alternative request for the appointment of a Chapter 11 trustee. The supplement expanded considerably upon the government's prior arguments regarding the conflicts of interest of the debtor's manager, with his 21.5% interest in the recovery by the Junior Secured Subordinated PIK Noteholders. The United States argued that a trustee (Chapter 11 or 7) would have a duty to object to the noteholder's claim, or seek to avoid the lien securing it, if there were reasonable grounds to allege that the notes were really equity securities or if the lien arguably was avoidable. See § 544 and § 704(5). A trustee, the government also argued, would almost certainly waive the debtor's attorney-client privilege, so that the trustee and the United States could learn of the communications between the former debtor and its former counsel during the prior bankruptcy case and learn whether the debtor contemplated the capital gains tax that would be incurred in a sale of assets and whether the creation of a security interest was designed to enable them to extract the value of the assets without paying the tax.

The May 31, 2002 reply and supplement to the motion to convert also cited the continuing diminution of the estate. It thus observed that well over $1 million in interim fees had been allowed for debtor's counsel, before the debtor even moved to intervene in the adversary proceeding, and that the pending cash collateral stipulation contemplated expending another $800,000 by the end of 2002 alone, with no end in sight.

The government's motion to convert was supported by the State of Connecticut (which has a $1.2 million tax claim) and by the United States Trustee (whose statutory function is to monitor for improprieties by estate fiduciaries, including potential conflicts of interest). *See* July 18, 2002 Order at 2 n.2. (The order is unofficially available at 2002 WL 1988166.)

---

[1] *Hartford Underwriters* abrogated the conclusion in *United States v. Boatman's First Nat. Bank*, 5 F.3d 1157 (8th Cir. 1993), that a creditor may prosecute a § 506(c) recovery, but did not disturb *Boatman's* treatment of tax incurred in a transaction that benefitted a secured creditor as coming within § 506(c).

A hearing on the motion to convert was held on June 5, 2002, combined with the hearing on the cash collateral stipulation. The government's objections to the cash collateral stipulation were similar to ones that Your Honor later rejected in overruling the government's objections to the fee application of debtor's counsel for services in the adversary proceeding after its transfer to Delaware. Putting aside procedural arguments, and arguments about *pro rata* sharing and potential irreparable harm, our core objection was premised on the argument that a debtor-in-possession, in the role of a trustee, is not supposed to try to uphold a secured claim *against* all of the estate's assets that would strip the estate of all value. In this regard, we maintain that a trustee's duty to secured creditors is merely to preserve their collateral, but not to defend their lien.[2]

### *The 7/18/02 Order*

On July 18, 2002, the Connecticut Bankruptcy Court issued the ORDER GRANTING DEBTOR'S APPLICATION TO USE CASH COLLATERAL AND DENYING MOTIONS TO CONVERT OR APPOINT TRUSTEE. The order's explanation for granting use of cash collateral states that "the Delaware court had expressly found that Scott's intervention in the adversary proceeding was warranted"; it then quoted some of Your Honor's reasons in the 3/4/02 order granting intervention and held that "[t]he final order of the Delaware Bankruptcy Court is not subject to collateral review."[3] The final paragraph of the order not only grants the application for use of cash collateral, but also denies the government's motion to convert. *See In re Scott Cable Communications, Inc.*, 2002 WL 1988166 (Bankr. Conn. 2002). No reason is stated for the denial of conversion (unless Judge Shiff meant that Your Honor's grant of intervention also somehow collaterally estopped the United States from moving to convert to Chapter 7, although that is not stated expressly in the 7/18/02 Order).

### *The Pending Appeal from the 7/18/02 Order*

The government appealed the 7/18/02 Order to the Connecticut District Court where the appeal was docketed as No. 3:02-CV-1725. The debtor moved to dismiss the appeal by arguing that the order was interlocutory, and the government responded by opposing dismissal and alternatively seeking leave to appeal under Bankruptcy Rule 8003. The District Court (Thompson, J.) then stayed deadlines for merits briefs, pending its determination of the motion to dismiss the appeal.

While the motion to dismiss remained pending, on December 23, 2002, the Connecticut Bankruptcy Court granted an application for fees by debtor's counsel – shortly after this Court's grant of the fees application concurrently submitted in the adversary proceeding. *See In re Scott*

---

[2] *See In re Nadler*, 8 B.R. 330, 333 (Bankr. E.D. Pa. 1980) ("trustee as fiduciary represents all creditors of the bankrupt, secured and unsecured"; "[h]owever, the Trustee primarily represents the unsecured creditors and represents the secured creditors only in his capacity as the custodian of the property upon which they have a lien"). *Accord, In re Lundborg*, 110 B.R. 106, 109 (Bankr. Conn. 1990); *In re American Fidelity Corp.*, 28 F.Supp. 462, 471 (S.D.Cal. 1939). *See also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (debtor in possession owed duty to "unsecured creditors"); *In re JLM Inc.*, 210 B.R. 19, 25-26 (BAP 2d Cir. 1997) (same). The March 3, 2002 order granting the debtor's motion to intervene in the adversary proceeding may reflect that Your Honor disagrees, and feels the debtor has discretion to choose sides, but we do not discern in your rulings any unwillingness to recognize that the debtor's choice of which side to support is influenced by its manager's 21.5% stake in any recovery by the noteholders.

[3] Even the debtor has admitted in its filings that the order granting intervention was not a final order but rather was interlocutory.

*Cable Communications, Inc.*, 287 B.R. 1 (Bankr. Conn. 2002). The United States moved for leave to appeal the 12/23/02 order to the Connecticut District Court (and, as Your Honor is aware, filed a similar motion in Delaware).

On January 28, 2003, Judge Thompson conducted a telephonic preliminary hearing in the first appeal, during which he indicated that he had not yet fully made up his mind but was inclined to rule that the matter should proceed. On February 6, 2003, Judge Thompson granted the United States' motion for leave to appeal the 12/23/02 fees order. The debtor's motion to dismiss the first appeal (from the denial of conversion) and a government motion to consolidate the two appeals remain pending. And, the briefing schedule is stayed pending disposition of those motions. In the meantime, Judge Jacobs of the Delaware District Court stayed the December 12, 2002 order by which Your Honor granted interim fees to debtor's counsel, pending the outcome of the Connecticut appeals, which Judge Jacobs felt should take precedence.

If the appeal from the 7/18/02 order proceeds (*i.e.*, assuming it is not dismissed), then the United States will argue that it was error to deny conversion in light of the inability to confirm a plan, with the continuing accrual of compensation claims of the debtor's counsel in respect to the adversary proceeding.[4] The United States will also argue that it was error to deny either conversion or the appointment of a Chapter 11 trustee in view of the conflict of interest of the debtor's management.[5]

One reason I have set forth this procedural history is because the appeal from the 7/18/02 order denying conversion may deprive the Connecticut Bankruptcy Court of jurisdiction to entertain conversion further at this time, depending upon whether the debtor or the government is correct about the finality of the denial of conversion. That is, if the denial of conversion on 7/18/02 was a final appealable order, then the valid appeal deprives the bankruptcy court of jurisdiction over the issue. If the order was interlocutory and the appeal premature, then the bankruptcy court could yet grant conversion. In this regard, you may wish to know that in late September, counsel for the United States and the debtor contacted Judge Thompson's chambers and were informed that the debtor's motion to dismiss the government's appeal from the 7/18/02 order was on the Court's "short list," and Judge Thompson expected to get to it reasonably soon.

---

[4] The United States argues that the litigation expense on behalf of the estate would be greatly attenuated in the event of conversion because a trustee would be unlikely to take an active role in the Delaware adversary proceeding. It would be extremely unlikely that a disinterested trustee would actively take the side of the secured creditors in trying to uphold their alleged lien *against the estate*, given the facts discovered thus far. While a trustee might consider joining the government's side of the adversary proceeding, a trustee would likely be content at this stage to have the government take the laboring oar, given its already extensive knowledge of the case.

[5] While conflicts of interest are not expressly listed under § 1112(b), our merits brief in the appeal will include case law to the effect that a conflict of interest on the part a debtor's management supports the appointment of a trustee under certain circumstances. We are not including that case law here because the issue is properly left to the Connecticut District Court in the appeal.

4

**Answer to Court's Questions**

**1. Do the Parties Agree that a Plan Cannot be Confirmed Without Paying the Tax?**

No plan is possible. At the October 1 hearing, Your Honor observed that "conversion or dismissal is inevitable" if a plan cannot be confirmed, and you stated you were "curious as to why that course of the proceeding hasn't taken place" already. (Transcript at p.6-7.) In pressing for conversion to Chapter 7, and in its motion for leave to appeal, the government has consistently cited the impossibility of confirming a plan without full payment of the tax, and the debtor has never remotely countered with any suggestion that a plan may yet be confirmed. Your Honor is therefore correct in observing that "conversion or dismissal is inevitable," and the only question is when – the government seeks immediate conversion whereas the debtor wants to keep the case in Chapter 11 solely to finish the Delaware adversary proceeding. Then, assuming it and the noteholders prevail, they have informally admitted that they will seek dismissal. The United States maintains this is improper.

The United States' motion to convert did <u>not</u> seek immediate dismissal as an alternative. If immediate dismissal were sought by the debtor (or if Judge Shiff were to order the parties to show cause why the case should not be dismissed, the United States would have to determine its position, but I suspect it would be to oppose dismissal and continue to favor conversion. The State of Connecticut and several other States with tax claims would also have a right to be heard on any motion to dismiss.

**2. Would a Chapter 7 Trustee Be Obligated to Pay the Taxes?**

Whether a Chapter 7 trustee would have a duty to pay the tax is partly a function of the outcome of the Delaware adversary proceeding, and conversion therefore would not moot that proceeding with the following exception. A Chapter 7 trustee might decide it is appropriate to move to charge the capital gains tax as an expense of disposing of a secured creditor's collateral under § 506(c) to the extent that the disposal benefitted the secured creditor.[6] If a Chapter 7 trustee filed a § 506(c) motion and fully prevailed against the indenture trustee and noteholders, then that would moot the Delaware adversary proceeding.

But unless a Chapter 7 trustee did fully prevail in a § 506(c) motion, the only other way that a trustee could get the administrative tax claim paid in this case is if the Subordinated Junior Secured PIK Notes are determined in fact to reflect equity, or if the security interest is equitably subordinated in the adversary proceeding. Otherwise, if the noteholders prevail, a trustee would be required to abandon or distribute the proceeds of their collateral to them pursuant to § 554 and/or § 725. A Chapter 7 trustee could also try to avoid the noteholders' security interest pursuant to § 544. Such an avoidance action would overlap to some extent with the government's equitable subordination arguments.

**3. What Recourse Would the IRS have to Third Parties**

As Your Honor observed, there are no third party releases in a Chapter 7 liquidation. But the United States has not alleged any third party liabilities in this case. If the case was dismissed, the adversary proceeding would presumably have to be dismissed as well. In that event, the United States would no doubt claim that the federal tax lien which has arisen in respect to the assessment would encumber the funds held by the debtor immediately upon dismissal. The United

---

[6] The law on applying § 506(c) to charge collateral with taxes incurred in disposing of it is conflicting. We do not endeavor to brief that issue here.

5

States would further argue that its tax lien has priority over the noteholders' security interest because the granting of that security interest represents a common-law fraudulent transfer or is void because the notes are really equity, or that the security interest should be equitably subordinated. Therefore, we would argue, disbursement of the funds by the debtor to the indenture trustee would likely be grounds for a claim of tortious conversion of the tax lien against the indenture trustee, and possibly a claim for breach of corporate duty against the debtor's manager. But such claims would no doubt be vigorously defended -- not only by disputing the government's equity-versus-debt, fraudulent transfer, and equitable subordination claims, but also by disputing the tortious conversion arguments that could be asserted if the funds are distributed. That is one reason we would likely oppose dismissal.

Without dismissal, however, there would be no ground upon which to dismiss the adversary proceeding because § 510(c) is as applicable in a Chapter 7 case as it is under Chapter 11. If the government loses the adversary proceeding, then upon a final judgment holding that the notes are truly debt instruments and denying equitable subordination, a trustee could disburse the funds to the indenture trustee, and any arguments for possibly imposing third-party liability on anyone would arguably be precluded. The case would then have to be closed as a no-asset case. On the other hand, if the government wins a ruling that the notes reflect an equity investment or that the security interest should be equitably subordinated, then the trustee would be required to distribute the funds pursuant to § 726 – *i.e.*, first in full payment of Chapter 7 administrative expenses, and thereafter in *pro rata* payment of Chapter 11 administrative expenses (including the tax claim).

### Conclusion

As we see things, therefore, the conversion to Chapter 7 would not automatically require the payment of the tax from the remaining funds of the estate and the adversary proceeding would continue.[7]

We hope this answers all of the Court's questions. If not, or if you have follow-up questions, we suggest a telephone conference at which any additional questions the Court may have can be discussed.

Sincerely yours,

*/s/ Peter Sklarew*

PETER SKLAREW
Attorney, Civil Trial Section
Northern Region

---

[7] If there remain further disputes over the debtor's assertion of the attorney-client privilege, then conversion could moot such disputes if a Chapter 7 Trustee determined to waive the privilege. See C.F.T.C. v. Weintraub, 471 U.S. 343, 355-56 (1985). As you know, the government may request follow-up depositions after examining the documents you have ordered produced. Also, the United States took the deposition of Stanley Bloch, Esq., who was outside corporate counsel for Scott Cable during the 1990s, but Mr. Bloch declined to answer many questions, asserting attorney-client privilege. The United States has not yet moved to compel answers to the deposition questions propounded to Mr. Bloch, because the United States was first awaiting a ruling on its motion to compel the production of the allegedly privileged documents, which has just been issued.

cc: Ira Goldman, Esquire
Shipman & Goodwin
One American Row
Hartford, CT 06103

Daniel H. Golden, Esquire
David M. Zensky, Esquire
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
590 Madison Avenue
New York, New York 10022

Craig I. Lifland, Esquire
Zeisler & Zeisler
558 Clinton Avenue
Bridgeport, Connecticut 06605

Francis A. Monaco, Jr., Esquire
Walsh, Monzack & Monaco
1201 N. Orange Street, Suite 400
Wilmington, Delaware 19801

Euripides D. Dalmanieras, Esquire
Toni G. Wolfman, Esquire
Foley Hoag, LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600

Teresa K.D. Currier, Esquire
Klett Rooney Lieber & Schorling
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware 19801