UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------
In re                                                : Chapter 11
                                                     :
SCOTT CABLE COMMUNICATIONS, INC.                     : Case No. 3:02-CV-
                                                     : 1725 (AWT)
d/b/a AMERICAN CABLE ENTERTAINMENT,                  : (consolidated
                                                     : bankruptcy appeals)
                                                     : Bankr. Ct. Case No.
                                                     : 98-51923)
                                                     :
                    Debtor.                          :
---------------------------------------------------------------
UNITED STATES OF AMERICA,                            :
                                                     :
                    Appellant,                       :
                                                     :
        v.                                           :
                                                     :
SCOTT CABLE COMMUNICATIONS, INC.,                    :
STATE STREET BANK AND TRUST CO.                      :
as Indenture Trustee for certain note holders, and   :
AKIN GUMP STRAUSS HAUER & FELD LLP,                  :
                                                     :
                    Appellees.                       :
---------------------------------------------------------------

**APPLICATION OF SCOTT CABLE COMMUNICATIONS, INC., ET AL.
FOR AN EXTENSION OF TIME TO FILE THEIR APPELLEES' BRIEF
IN THE CASH COLLATERAL/INTERIM-FEES APPEAL;
DECLARATION OF DANIEL H. GOLDEN;
[PROPOSED] ORDER**

**AKIN GUMP STRAUSS
HAUER & FELD LLP**
Daniel H. Golden
Shuba Satyaprasad (*pro hac vice* application to be filed)
590 Madison Avenue
New York, New York 10022
(212) 872-1000

Attorneys for Appellees
SCOTT CABLE COMMUNICATIONS, INC. AND
AKIN GUMP STRAUSS HAUER & FELD LLP

**APPLICATION OF SCOTT CABLE COMMUNICATIONS, INC., ET AL
FOR AN EXTENSION OF TIME TO FILE THEIR APPELLEES' BRIEF
IN THE CASH COLLATERAL/INTERIM-FEES APPEAL**

PRELIMINARY STATEMENT

Scott Cable Communications, Inc. (the "Debtor") and Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") (collectively, "Appellees") respectfully request an order extending the time to file and serve their Appellees' Brief on the Cash Collateral/Interim-Fees issues.[1] Appellees' Brief is currently due April 22, 2005. Appellees seek an extension of time until 30 days after the entry of a final order in the related Delaware bankruptcy adversary proceeding No. 98-5104 (the "Adversary Proceeding"), filed on November 19, 1998, by appellant United States of America (the "United States"), on behalf of the Internal Revenue Services ("IRS") against State Street Bank and Trust Co., as Indenture Trustee for certain note holders.[2] This request is made on the grounds that a ruling in the Adversary Proceeding may effectively resolve and moot the Cash Collateral/Interim-Fees issues.[3]

Alternatively, if this Court denies this request, Appellees request an extension of 14 days from the date of this Court's ruling on this Application to file their Appellees' Brief.

This request is based upon the points and authorities set forth in this application and on the facts stated in the attached Declaration of Daniel H. Golden.

---

[1] Akin Gump is an Appellee in its own right because the United States has appealed the December 23, 2002 Order of the Connecticut Bankruptcy Court, which granted the Application of Akin Gump for Interim Compensation.

The Debtor and Akin Gump understand that the appeal of the Conversion Order will be briefed substantively by Appellee U.S. Bank National Association, as successor to the interests of State Street Bank and Trust Co. ("Indenture Trustee"). Accordingly, the Debtor and Akin Gump have no objection to this Court's proceeding with the appeal of the Conversion issues according to the current schedule.

[2] Prior to filing this Application, Akin Gump attempted, without success, to obtain the United States' consensus to the within extension request. (Golden Decl. ¶ 23)

[3] Appellees will provide, at the Court's request, bi-monthly reports on the progress of the Delaware Adversary Proceeding.

1

A trial on the merits in the Delaware Adversary Proceeding has been tentatively scheduled for October 17 through October 28, 2005 in the Delaware Bankruptcy Court. (Declaration of Daniel H. Golden ("Golden Decl.") ¶17.) This trial could effectively resolve all cash collateral issues between the Indenture Trustee and the United States. Because this Court recently granted the United States' request for a stay on any disbursements of money by the Debtor from the Bankruptcy Estate pending the outcome of this appeal, no party will be prejudiced by Appellees' requested extension of time to brief the Cash Collateral/Interim-Fees. In the interests of preserving this Court's time and the Debtor's limited resources, and in the interests of comity, Appellees respectfully request that this Court grant the proposed extension of time.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### Debtor's Chapter 11 Filings

On October 1, 1998 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut (the "Connecticut Bankruptcy Court"). On October 20, 1998, the Connecticut Bankruptcy Court entered an Agreed Final Order Authorizing Use of Cash Collateral (the "First Cash Collateral Order"), which (1) authorized the Debtor to use cash collateral of its secured lenders for the period through December 31, 1998; and (2) granted certain substitute liens and other protections to (a) Finova Capital Corporation ("Finova"), (b) Wilmington Trust Company ("Wilmington Trust"), as successor Indenture Trustee on behalf of the Debtor's 15% Senior Subordinated Pay-In-Kind Debentures due March 18, 2002 (the "Senior Secured PIK Notes"), and (c) State Street Bank and Trust Company ("State Street"), as Indenture Trustee for the holders of the 16% Junior Subordinated Pay-In-Kind Debentures due July 18,

2002 (the "Junior Secured PIK Notes"). (Golden Decl. ¶ 2.) Subsequently, the Connecticut Bankruptcy Court issued five additional orders authorizing the Debtor's use of cash collateral through December 31, 2002. (*Id.*)

Pursuant to the First Cash Collateral Order, challenges to the validity of the claims and liens held by or for the benefit of the secured note holders had to be asserted on or before November 19, 1998, or be deemed waived. (Golden Decl. ¶4.) On November 19, 1998, the United States filed a complaint in the Connecticut Bankruptcy Court initiating the Adversary Proceeding against State Street, as Indenture Trustee. The complaint challenges the claims and liens of the Junior Secured PIK Notes. As amended on December 17, 1998, the Adversary Proceeding seeks to (1) recharacterize the Junior Secured PIK Notes as equity, (2) invalidate the liens and security interests held by the holders of the Junior Secured PIK Notes, and (3) subordinate the claims of the Junior PIK Notes to all administrative claims.[4] (Golden Decl. ¶5.)

The Adversary Proceeding is Transferred to Delaware.

On May 22, 2001, the Connecticut Bankruptcy Court issued a *sua sponte* Order to Show Cause why the Adversary Proceeding should not be transferred to the District of Delaware. On June 7, 2001, following a hearing, the Connecticut Bankruptcy Court transferred the Adversary Proceeding to the Delaware Bankruptcy Court (the "Transfer Order"). (Golden Decl. ¶ 7.) In so doing, the Connecticut Bankruptcy Court also transferred "any administrative expense fee requests associated with the Adversary Proceeding to the Delaware Bankruptcy Court." (Golden

---

[4]The Indenture Trustee moved for summary judgment to dismiss the Adversary Proceeding on the basis of, among other things, the *res judicata* effect and finality of the order confirming Debtor's 1996 Delaware plan of reorganization under chapter 11. The Connecticut Bankruptcy Court granted the Motion for Summary Judgment, and the United States appealed. This Court remanded the case to the Connecticut Bankruptcy Court for further proceedings. Following the transfer of the Adversary Proceeding to Delaware, the Delaware Bankruptcy Court denied the Indenture Trustee's Motion for Summary Judgment. (Golden Decl. ¶ 6.)

Decl. ¶ 8.) This Court denied the United States' motion for leave to appeal the transfer of the Adversary Proceeding to the Delaware Bankruptcy Court. (Golden Decl. ¶ 8.)

The United States next tried to attack the Transfer Order by moving the Delaware Bankruptcy Court to re-transfer the Adversary Proceeding to the Connecticut Bankruptcy Court (the "First Re-Transfer Motion"). The Delaware Bankruptcy Court denied the Motion. (Golden Decl. ¶¶ 8-9.)

In yet another effort to attack the Transfer Order, on May 22, 2002, the United States filed a Motion for an Order Re-Transferring Back to Connecticut, Portions of the Main Chapter 11 Case that Were Not Addressed in the Previous Re-Transfer Motion (the "Second Re-Transfer Motion"). (Golden Decl. ¶10.) Specifically, the Second Re-Transfer Motion sought to re-transfer to Connecticut the administrative expense portion of the Adversary Proceeding that had been transferred to the Delaware Bankruptcy Court. The Delaware Bankruptcy Court has not ruled on the Second Re-Transfer Motion.

<u>The Debtor Intervenes in the Adversary Proceeding</u>

On January 17, 2002, the Debtor moved to intervene in the United States' Adversary Proceeding in Delaware. (Golden Decl. ¶ 11.) On March 4, 2002, the Delaware Bankruptcy Court granted the Debtor's intervention motion, finding that the Debtor had the right and duty to intervene in the Adversary Proceeding under section 1109(b) of the Bankruptcy Code, as well as under Rule 24(a) of the Federal Rules of Civil Procedure. (*Id.*)

<u>The United States Appeals the Connecticut Bankruptcy Court's July 18 and December 23, 2002 Orders.</u>

On July 18, 2002, the Connecticut Bankruptcy Court granted the Debtor's fifth request for use of cash collateral and denied the United States' motion to convert case to chapter 7 (or,

alternatively, to appoint a chapter 11 trustee). On December 23, 2002, the Connecticut Bankruptcy Court granted Akin Gump's Interim Fee Request. (Golden Decl. ¶12.)

On February 7, 2003 this Court granted the United States' Motion for Leave to Appeal the December 23, 2002 Connecticut Interim Fee Order. On March 14, 2005, among other things, this Court (1) granted the United States' Motion for Leave to Appeal the July 18, 2002 Cash Collateral Order (2) approved the United States' request to consolidate the appeals from these Orders and (3) approved the United States' request for a stay of any disbursements of funds by the Debtor's bankruptcy estate pending the resolution of the appeal. (Golden Decl. ¶13.)

The United States filed and served its Appellant's Brief on April 4, 2005. The United States divides its arguments on appeal into two parts: (1) the "Conversion Appeal" – arguing that the Connecticut Bankruptcy Court abused its discretion in denying the United States' Motion to Convert the proceeding to one under Chapter 7, or in the alternative, to appoint a Chapter 11 Trustee; and (2) the "Cash Collateral/Interim-Fee Appeal" – arguing that the Connecticut Bankruptcy Court abused its discretion in overruling the United States' objections to the Debtor's fifth application for use of cash collateral and in awarding interim fees to Akin Gump.[5] (Golden Decl. ¶14.)

The Appellees' Brief is currently due to be filed April 22, 2005. (Golden Decl. ¶15.)

## The Extension Request is Warranted by Considerations of Judicial Economy and Comity

If the Delaware Adversary Proceeding moots the Cash Collateral/Interim-Fee issues presented on appeal, the requested extension will spare the Court the substantial time and burden

---

[5] Both sets of issues are subject to review for abuse of discretion. *E.g., United States v. National Westminster Bank USA (In re Q-C Circuits Corp.)*, 231 B.R. 506, 511 (D.N.Y. 1999) ("It is clear that the bankruptcy court had the power and discretion to allow the Debtor to use cash collateral"); *In re Shirley*, 134 B.R. 940, 942-43 (9th Cir. BAP 1992) ("The Panel reviews an award of fees under an abuse of discretion standard."); *In re Orvco, Inc.*, 95 B.R. 724, 726 (9th Cir. BAP 1989); *Ad Hoc Comm. of Bondholders v. Citicorp Venture Capital Ltd. (In re Fairwood*

5

of examining the record and the briefs, hearing oral argument, ruling on the merits, and preparing an opinion to embody its ultimate ruling. It will also spare the parties considerable expense in briefing and arguing these issues on appeal.

The Adversary Proceeding could well moot the Cash Collateral/Interim-Fee issues raised on appeal because they ultimately are dependent on the same set of complex issues. The Cash Collateral/Interim-Fee issues, as framed by the United States in this Court, concern the appropriateness of the Debtor's use of Cash Collateral to pay legal fees incurred in assisting a bankruptcy creditor assert its lien rights against the cash proceeds in the Bankruptcy Estate. The Court need not reach these issues if the briefing on the Cash Collateral/Interim-Fee issues awaits the conclusion of the Adversary Proceeding.

In the Adversary Proceeding, the United States challenges the claims and liens of the Junior Secured PIK Notes and seeks to (1) recharacterize the Junior Secured PIK Notes as equity, (2) invalidate the liens and security interests held by the holders of the Junior Secured PIK Notes, and (3) subordinate the claims of Junior Subordinated Secured Notes to all administrative claims of the Bankruptcy Estate. These issues have been briefed and argued in no less than two extensive summary judgment motions filed in the Delaware Bankruptcy Court, one of which is still pending and still in the briefing stage. The Delaware Bankruptcy Court has spent considerable time and effort in advancing the Adversary Litigation to its present stage, and has informed the parties it plans to try the case on the merits this fall, tentatively October 17 though the 28th, if it is not resolved on summary judgment.

If the Indenture Trustee prevails against the United States in the Adversary Proceeding, the Indenture Trustee will retain its security interest in all of the cash in the Bankruptcy Estate

---

*Corp.*), 2000 U.S. Dist. LEXIS 2606 (D.N.Y. 2000) ("The appointment of a trustee or a conversion of a Chapter 11 bankruptcy case to a Chapter 7 case are matters within the discretion of the bankruptcy court.").

(the "Cash Collateral"). There are no Bankruptcy Estate funds in excess of the amounts needed to satisfy the Junior Secured PIK Notes. There will thus be no funds remaining to pay the claim of the United States if the Indenture Trustee and the Debtor prevail. Since the Indenture Trustee has already stipulated to the Debtor's use of the Cash Collateral to pay litigation fees, *inter alia,* and since the Connecticut Bankruptcy Court has approved an interim fee award to Akin Gump, the Indenture Trustee's success in the Adversary Proceeding would effectively resolve and moot the Cash Collateral/Interim-Fee Appeal now pending before this Court. (Golden Decl. ¶ 18.)

A final ruling in favor of the United States in the Adversary Proceeding could also moot the appeal, because it would mean that the Junior Secured PIK Notes are either not secured creditors and therefore have no Cash Collateral rights, or alternatively that their lien rights are equitably subordinated to the rights of the United States and all other administrative claims in the Bankruptcy Estate. *Pro rata* rules for distribution of professional fees and administrative expenses would apply as to payment of any of Akin Gump's fees -- since it would not be receiving its payments from "cash collateral" carved out of the Indenture Trustee's security interest but sharing *pro rata* with all other professionals and administrative claimants. (Golden Decl. ¶ 19.)

Comity also weighs in favor of granting the extension. *U.S. v. Peck,* 522 F. Supp. 245 (S.D.N.Y. 1981). The doctrine of "comity" teaches that courts should defer acting on matters that are already pending before courts of other jurisdictions until those courts have had an opportunity to rule. *Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997); *see Davis v. City of Augusta,* 942 F. Supp. 577 (S.D. Georgia 1996) (comity is a principle under which courts of one state extend immunity to a sister sovereign, not as a rule of law, but rather out of deference or respect); *Private Medical Care Foundation v. Califano, et al.,* 451 F. Supp. 450 (D. Okla. 1977)

7

(granting a stay pending the conclusion of a similar case in a Delaware district court "in the interest of judicial comity and economy," because the Delaware court had already spent considerable time and effort in advancing the litigation to its present stage and the interests of judicial economy seek to avoid duplication of effort). The Delaware Bankruptcy Court has been overseeing litigation regarding the status of the remaining cash in the Connecticut Bankruptcy Estate since the transfer of the Adversary Proceeding on June 7, 2001, and plans to try the case this fall, October 17-28, if the matter is not decided on summary judgment. (Golden Decl. ¶ 17.)

No Prejudice to Any Party.

This Court has already stayed the disbursement of any funds by the Bankruptcy Estate pending the completion of the Consolidated Appeal. To avoid prejudice to the United States, this stay may be modified to provide for a stay pending resolution of the Adversary Proceeding.

Alternative Request for a 14-Day Extension of Time to File Appellees' Brief.

If this Court declines Appellees' request for an extension of time pending the entry of a final order in the Adversary Proceeding, Appellees respectfully request that the Court grant them a 14-day extension from the date of this Court's ruling on this Application to file their Appellees' Brief in the Cash Collateral/Interim-Fee Appeal. This brief extension is warranted not only to give Appellees adequate time to prepare a Brief that is complete, concise, and easy to read, but also in light of time spent in an attempt to consensually stay the Cash Collateral/Interim-Fees Appeal. (Golden Decl. ¶¶ 22-23.)

Conclusion.

For the foregoing reasons, Appellees respectfully request that the Court grant them an extension of time to file their Appellees' Brief in the Cash Collateral/Interim-Fee Appeal until 30

days following the entry of a final order in the Adversary Proceeding. Alternatively, Appellees request a 14-day extension of time, to and including May 6, 2005, to file their Appellees' Brief.

Dated: Bridgeport, Connecticut
April 15, 2005

        ZEISLER & ZEISLER P.C.

        By: /s/ Craig Lifland
            Craig Lifland

        558 Clinton Avenue
        Bridgeport, CT 06605
        (203) 368-4234

        AKIN GUMP STRAUSS HAUER & FELD LLP

        Daniel H. Golden
        Shuba Satyaprasad (*pro hac vice* application to be filed)
        590 Madison Avenue
        New York, New York 10022
        (212) 872-1000

        Co-Counsel to the Debtor

**DECLARATION OF DANIEL H. GOLDEN IN SUPPORT OF
APPLICATION OF SCOTT CABLE COMMUNICATIONS, INC., ET AL.
FOR AN EXTENSION OF TIME TO FILE THEIR APPELLEES' BRIEF
IN THE CASH COLLATERAL/INTERIM-FEES APPEAL**

DANIEL H. GOLDEN declares:

1. I am an attorney licensed to practice law in the State of New York and a partner at the firm of Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel for Appellee Scott Cable Communications, Inc. ("Debtor") in this appeal. Akin Gump also represents itself as Appellee in this appeal. I have personal knowledge of the facts stated in this Declaration, which is made in support of the Application of the Debtor and Akin Gump, two of the Appellees in this appeal, for an extension of time to file their Appellees' Brief in the Cash Collateral/Interim-Fees Appeal.

2. On October 1, 1998 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code in the United State Bankruptcy Court for the District of Connecticut (the "Connecticut Bankruptcy Court"). On October 20, 1998, the Connecticut Bankruptcy Court entered an Agreed Final Order Authorizing Use of Cash Collateral (the "First Cash Collateral Order"), which (i) authorized the Debtor to use cash collateral of its secured lenders for the period through December 31, 1998; and (ii) granted certain substitute liens and other protections to (a) Finova Capital Corporation ("Finova"), (b) Wilmington Trust Company ("Wilmington Trust"), as successor Indenture Trustee on behalf of the Debtor's 15% Senior Subordinated Pay-In-Kind Debentures due March 18, 2002 (the "Senior Secured PIK Notes"), and (c) State Street Bank and Trust Company ("State Street"), as Indenture Trustee for the holders of the 16% Junior Subordinated Pay-In-Kind Debentures due July 18, 2002 (the "Junior Secured PIK Notes").

10

3. Subsequently, the Connecticut Bankruptcy Court issued five additional orders authorizing the Debtor's use of cash collateral with the last cash collateral order running through December 31, 2002.

4. Pursuant to the First Cash Collateral Order, challenges to the validity of the claims and liens held by or for the benefit of the secured note holders had to be asserted on or before November 19, 1998, or be deemed waived.

5. On November 19, 1998, the United States filed a complaint commencing the Adversary Proceeding against State Street, as Indenture Trustee, in the Connecticut Bankruptcy Court, challenging the claims and liens of the Junior Secured PIK Notes. As amended on December 17, 1998, the Adversary Proceeding seeks to (i) recharacterize the Junior Secured PIK Notes as equity, (ii) invalidate the liens and security interests held by the holders of the Junior Secured PIK Notes, and (iii) subordinate the claims of the Junior PIK Notes to all administrative claims.

6. The Indenture Trustee moved for summary judgment to dismiss the Adversary Proceeding on the basis of, among other things, the *res judicata* effect and finality of the order confirming Debtor's prior 1996 Delaware chapter 11 plan of reorganization. The motion was granted, but following the appeal of the United States was remanded back to the Connecticut Bankruptcy Court for further proceedings. The Delaware Bankruptcy Court (following the transfer to Delaware) ultimately denied the Indenture Trustee's Motion.

7. Following a hearing on a May 22, 2001 Order to Show Cause, as to why the Adversary Proceeding should not be transferred to the District of Delaware, the Connecticut Bankruptcy Court, by order dated June 7, 2001, transferred the Adversary Proceeding to the Delaware Bankruptcy Court (the "Transfer Order").

8. In addition to transferring the Adversary Proceeding to the Delaware Bankruptcy Court, the Connecticut Bankruptcy Court also transferred any administrative expense fee requests associated with the Adversary Proceeding to the Delaware Bankruptcy Court. This Court denied the United States' motion for leave to appeal the transfer of the Adversary Proceeding to the Delaware Bankruptcy Court.

9. On September 13, 2001, the United States filed a motion in the Delaware Bankruptcy Court seeking to re-transfer the Adversary Proceeding to the Connecticut Bankruptcy Court (the "First Re-Transfer Motion"). By order dated January 7, 2002, the Delaware Bankruptcy Court denied the First Re-Transfer Motion.

10. The United States did not appeal the Delaware Bankruptcy Court's denial of the First Re-Transfer Motion. However, on May 22, 2002, the United States filed its Motion and Brief in Support of the United States for an Order Re-Transferring Back to Connecticut, Portions of the Main Chapter 11 Case that Were Not Addressed in the Previous Re-Transfer Motion (the "Second Re-Transfer Motion"). The Second Re-Transfer Motion specifically sought to re-transfer back to Connecticut the administrative expense portion of the Adversary Proceeding, which was transferred to the Delaware Bankruptcy Court pursuant to the Transfer Order. The Delaware Bankruptcy Court has not ruled on the Second Re-Transfer Motion.

11. On January 17, 2002, the Debtor filed a motion seeking authority to intervene in the United States' Adversary Proceeding. By order dated March 4, 2002, the Delaware Bankruptcy Court granted the Debtor's intervention motion, finding that the Debtor had the right and duty to intervene in the Adversary Proceeding under section 1109(b) of the Bankruptcy Code, as well as a right to intervene pursuant to Rule 24(a) of the Federal Rules of Civil

Procedure (the "Intervention Order"). The United States did not attempt to appeal the Intervention Order.

12. On July 18, 2002 (the "July 18 Order"), the Connecticut Bankruptcy Court granted the Debtor's fifth request for use of cash collateral and denied the United States' motion to convert case to chapter 7 (or alternatively to appoint chapter 11 trustee). By order entered December 23, 2002 (the "December 23 Order"), the Connecticut Bankruptcy Court granted Akin Gump's Interim Fee Request.

13. On February 7, 2003 this Court granted the United States' Motion for Leave to Appeal the December 23, 2002 Connecticut Interim Fee Order. On March 14, 2005, among other things, this Court (1) granted the United States' Motion for Leave to Appeal the July 18, 2002 Cash Collateral Order (2) approved the United States' request to consolidate the appeals from these Orders and (3) approved the United States' request for a stay of any disbursements of funds by the Debtor's bankruptcy estate pending the resolution of the appeal.

14. The United States filed and served its Appellant's Brief on April 4, 2005. The United States divides the arguments on appeal in the Consolidated Appeal in two parts: (1) the "Conversion Appeal" (arguing the CT Bankruptcy Court abused its discretion in denying its Motion to Convert, or in the alternative, Appoint a Chapter 11 Trustee); and (2) the "Cash Collateral/Interim-Fee Appeal" (arguing the Connecticut Bankruptcy Court abused its discretion in overruling United States' objections to Debtor's fifth application for use of cash collateral and in awarding interim fees to Akin Gump).

15. The Debtor and Akin Gump's Opening Appellee Brief in the Cash Collateral/Interim-Fee Appeal is currently due to be filed April 22, 2005.

16.  By this application, the Debtor and Akin Gump seek an extension of time to file their Appellees' Brief on the Cash Collateral/Interim-Fee issues pending the conclusion of the trial in the Delaware Adversary Proceeding. A final determination on the merits in the Adversary Proceeding will resolve and effectively moot the issues raised by the United States in concerning the Cash Collateral/Interim-Fees issues.

17.  In the Adversary Proceeding, the United States challenges the claims and liens of the Junior Secured PIK Notes and seeks to (1) recharacterize the Junior Secured PIK Notes as equity, (ii) invalidate the liens and security interests held by the holders of the Junior Secured PIK Notes, and (iii) subordinate the claims of Junior Subordinated Secured Notes to all administrative claims of the Bankruptcy Estate. A Motion for Summary Judgment is currently pending and a trial on the merits of the Adversary Proceeding has been tentatively scheduled for October 17 through October 28, 2005.

18.  If the Indenture Trustee prevails in the Adversary Proceeding, the Indenture Trustee will have upheld its security interest in all of the cash remaining in the Bankruptcy Estate (the "Cash Collateral"). There will be no funds remaining to pay the United States. Since the Indenture Trustee has approved the Debtor's use of the Cash Collateral to pay the litigation fees, *inter alia,* and the Court has approved an interim fee award to Akin Gump, the Indenture Trustee's success in the Adversary Proceeding would effectively resolve and moot the Cash Collateral/Interim-Fee issues now pending before this Court.

19.  Likewise, a final ruling in favor of the United States in the Adversary Proceeding would result in a finding that the Junior Secured PIK Notes do not have a security interest in the Cash Collateral of the Bankruptcy Estate or that their interest has been subordinated to the United States' claim as well as that of the other administrative claimants. Consequently, *pro*

14

*rata* rules *would* apply as to payment of any of Akin Gump's fees -- since it would not be receiving its payments from "cash collateral" carved out of the Indenture Trustee's security interest but sharing *pro rata* with all other professionals and administrative claimants.

20. Because the Adversary Proceeding may moot the Cash Collateral/Interim-Fee issues in this matter, the requested extension may spare this Court the substantial time and burden of examining the record and the briefs, of hearing oral argument, of ruling on the merits, and of preparing an opinion to embody its ultimate ruling. It may also save the parties considerable expense in briefing and arguing these issues on appeal.

21. Based on the current stay on the disbursement of money by the Bankruptcy Estate, I know of no reason that any party would be prejudiced by the extension of time requested by this Application.

22. In the alternative, a 14-day extension from the date of this Court's ruling on the Application is warranted to give Appellees adequate time to prepare a Brief that is complete, concise, and easy to read.

23. Prior to filing this Application we entered into discussions with the United States' attorney, Peter Sklarew, with regard to our request that the United States stipulate to the extension request. Our efforts were both unsuccessful and time consuming in terms of the approaching deadline for preparing the Appellee Brief.

24. This Application is made in good faith for the reasons stated and not for the purpose of delay.

25. Our client has been informed of this request, and a copy of this request is being served on him.

I hereby declare under penalty of perjury that the foregoing is true and correct.

15

Executed this 14th day of April, 2005 at New York, New York.

                                          /s/ Daniel H. Golden  
                                           Daniel H. Golden

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| In re | : Chapter 11 |
| SCOTT CABLE COMMUNICATIONS, INC. | : Case No. 3:02-CV-1725 (AWT) |
| d/b/a AMERICAN CABLE ENTERTAINMENT, | : (consolidated bankruptcy appeals) |
| | : Bankr. Ct. Case No. 98-51923) |
| Debtor. | : |

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Appellant, | : |
| v. | : |
| SCOTT CABLE COMMUNICATIONS, INC., STATE STREET BANK AND TRUST CO. as Indenture Trustee for certain note holders, and AKIN GUMP STRAUSS HAUER & FELD LLP, | : |
| Appellees. | : |

---

**[PROPOSED] ORDER APPROVING APPLICATION
FOR EXTENSION OF TIME TO FILE OPENING APPELLEE BRIEF
IN THE CASH COLLATERAL/INTERIM-FEE APPEAL**

For good cause shown, IT IS ORDERED that appellees SCOTT CABLE COMMUNICATIONS, INC. and AKIN GUMP STRAUSS HAUER & FELD LLP ("Appellees") are granted an extension of time to file their Appellees' Brief in the Cash Collateral/Interim-Fee Appeal until 30 days following the entry of a final order in Delaware bankruptcy adversary case number 98-5104, filed on November 19, 1998 by the United States of

America on behalf of the Internal Revenue Services against State Street Bank and Trust Co., as Indenture Trustee for certain note holders.

This Order is without prejudice to requests for such further extensions as may be appropriate.


Dated:_____

                                                    The Honorable Alvin W. Thompson
                                                    United States District Court Judge

## CERTIFICATE OF SERVICE

I, Craig I. Lifland, hereby certify that on the 15th day of April, 2005, I served a copy of the annexed Application of Scott Cable Communications, Inc., et al, For An extension Of Time to File Their Appellees' Brief In the Cash Collateral/Interim-Fees Appeal; Declaration of Daniel H. Golden; [Proposed] Order to those parties listed below by first class, prepaid U. S. Mail.

Holley Clairborne, Esq.

Office of the U. S. Trustee
One Century Tower
265 Church Street, Suite 1103
New Haven, CT 06510

Ann Nevins, Esq.
Assistant U. S. Attorney
United States Attorney's Office
915 Lafayette Boulevard, Room 309
Bridgeport, Ct 06604

State Street Bank and Trust Company
Ira H. Goldman, Esq.
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103-2819

Joan Pilver, Esq.
Assistant Attorney General State of Connecticut
55 Elm Street
Hartford, CT 06141

Peter Sklarew, Esq.
Alan Shapiro, Esq.
U. S. Dept. of Justice
Tax Division
P. O. Box 55
Washington, D.C. 2004-0055

By:_____
Craig I. Lifland (ct00976)
Zeisler & Zeisler, P.C.
558 Clinton Avenue
P. O. Box 3186
Bridgeport, CT 06605-0186
(203)368-4234

19