UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT



2005 APR 21  A 10: 07

DISTRICT COURT

|  |  |
|---|---|
| In re: | ) |
| | ) |
| SCOTT CABLE COMMUNICATIONS, INC., | ) |
| | ) |
| Debtor. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Appellant, | ) |
| v. | ) |
| | ) |
| SCOTT CABLE COMMUNICATIONS, INC., | ) |
| STATE STREET BANK AND TRUST CO. as | ) |
| Indenture Trustee for certain note holders, and | ) |
| AKIN, GUMP, STRAUSS, HAUER & FELD, LLP, | ) |
| | ) |
| Appellees | ) |
| | ) |

No. 3:02-CV-1725 (AWT)
(consolidated bankruptcy appeals)
(Bankr. Ct. Case No. 98-51923)

**UNITED STATES' OPPOSITION TO MOTION FOR INDEFINITE
EXTENSION OF TIME FOR ANSWER BRIEF FOR CERTAIN ISSUES
(Which Is Actually a Motion to De-Consolidate the Appeals
and Allow Only Part of One of Them to Go Forward),
AND CROSS-MOTION TO EXPEDITE APPEALS**

On March 14, 2004, this Court consolidated (1) the government's appeal from the

bankruptcy court's 7/18/02 order denying conversion to Chapter 7 (or appointment of a Chapter 11

trustee) and granting the request of debtor to use property of the estate, alleged to be the cash

collateral of the indenture trustee, in financing the debtor's participation in the Delaware adversary

proceeding on the side of seeking to uphold the security interest of the indenture trustee for the

claims of the holders of the junior subordinated secured PIK notes, with (2) the government's

appeal from the bankruptcy court's 12/23/02 order granting interim fees to the Akin Gump law

firm as counsel for the debtor, for hours billed outside of the Delaware adversary proceeding.  The

Court also denied a motion to dismiss the first appeal (granting interlocutory appeal in the

1

alternative), granted a stay of disbursements pending the appeals, and granted a procedural motion to allow each party the option of filing separate briefs or a combined brief up to 75 pages and gave the United States 21 days to file its opening brief.

Three days earlier, on March 11, 2005, this Court held a telephonic conference at which it asked the parties what rulings were in need of being made in the case and indicated its intention to issue bench rulings on all pending motions on March 14. Akin Gump appeared on behalf of the debtor in the first appeal and on behalf of itself in the second appeal, and gave no indication that the appeals, if allowed, should not be consolidated, or that only half of the first appeal should proceed. To the contrary, it concurred in the government's proposal for the briefing. After this Court announced the motion rulings on March 14, 2005, Akin Gump gave no indication of opposition to simultaneous briefing.

Akin Gump has now filed an "application" on behalf of Scott Cable and itself seeking an extension of time to file a brief on the issues of the cash collateral order that is only *part* of the 7/18/02 order and the 12/23/02 order on interim fees until after the conclusion of the Delaware adversary proceeding (*i.e.*, indefinitely) ["Motion"]. Akin Gump suggests that the appeal from the denial of the government's motion to convert "will be briefed substantively by Appellee U.S. Bank National Association, as successor to the interests of State Street Bank and Trust Co. ('Indenture Trustee')," and that "the Debtor and Akin Gump have no objection to this Court's proceeding with the appeal of the Conversion issues according to the current schedule.[1/] According to the Motion, the Delaware adversary proceeding, which involves the government's complaint for recharacteri- zation of the junior notes as equity or, alternatively, for equitable subordination of the secured claim of the indenture trustee for the note holders, "may effectively resolve and moot the Cash Collateral/Interim-Fees issues."

The United States opposes the indefinite extension for the reasons indicated below, partially

---

[1/] The appellees in the first appeal are the debtor and the Indenture Trustee. Akin Gump is the appellee in the second appeal.

opposes the alternatively 14-day extension from the date of disposition of the Motion if it is denied, and requests that these appeals be expedited by requiring any further answer briefs to be filed no later than May 6, 2005 (14 days after the original deadline), allowing the usual ten days for the government's reply, and setting oral argument for a date at the court's earliest convenience, and preferably sometime in June or July.[2/]

### Clarification of Certain Facts

The Statement of Facts and Procedural History set forth in the Motion, although essentially correct for the most part, is potentially misleading in several respects, and otherwise is incomplete. We will limit the presentation here to guarding against unwarranted inferences. A more complete procedural history is included in the government's opening brief, already on file.

The Motion recites that there were numerous cash collateral orders prior to the 7/18/02 one being appealed now. While that is true, the 7/18/02 order granted the first application that budgeted funds for the debtor to litigate on behalf of upholding a lien against the estate.[3/] Furthermore, the United States objected to prior cash collateral stipulations on 6/29/00 and on 5/29/01.[4/]  (DI# 257 and 302 in the Conn. Bankr. case.)

As the Motion indicates, when the adversary proceeding was transferred to Delaware, the government sought leave for an interlocutory appeal, which this Court denied. The government then moved for re-transfer in the Delaware Bankruptcy Court, consistent with case law indicate such a motion is essential to preserve the argument for appeal from a final judgment. Then, after

---

2/ It is respectfully suggested that the Court have a courtroom deputy or other person contact counsel for the parties to avoid scheduling conflicts.

3/ The order approved a budget committing $800,000 for payment of past and future legal services to the debtor in helping the Indenture Trustee defend against the government's adversary complaint seeking to recharacterize the junior notes as equity instruments or to equitably subordinate the security interest to administrative taxes.

4/ The earlier objections were primarily to preserve the government's argument that the funds held by the estate are not State Street's "collateral" because its lien is invalid and to object to the continued diminution of the estate.

the parties all belatedly woke up to the fact that the order transferring venue over the adversary proceeding included, without prior notice or discussion, an additional transfer of future cash collateral and/or fee applications related to the adversary proceeding, the government filed a second re-transfer motion with the Delaware Bankruptcy Court.[5/]  While the Motion is technically correct in stating that the Delaware Bankruptcy Court has not formally ruled on the second re-transfer motion, the United States submits that the second retransfer motion was implicitly overruled when by the 12/12/02 order granting the Akin Gump fee application in Delaware.  At all events, the appeal in the Delaware District Court is raising, among other issues, the issue of whether the Delaware Bankruptcy Court had jurisdiction to adjudicate a fee application, based on the government's argument that the transfer of future cash collateral or fee applications is utterly void and of no effect.  That is also one of the arguments presented in the government's combined opening brief in these appeals as described below, in view of certain issues regarding alleged collateral estoppel effects of rulings in the Delaware adversary proceeding.[6/]

### The Government's *Losing* the Delaware Adversary Proceeding Would Not Moot the Cash Collateral or Fees Issues in these Appeals

Akin Gump argues that if the government loses the Delaware adversary proceeding, the appeals from the cash collateral aspects of the 7/18/02 order and from the 12/23/02 grant of fees to Akin Gump will be moot.  According to Akin Gump, the upholding of the security interest for the junior notes will mean there will be "no Bankruptcy Estate funds in excess of the amounts needed to satisfy the Junior Secured PIK Notes" and thus no funds to pay the United States.

---

5/ All parties have admitted that they initially failed to notice the supplemental transfer provision at the end of the order transferring the adversary proceeding.  The government's motion for interlocutory appeal from the transfer order never mentioned the transfer of the cash collateral and fee applications. Similarly, the government's primary re-transfer motion in Delaware made no mention of those issues because the government was not yet aware of the problem.

6/ While this Court cannot review the orders of the Delaware Bankruptcy Court, its appellate jurisdiction over the Connecticut Bankruptcy Court's ruling on collateral estoppel appropriately raises the issue of whether the Delaware Bankruptcy Court's order is effective for the purpose of determining the issue that Judge Shiff concluded had been determined.

Akin Gump is wrong. It is the position of the United States that a secured creditor who enters a cash collateral agreement with a Chapter 11 debtor releases its lien on the portion of the funds that are authorized to be used pursuant to § 363 for administrative purposes. Once they are released to pay an administrative expense, it is not appropriate, proper, or permissible for the debtor and the secured creditor to suddenly claim that if it turns out that another administrative expense should be paid first or on a par with the one for which the funds were released from the lien, they cannot be used for that purpose. For example, a debtor and secured creditor could not agree to release funds to pay wages of the debtor's employees while refusing to pay the payroll taxes on those wages. In the instant appeal, the government maintains that Akin Gump's fees are not allowable or, in the alternative, are only allowable in parity with the administrative tax expense (calling for *pro rata* sharing of funds available to pay all administrative expenses). If the government is correct, then the amount set aside to pay professional fees may instead be paid for any other lawful administrative expense – *i.e.*, the administrate tax expenses – if it is determined that such expenses have parity with professional fees, or to the extent professional fees are disallowed on the merits.

Presumably anticipating this contention, Akin Gump argues in its Motion that "the Indenture Trustee has already stipulated to the Debtor's use of the Cash Collateral to pay litigation fees." But the government maintains that any such restriction is improper. Any amount of funds freed from the security interest of the indenture trustee must be available for all administrative claims in the proper order of priority provided by the Bankruptcy Code.

That issue – the issue of what should happen to the funds if the government were successful in this appeal in establishing that the fees claimed by Akin Gump are not allowable or not allowable with preference to the administrative tax expenses, but then lost the Delaware adversary proceeding – is not necessarily ripe for this Court to determine in this appeal. But this Court should resolve the fees issues (allowability and priority) in these appeals so that, even assuming the

government loses the Delaware adversary proceeding, it is in a position on remand to argue in the Connecticut Bankruptcy Court that at least the funds carved out of the security interest in order to pay administrative claims should be available to pay part of the administrative tax claims.

That is, assuming the government convinces this Court that it was improper to allow fees to Akin Gump and/or that it was improper to order them disbursed in violation of the equal priority of the tax claim when the estate is administratively insolvent, then the government will be in a position on remand to argue that the security interest in the funds (assuming it is upheld in the Delaware adversary proceeding) has been irrevocably waived and could not be conditioned upon restricting use of the funds to pay one kind of administrative expense in preference to another kind of administrative expense.[7]

Indeed, the very fact that the debtor and indenture trustee entered into that kind of agreement is further reason to convert the case and will also be further grounds to deny any effort by the indenture trustee to re-impose its security interest on remand. The government is aware that some cases have permitted secured creditors to enter settlements carving out funds for lower priority creditors and, in the process, jumping over creditors with intermediate priority. Assuming *arguendo* such cases are good law, the United States maintains they do not apply here. This is not a case where the secured creditor enforced its lien and then gave away part of its funds as saw fit. Here, there has been an application pursuant to 11 U.S.C. § 363 for use of (alleged) cash collateral by the debtor, free of the lien securing the claim of the indenture trustee on behalf of the note holders, under the auspices and supervision of court, for a purpose for which the claims of the professionals must be determined pursuant to 11 U.S.C. § 330.

But even if the government is wrong about this, there are many other reasons not to stay

---

[7] If this Court were instead to rule now, in advance, that a government loss in the Delaware adversary proceeding would indeed moot the fees appeal, such a ruling, although jurisdictional, would arguably preclude the government from asserting any claim even to the more limited amount freed from the security interest of the indenture trustee for the note holders. If this Court wishes to decide this issue now it should invite briefing on the merits of that issue. (The government did not include such an argument in its opening brief as it did not appear to be ripe.)

part of the appeal as further argued below.

### The Suggestion that the Government's *Winning* the Delaware Adversary Proceeding Could Moot the Fees Issues is Disingenuous

On page 7, Akin Gump suggests that if the government wins the Delaware adversary proceeding, the cash collateral issue will be mooted because there will be no lien securing the junior notes and *pro rata* rules would then apply to administrative claims, including that of the IRS and that of Akin Gump for fees. While it is correct that there would be no "cash collateral" anymore, a government win in the Delaware adversary proceeding would, as a practical matter, leave this Court to adjudicate the propriety of having authorized the Akin Gump's services in support of the security interest in the first instance, and in paying for them. In that regard, the fees appeal is not limited to the priority issue. It also concerns the allowability of Akin Gump's fees

It is useful to note that when Akin Gump asked government counsel for a position on its proposal to stay all but the conversion issues in these appeals, government counsel asked if Akin Gump would stipulate that if the government wins the Delaware adversary proceeding, Akin Gump will waive all claims for professional fees for having fought against that outcome. Akin Gump declined.[8/] Thus, it is at least clear that if the government *prevails* in the Delaware adversary proceeding, the fees issues will *not* become moot. Neither will a government win in the adversary proceeding moot much of the real dispute regarding the cash collateral order. In that regard, the government's combined opening merits brief makes clear that the real fight is not over whether the estate funds are in fact "collateral" (which will indeed be governed by the outcome of the Delaware adversary proceeding), but rather the real dispute is over whether it was appropriate to grant a motion under 11 U.S.C. § 363 for use of estate funds outside the ordinary course of business for the purpose indicated in the cash collateral stipulation.

---

[8/] The government also offered to explore a narrowing of the issues by staying only the appeal from the fees order provided the cash collateral issues all go forward, with certain clarifying stipulations as to potential issue preclusion effects. That would enable deferral of just the priority issue – *i.e.*, the propriety of the Bankruptcy Court's order permitting immediate disbursement to pay one administrative expense claim while others go unpaid. Akin Gump again expressed no interest.

## Interrelationship Among the Issues Makes Severance Impractical

Akin Gump implies that the cash collateral and fees issues can be neatly severed from the conversion issues. Unfortunately, it appears that the bankruptcy court premised all three of its rulings on the notion that the Delaware bankruptcy court's order granting the debtor's motion to intervene in the Delaware adversary proceeding was an implicit ruling (1) that debtor's counsel would be compensated for such services, and (2) overruling the government's contentions regarding the conflict of interest on the part of the debtor's management, notwithstanding its 21.5% stake in the recovery by the junior note holders. Accordingly, Judge Shiff held that the law of the case and/or collateral estoppel precluded the government's arguments in Connecticut, whether in opposition to the use of property of the estate, or in seeking a disinterested trustee (via conversion or the appointment of a Chapter 11 trustee), or in objecting to the interim fee application of Akin Gump.

Because of the collateral estoppel issues, as reflected in the government's combined merits brief filed in these appeals as of April 4, 2005, but marked filed on _____, 2005,[9] one of the ways the government is appealing Judge Shiff's rulings is by arguing that any conceivable ruling by the Delaware Bankruptcy Court on the matter of compensating debtor's counsel is void for lack of jurisdiction because the transfer order's last-minute throw-in of the additional transfer of future cash-collateral or fee applications was beyond the statutory authority of the Connecticut Bankruptcy Court.

It therefore appears that, even in addressing the conversion issues, this Court will necessarily have to wade into complex issues that similarly impact the Bankruptcy Court's cash collateral an fees rulings and it will be more efficient to decide those issues at the same time.

It would admittedly be possible to defer ruling on whether, assuming the government's other arguments were rejected, the fees disbursement order should nevertheless be reversed because

---

[9] Under Bankruptcy Rule 8008(a), merits briefs in bankruptcy appeals are "deemed filed" when mailed to the clerk's office.

of the administrative insolvency of the estate, which makes it more appropriate defer any distributions until all claims and their relative priorities are resolved. The United States has referred to this issue in prior papers as the priority issue (as compared to the fees *allowability* issue). When counsel from Akin Gump inquired of counsel for the United States as to the United States' willingness to defer part of these appeals, government counsel indicated a willingness to defer the priority issue only, but Akin Gump rejected that proposal and indicated it would move to stay the cash collateral issue and allowability issue as well.

Due to the interrelationship among the issues, and also in order to avoid unnecessary delay (see below), the government would also prefer not to have to refile its opening brief and limit it to only certain issues. And, once the Court reviews the combined government brief, it may be more efficient for the Court to adjudicate all of the appeal issues at once.[10] The Court can of course determine, when reaching its decision(s), to defer ruling on one or more aspects of the appeal if it determines that is appropriate.

### It is Most Unlikely that the Government Will Lose the Adversary Proceeding

As noted below, there remain reasons to expedite the determination of the conversion issues. Accordingly, to some extent Akin Gump's Motion implicates a balancing of the interest of avoiding adjudication of issues that might evolve and even arguably become moot, on the one hand, against the inefficiency of having the Court first determine the conversion issues and later, if the government prevails in the Delaware adversary proceeding, requiring the Court to re-familiarize itself with the same facts and many of the same legal principles in order to determine the cash collateral and fees claims. In this regard, when Akin Gump asked government counsel for a

---

[10] For example, a ruling by this Court that the debtor's management breached its fiduciary duty in siding with the indenture trustee in seeking to defend the validity of a lien against the bankruptcy estate assets (as a ground to convert to Chapter 7 or at least appoint a disinterested Chapter 11 trustee), surely would portend denial of fees for debtor's counsel. Viewed from the opposite perspective, a ruling that debtor's actions were all perfectly appropriate may undermine the government's objections to the allowability of Akin Gump's fee claims (putting aside the issue of their getting paid fully when the estate is administratively insolvent).

position on its proposal to stay all but the conversion issues in these appeals, government counsel asked if Akin Gump would stipulate that if the government *wins* the Delaware adversary proceeding, Akin Gump will waive all claims for professional fees for having fought against that outcome. Akin Gump declined. Thus, it is at least clear that if the government *prevails* in the Delaware adversary proceeding, the cash collateral and fees issues will *not* become moot.

According, if the government's claims in the adversary proceeding were tenuous or remote, that might weigh in favor of considering bifurcating these appeals and taking up only the conversion issues at this time.

The government maintains that the discovery record produced in the Delaware adversary proceeding makes it at least more likely than not that it will prevail on the merits. As this Court has observed, the Connecticut Bankruptcy Court has already ruled that the 1998 plan, which was *not* confirmed, was part of a tax avoidance scheme that had its inception in the 1996 Delaware bankruptcy case. While the United States recognizes that this Court will not delve deeply into the merits of the Delaware adversary proceeding, a few of the undisputable facts may serve to highlight why the government is most likely to prevail on its equitable subordination claim – the far simpler of the two counts of the government's adversary complaint.[11]

First, it is not disputed that, under the 1996 bankruptcy plan, holders of *unsecured* junior subordinated PIK notes exchanged their pre-1996 securities for new *secured* junior subordinated PIK notes (and with a higher rate of interest), and provided no new cash or other capital investment at the time. Second, the summary judgment briefs filed by the defendants in the Delaware adversary proceeding argue that the assets of Scott Cable in 1996 were worth $142.5 million. While the government claims the value was much less, it is undisputed that the total amount of the company's debt instruments (*i.e.*, including the junior notes that the government maintains are

---

11/ While the United States is equally confident about its position on the debt/equity recharacterization claim, the law in that arena involves the evaluation of numerous factors (the government's summary judgment brief identifies 23 factors) to determine whether what may be debt in form and/or subjective intent is equity in substance when objective analysis of the factors is made.

really equity) was far in excess of $142.5 million. Third, it is also not disputed that, if the assets were sold for $142.5 million, that would generate a large tax on built in gain stemming from the fact that the assets had long been depreciated for tax purposes, which requires corresponding downwards adjustments to basis in computing gain for tax purposes, but had not actually reduced in value by the amounts claimed for tax purposes. Thus, in a liquidation at the time (or at any time since), whether in bankruptcy or outside it, the junior notes would receive no payment at all unless they could be paid in front of gains taxes. A stock sale, on the other hand, would not generate a tax, but the price would be far less than for an asset purchase (and thus far less than the face value of the debt instruments) because the purchaser would assume the depreciated tax basis in the assets, which would both limit its future depreciation deductions and expose it to a large gains tax if the assets ever had to be sold. Without jumping over the tax that would be incurred on the built-in gain in any assets sale, the pre-1996 notes were worthless or nearly so.

Most importantly, the United States has obtained considerable documentary evidence during discovery that reveals that the holders of the unsecured pre-1996 junior notes that were exchanged for the upgraded notes with a security interest were keenly aware of the built in taxable gain stemming from past tax depreciation far in excess of actual value depreciation, the inability to sell the stock at a price that would accord them any recovery, the fact that an assets sale would cause the gain to be recognized and cause the incurrence of the tax thereon, and that one of their main objectives in the 1996 bankruptcy was to upgrade their investment with a security interest so that they would have a superior claim to the an unsecured tax liability resulting from a future liquidation. Worse still, they falsely told the court in the 1996 bankruptcy case that the confirmation of the plan would not likely be followed by a further bankruptcy filing or a liquidation outside bankruptcy. But, in fact, documents and testimony confirm that the junior note holders and management (who held a 21.5% stake in recovery on the junior notes) were always planning to consummate a liquidation within three years of the 1996 reorganization. If they missed that

deadline, they would lose their combined majority control of the board of directors and would risk a liquidation that did not protect their interest. Based on these facts, the government maintains that the use by the junior note holders and management of their combined control of Scott Cable to promote their own interests over the interests of the public fisc is precisely the sort of situation that 11 U.S.C. § 510(c) was designed to remedy.

Unless the Court believes that the government is unlikely to prevail in the Delaware adversary proceeding, and then further concludes that a government loss would preclude it from contesting Akin Gump's fee claims entirely, it would be more appropriate to have all aspects of these appeals proceed now.

### The Argument that "Comity" Counsels in Favor Of Deferral is Fallacious

Akin Gump suggests that comity counsels in favor of deferring the fees appeal until the merits of the Delaware adversary proceeding are determined since the matter is "already pending before" that court. The argument is fallacious. The first appeal here is from a predicate order (the cash collateral order) that was necessary before the Delaware Bankruptcy Court could possibly grant a fee application by Akin Gump. The issues thus arose first in Connecticut and should be decided by this Court. This is precisely why Judge Jordan of the Delaware District Court has stayed the appeal from the Delaware Bankruptcy Court's 12/12/02 order granting one of Akin Gump's fee applications and has explicitly signaled this Court that he (Judge Jordan) believes that this Court should take the lead on the issues currently in appeals in both districts. Moreover, this Court, and only this Court, can hear the appeal from Judge Shiff's 12/23/02 order granting another of Akin Gump's fee applications and posing many of the same issues as the appeal in Delaware.

The *adversary proceeding* currently before the Delaware *Bankruptcy Court*, on the other hand will not remotely address the issues pending in these appeals. The sole issues in the adversary complaint are whether the junior notes are, in substance, equity or, alternatively, whether the secured claim for them should be equitably subordinated.

The Court should deny the indefinite extension sought, which amounts to a request to de-consolidate these recently consolidated appeals.

### Partial Opposition to Alternative Motion
### for a 14-Day Extension of Time to File Brief

Debtor and Akin Gump have alternatively requested that their brief on the cash collateral and fees issues not be due until 14 days after the Court determines their motion to stay the appeals from the cash collateral aspects of the 7/18/02 Order and from the 12/23/02 Order during the pendency of the Delaware adversary proceeding. The United States opposes such an extension unless this Court denies the main motion by the original brief due date of April 22, 2005. As a matter of professional courtesy, the United States will not oppose a two-week extension of the original deadline. Absent prompt action on its Motion, Akin Gump should not assume its brief deadline is being extended, thereby effectively granting itself an extension by merely filing for one. If April 22, 2005 passes and this Court has still not determined the Akin Gump's Motion, then it should determine the merits of the appeal without Akin Gump's brief unless the same has been filed by two weeks from April 22, 2005, or May 6, 2005.

The United States understands that Akin Gump, for itself and on behalf of the debtor, does not intend to file a brief on the conversion issue. If it does so intend, its present Motion does not request an extension and so the deadline currently remains April 22, 2005.

### Cross-Motion to Expedite Appeals (at Least in Part)

As the Akin Gump motion relates, the Delaware Bankruptcy Court has indicated that, if it denies the pending motions for summary judgment, it hopes to try the case in late October, 2005. At the same time, this Court indicated at the March 14, 2005 hearing that it would prefer to dispose of the merits issues in these appeals before the commencement of a retrial in a criminal case expected to be retried in the fall. The implication was that Judge Thompson has time to determine these appeals this summer but, barring that, they may again fall to a "back burner" in light of the Court's other tasks.

Assuming that the Delaware Bankruptcy Court denies the summary judgment motions, the United States strongly desires a ruling on the conversion issue in advance of any trial so that a Chapter 7 trustee (if the case is converted) can make certain related determinations, including whether it is appropriate to afford the government open access to the debtor's files, including *all* attorney-client communications, and whether the trustee should seek to intervene on behalf of, instead of agaisnt, the interests of the bankruptcy estate.

While Akin Gump is correct in observing that the stay this Court granted makes it unnecessary to expedite a determination of the cash collateral and fees issues (save to the extent that they bear on the conversion issues), as noted, it may be most efficient for the Court to grapple with all of the issues together rather than assuming one will become moot only to later have to determine the issues piecemeal.

At all events, the mere fact that this Court might find it prudent to defer ruling on the cash collateral and/or fees issues is not necessary a reason to defer completion of the briefing, thereby essentially severing the consolidation irrevocably. Instead, the Court can have the benefit of full briefing on all issues at once, and thereafter can decide whether it is more appropriate to decide the conversion issues first and separately.

Finally, the United States submits that the sooner a court -- whether this Court or the Delaware District Court -- determines the propriety of the supplement tag-on to the transfer order, purporting to transfer venue for future cash collateral and fee applications, the better. While Akin Gump has refrained from submitting further fee applications during these appeals, there are almost certain to be additional ones when the Delaware adversary proceeding is concluded and it would be best to clear up the jurisdictional lines in advance rather than create still more confusion. For example, if the government prevails in the Delaware adversary proceeding against the security interests for the junior notes, the indenture trustee has made it clear it is claiming a separate and distinct security interest for its attorney's fees and that it has run up $700,000 thus far. The

government may at that time be contesting the claim at least as to its magnitude, and the question will arise: in which court should the indenture trustee's fee application be filed. The United States maintains that only the Connecticut Bankruptcy Court can hear that application. But the provision at the end of the transfer order literally transfers all future fee applications – by anyone. Deferring these appeals, therefore, could ultimately generate even more confusion and additional duplicative appeals in two courts.

And the Delaware District Court has clearly signaled that it believes this Court, rather than the courts in Delaware, is the appropriate forum in which the issues on appeal should be resolved in the first instance at least.

WHEREFORE the United States requests that the Court require debtors and/or Akin Gump to file and serve any answer brief on the cash collateral or attorney fees issues by May 6, 2005, and that the Court ignore any brief filed later than that. The government further requests that oral argument be scheduled for some time in June or July in order to give the Court time to reach a decision before having to embark on a large criminal trial proceeding that it has indicated is likely to begin in the fall.

Respectfully submitted,

PETER SKLAREW
Federal Bar No. CT 17864
U.S. Department of Justice, Tax Div.
P.O. Box 55
Washington, D.C. 20044-0055
(202) 307-6571

Local Counsel:

KEVIN J. O'CONNOR
United States Attorney
ANN M. NEVINS
Assistant United States Attorney
Federal Bar No. CT06484
915 Lafayette Blvd., Room 309
Bridgeport, CT 06604
(203) 696-3000

15

<u>Certificate of Service</u>

IT IS CERTIFIED that service of the **UNITED STATES' OPPOSITION TO MOTION FOR INDEFINITE EXTENSION OF TIME FOR ANSWER BRIEF FOR CERTAIN ISSUES (Which Is Actually a Motion to De-Consolidate the Appeals and Allow Only Part of One of Them to Go Forward), AND CROSS-MOTION TO EXPEDITE APPEALS** has this <u>20th</u> day of April, 2005, been made upon the following by depositing a copy in the United States mail, postage prepaid, addressed to:

Daniel H. Golden
Akin, Gump, Strauss, Hauer & Feld, LLP
590 Madison Avenue
New York, NY  10022

Craig I. Lifland
Zeisler & Zeisler
558 Clinton Avenue
Bridgeport, CT  06605

Ira Goldman
Shipman & Goodwin
One American Row
Hartford, CT  06103-2819

Patricia Beary
Asst. U.S. Trustee
265 Church Street, Ste. 1103
New Haven, CT  06510-7016

Joan Pilver
Assistant Attorney General
State of Connecticut
55 Elm Street, 5th Floor
Hartford, CT 06141

PETER SKLAREW
Attorney, U.S. Dept. of Justice