FILED

2005 APR 22 P 3: 33

DISTRICT COURT
HARTFORD, CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE:<br>    SCOTT CABLE<br>    COMMUNICATIONS, INC.<br>    Debtor | Case No. 3:02cv1725(AWT)<br><br>(Bankr. Case No. 98-51923 AHWS) |
| UNITED STATES OF AMERICA<br>    Plaintiff-Appellant,<br><br>v.<br><br>STATE STREET BANK AND TRUST<br>COMPANY, as Trustee for Junior<br>Subordinated Secured PIK Noteholders,<br>    Defendant-Appellee<br><br>and<br><br>SCOTT CABLE COMMUNICATIONS,<br>INC.,<br>    Intervenor-Appellee<br><br>and<br><br>AKIN, GUMP, STRAUSS, HAUER<br>& FELD, LLP<br>    Appellee | April 22, 2005 |

**BRIEF OF APPELLEE**

**U.S. BANK NATIONAL ASSOCIATION**

# TABLE OF CONTENTS

Counterstatement of the Issues ...........................................................................1

Background ......................................................................................................2

Argument .........................................................................................................4

    I. Standard of Review ...................................................................................4

    II. The Bankruptcy Court Did Not Abuse Its Discretion in Denying the United States' Motion to Convert Because the Avoidance of Unnecessary Delay and Expense of Conversion Is In the Best Interests of Creditors ..........................5

Conclusion ......................................................................................................10

# TABLE OF AUTHORITIES

## Cases

*In re Abijoe Realty Corp.*, 943 F.2d 121 (1st Cir. 1991) ...................................... 5

*In re Scott Cable Communications*, 227 B.R. 596 (Bankr. D. Conn. 1998) ............... 3

*In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999) ...................................... 5

*In re Staff Inv. Co.*, 146 B.R. 256 (Bankr. E. D. Cal. 1992) ............................. 5, 6

*Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219 (9th Cir. 1999) ............................ 5

## Statutes

11 U.S.C. § 1112(b) ................................................................. 5, 6

## COUNTERSTATEMENT OF THE ISSUES

The United States has appealed the following two orders of the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"):

1) the July 18, 2002 Bankruptcy Court Order denying the United States' ("Appellant's") Motion to Convert the Chapter 11 proceedings pending before that court to Chapter 7, pursuant to Section 1112 of the Bankruptcy Code, or to appoint a Chapter 11 Trustee pursuant to Section 1104 of the Bankruptcy Code (the "Order Denying Conversion"); and

2) the Bankruptcy Court's Order authorizing the Debtor, pursuant to Section 363 of the Bankruptcy Code, to use cash collateral securing the lien of U.S. Bank National Association, as Indenture Trustee, on behalf of Noteholders to pay interim fees of Debtors' counsel.

Appellee U.S. Bank National Association, as Indenture Trustee (the "Indenture Trustee"), addresses only the Order Denying Conversion in this brief. The second order appealed by the United States deals with the Bankruptcy Court's authorization of the use of cash collateral for the payment of fees and expenses of

1

Debtors' counsel in this case. The Indenture Trustee does not address that issue except to dispute the unfounded suggestion made by the United States in its April 20, 2005 Opposition to Appellee Akin Gump's Motion for Indefinite Extension of Time for Answer Brief for Certain Issues and Cross-Motion to Expedite Appeals that the Indenture Trustee could somehow be deemed to have waived its lien rights with respect to the amount of fees that are the subject of the cash collateral order, regardless of whether such amounts are actually paid to Akin Gump, and that other administrative claims, i.e. the claims of the government, could be substituted for Akin Gump's claim in such case. The Indenture Trustee wholly disputes this meritless assertion and points out that the government has cited no authority for such a baseless proposition.

## BACKGROUND

As the Court is aware, this case involves events going back more than nine years, to a Chapter 11 proceeding filed by Scott Cable Communications, Inc. in the Delaware Bankruptcy Court in 1996. In that case, a confirmed plan of reorganization created two tranches of restructured, secured notes to be issued by the reorganized debtor to formerly unsecured creditors, one of which was the Junior Secured Notes (the "Notes") for which U.S. Bank acts as Indenture Trustee.

2

On July 10, 1998, the Reorganized Scott ("New Scott") executed an agreement to sell substantially all of its assets to InterLink Communications Partners, LLP, for approximately $165 million, subject to certain adjustments (the "Asset Sale"). Thereafter, New Scott filed a second Chapter 11 bankruptcy petition in the District of Connecticut on October 1, 1998. On or about November 19, 1998, the IRS, through the United States Department of Justice, commenced an Adversary Proceeding against State Street Bank and Trust Company, U.S. Bank's predecessor as Indenture Trustee, attempting to recharacterize the secured debt held by the Noteholders or, in the alternative, equitably subordinate the claim of the Noteholders. The Adversary Proceeding is scheduled for trial in October of 2005.

The United States objected to confirmation of the Debtor's prepackaged liquidating plan, and by order dated December 11, 1998, Chief Bankruptcy Judge Shiff denied confirmation. See In re Scott Cable Communications, 227 B.R. 596 (Bankr. D. Conn. 1998). Thereafter, the Debtor sought authorization to consummate the Asset Sale outside the context of its Chapter 11 plan of reorganization, and by order dated January 14, 1999, the court approved such sale. The closing of the Asset Sale occurred as of

3

February 1, 1999, creating capital gains tax liabilities that constitute priority claims to be paid prior to *unsecured* claims in the Connecticut bankruptcy.

All proceeds of the sale to Interlink were distributed to secured creditors with the exception of amounts that would otherwise have been distributed to the Indenture Trustee but for the pending Government's adversary proceeding. These remaining cash proceeds are the only assets currently remaining in the estate and are the only assets that have been in the estate since 1999.

The United States moved to convert the case to Chapter 7, or in the alternative for the appointment of a Chapter 11 Trustee. The Bankruptcy Court's July 18, 2002 Order denying that motion is the subject of the instant appeal.

## ARGUMENT

### I. STANDARD OF REVIEW

When considering a Section 1112(b) motion to convert a Chapter 11 case to a Chapter 7 case, the Bankruptcy Court has wide discretion to decide the appropriate disposition of the case. In exercising that discretion, the court determines whether

4

conversion is in the "best interest of creditors and the estate." In re Staff Inv. Co., 146 B.R. 256, 260 (Bankr. E.D. Cal. 1992); see also 11 U.S.C. § 1112(b). While Section 1112(b) lists several factors, that list is not exhaustive.

On appeal, the Bankruptcy Court's decision is reviewed under an abuse of discretion standard. In re SGL Carbon Corp., 200 F.3d 154, 159 (3d Cir. 1999); see also Leavitt v. Soto (In re Leavitt), 171 F.3d 1219 (9th Cir. 1999); In re Abijoe Realty Corp., 943 F.2d 121, 128 (1st Cir. 1991). Specifically, the lower court's findings of fact are reviewed for "clear error" and its conclusions of law are reviewed *de novo*. SGL Carbon, 200 F.3d at 159.

## II. THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE UNITED STATES' MOTION TO CONVERT BECAUSE THE AVOIDANCE OF UNNECESSARY DELAY AND EXPENSE OF CONVERSION IS IN THE BEST INTERESTS OF CREDITORS

Although the Indenture Trustee believes that conversion may be appropriate at some point in this case, following resolution of the Delaware Adversary Proceeding, conversion now would inevitably lead only to delay and expense caused by that delay. The Indenture Trustee does not dispute that a Chapter 11 Plan is not expected to be confirmed in this case. Contrary to the assertions of the United States, however, *it does*

5

*not follow* that conversion at this stage in the proceedings is warranted or appropriate. Conversion would only be detrimental at this stage of the proceedings.

Conversion is only appropriate if it is in the best interests of creditors and the estate. In re Staff, 146 B.R. at 256; see also 11 U.S.C. § 1112(b). When the Bankruptcy Court exercised its discretion not to convert, it determined that the only remaining issue in the case was the subject of an adversary proceeding concerning the relative rights of party claimants. It determined that conversion would be inefficient, prejudicial and would only lead to further diminution of the estate. These facts have not changed. Conversion now is therefore not only *not* in the best interests of creditors, but could be significantly detrimental to the estate. The Bankruptcy Court's decision was fully supported by the facts of the case, was well within the discretion of the Bankruptcy Court and was not an abuse of discretion. The decision continues to be supported by the present state of facts.

This case cannot afford further delay, and the expense that necessarily results from such delay. The remaining estate consists *solely* of cash assets securing claims of the Noteholders and the Indenture Trustee. The assets of the Debtor have been sold and no operations remain. There is nothing left to do in the case other than resolve the

pending adversary proceeding, a dispute between the United States, the Indenture Trustee and the Noteholders (the "Delaware Adversary Proceeding"). Discovery in the Delaware Adversary Proceeding is closed and summary judgment motions have largely been briefed. It is scheduled for trial in October of 2005. Conclusion of the dispute is long overdue and the matter is finally on the verge of resolution before the Delaware Bankruptcy Court.

The Indenture Trustee's concern is that the appointment of a Chapter 7 Trustee now will prolong the litigation, pending since 1998, which has been exhaustive and is finally ripe for resolution on the merits. This concern is not without reason. If this case is converted, one of two things will occur: 1) the Chapter 7 Trustee will determine that no action on its part is necessary or appropriate, thereby maintaining the status quo, or 2) the Chapter 7 Trustee will seek to participate in the Delaware Adversary Proceeding.[1] In

---

[1] Presumably a Chapter 7 Trustee would only participate, if it concluded that the prospect of a 3% recovery in the event the United States prevailed in the Delaware Adversary Proceeding was worth the risk of not recovering for its services if the Indenture Trustee and the Noteholders were to prevail. Of course, if the Indenture Trustee and Noteholders prevail, there would be no assets to pay a Chapter 7 Trustee, and the Indenture Trustee and the Noteholders do now and will not agree to any carve-out to make such a payment.

7

the second scenario, further delay is a tremendous risk, since a Chapter 7 Trustee would foreseeably conclude that it needed significant time to review the extensive (to put it mildly) facts and procedural history of this case, which includes a seven-year history of the Delaware Adversary Proceeding and a ten-year history of Scott Cable's bankruptcy proceedings. The United States has made no secret of the fact that, if this case is converted and a Chapter 7 Trustee appointed, it intends to seize the opportunity to seek to reopen discovery, potentially take further depositions, file further motions and appeals, and, generally, rehash issues long since adjudicated and concluded. Any continuance of the scheduled trial -- which the Indenture Trustee would strenuously oppose -- would needlessly delay resolution of the last remaining issue in this case, keep this case pending, and result solely in further expense and possible re-litigation of issues long since decided. Such a result would benefit no one.

We simply cannot understand why the United States is pursuing conversion at this stage of the proceedings. The issues in the Delaware Adversary Proceeding are being pursued adequately and comprehensively by both sides, each of which is extremely

8

capable of representing its interests.[2] Anything a Chapter 7 Trustee might do at this stage in the case would be duplicative and a waste of estate resources.[3]

The Bankruptcy Court in entering the Order Denying Conversion was cognizant of these issues and the consequences of conversion. It was fully aware of the procedural posture of this case. It was fully aware of the nature of the adversary proceeding that it had transferred to Delaware. And most importantly, it was keenly aware of the history of the case and what was left to be done before the bankruptcy proceedings could be concluded. The Connecticut Bankruptcy Court decided, correctly, that conversion of this case and the appointment of a Chapter 7 Trustee would serve no legitimate purpose, and nothing has changed to alter that conclusion. In light of all this, the Bankruptcy Court did not abuse its discretion in denying conversion.

---

[2] It must be noted that, consistent with the United States' strategy throughout these proceedings, this past week the United States filed a 74-page reply brief, a 72-page brief, a 54-page brief, a 20-page brief, an 88-page statement of facts, and a full banker's box of exhibits. These filings pertain to this appeal and to the summary judgment motion pending in the Delaware Adversary Proceeding, and adequately demonstrate that the United States does not need another representative making arguments on its behalf.

[3] The United States suggests that it needs to have a disinterested trustee determine whether to pursue a § 506(c) carve-out for the payment of its tax as an administrative expense associated with the sale of Debtor's assets. U.S. Brief at 31–34. On this issue, we agree with the arguments previously articulated by the Debtor. The United States brought the § 506(c) issue before the Bankruptcy Court and lost on the merits. The law of the case is already established and a Chapter 7 Trustee, if appointed, could not bring a new § 506(c) claim.

9

The Indenture Trustee recognizes that this brief is a concise response to the lengthy 75-page brief of the United States. We simply believe that much of the United States' Brief is irrelevant to the issue at hand, and do not wish to expend resources responding to each remark of the United States and engaging in banter on issues that are not material to the matter to be decided by this Court. This should in no way be interpreted to suggest that the Indenture Trustee agrees with the statements made by the United States in its brief. In fact the Indenture Trustee takes issue with many of the legal and factual interpretations set forth in the United States' Brief. For the sake of efficiency and expense, we have limited this brief to the matters we believe are material to the conversion issue.

## CONCLUSION

For all of the foregoing reasons, the Bankruptcy Court's order denying the United States Motion to Convert or for Appointment of a Chapter 11 Trustee, dated July 18, 2002, should be affirmed. To the extent that this Court finds that the Bankruptcy Court's Order Denying Conversion should be overturned, the Indenture Trustee contends that the matter should be remanded to Judge Shiff for further consideration in light of

such appellate court ruling, given that the Bankruptcy Court is privy to the extensive history and facts of this case and is in the best position to make such a determination.

Dated: April 22, 2005

SHIPMAN & GOODWIN LLP

_____
Kathleen M. LaManna (ct16740)
Ira H. Goldman (ct05656)
Marie C. Pollio (ct26644)
One Constitution Plaza
Hartford, CT 06103-1919
Email: bankruptcy@goodwin.com

Attorneys for U.S. Bank National
Association, as Indenture Trustee

400919 v.03 S3

11

**Certificate of Service**

      This is to certify that the attached Notice of Appearance for Kathleen M. LaManna was mailed via first class U.S. Mail, postage prepaid, to the following on the 22nd day of April, 2005.

Craig I. Lifland
Zeisler & Zeisler, P.C.
558 Clinton Ave., Po Box 3186
Bridgeport, CT 06605-0186

Daniel H. Golden, Esq.
Akin, Gump, Strauss, Hauer & Feld, LLP
590 Madison Avenue
New York, NY 10022

Peter Sklarew
U.S. Department of Justice
Tax Division
PO Box 55, Ben Franklin Station
Washington, DC 20044-0055

Alan M. Shapiro, Esq.
US Department of Justice
Tax Division
555 4th Street NW, Room 7122
Washington, DC 20044

1

Patricia Beary
U.S. Trustee Office
265 Church St.
Suite 1103
New Haven, CT 06510-7016

Ann M. Nevins
U.S. Attorney's Office-BPT
915 Lafayette Blvd. Room 309
Bridgeport, CT 06604

Joan Eisenman Pilver
State of Connecticut
Attorney General's Office
55 Elm St., PO Box 120
Hartford, CT 06101-0120

_____
Kathleen M. LaManna (ct16740)

2