UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re:<br><br>SCOTT CABLE COMMUNICATIONS, INC.,<br><br>　　　　　Debtor.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Appellant,<br>　v.<br><br>SCOTT CABLE COMMUNICATIONS, INC.,<br>STATE STREET BANK AND TRUST CO. as<br>Indenture Trustee for certain note holders, and<br>AKIN, GUMP, STRAUSS, HAUER & FELD, LLP,<br><br>　　　　　Appellees | **No. 3:02-CV-1725 (AWT)**<br>(consolidated bankruptcy appeals)<br>(Bankr. Ct. Case No. 98-51923)<br><br><br><br><br><br><br><br><br><br>**[corrected manual filing<br>　to replace DI#64]** |

**COMBINED REPLY TO RESPONSES OF DEBTOR (DI# 67) AND
INDENTURE TRUSTEE (DI# 68) TO U.S. REQUEST (DI# 60)
THAT ANY JUDGMENT REMOVE 10-DAY STAY, ETC.
(and Request for Leave to File Reply if Necessary)**

　　Debtor and the Indenture Trustee have filed similar responses to DI# 60, which contains the government's request that any appellate judgment remove the 10-day stay in Bankruptcy Rule 8017. Both incorrectly argue that the government's request is premature. Both misstate events on the record in the Delaware adversary proceeding, with the debtor's responses incorrectly adding that the government's request collaterally attacks a ruling in that proceeding. Perhaps the most important error in debtor's response is that it incorrectly claims that conversion to Chapter 7 is unnecessary because of the ruling in Delaware invoking the crime-fraud exception to the attorney-client privilege. The Indenture Trustee's response, on the other hand, misstates the law governing this Court's authority to stay the Delaware proceeding. The government wishes to reply and seeks leave to do so to the extent necessary.[1/]  The reply begins on the following page.

---

　1/ Fed.R.Bankr.P. 8011's title refers to replies but its text does not.  The United States does not believe that replies are automatically allowed but the appellees have used replies to support motions in these consolidated appeals.   Local Rule 9(g) permits replies in support of motions but its applicability in a bankruptcy appeal is doubtful.

**REPLY**

First, debtor argues that the government's motion was without "leave of court." Leave of court is not required to file a motion to remove the 10-day stay. Bankruptcy Rule 8011 permits motions related to any bankruptcy appeal.

Second, both responses falsely depict the government's motion as telling this Court how to rule, and then argue that the request is not ripe. The government's filing actually states that its purpose was "to request, *if this Court reverses the bankruptcy court's denial of conversion to Chapter 7*, that it remove the 10-day stay of judgment in Bankruptcy Rule 8017(a), without prejudice to an appeal by any appellee, and issue a clear appellate mandate directing the bankruptcy court to act immediately to enter the order converting the case to Chapter 7 so that the United States Trustee's office is thereby enabled quickly to appoint a trustee." Obviously, the United States did not expect the Court to rule on the request until a judgment is issued, at which point the request will be ripe. Where it is clear that time will be of the essence, a party need not await a judgment to request removal of an automatic 10-day stay "if" the Court rules in its favor.[2]

Third, contrary to both responses, the government has already asked Judge Carey to postpone the trial in the adversary proceeding until the government's appeal from the denial of conversion is concluded, and, if the case is converted, then until a trustee has a reasonable time to determine whether to waive the attorney-client privilege. The request was made in the government's papers in support of its motion to continue the trial, it was made at the March 29, 2006 hearing, it was made again at the April 12, 2006, hearing, and it was made in the April 11, 2006 filing in Delaware that was attached as an exhibit to the government's request in this Court (DI# 60, exhibit at p.4).

Fourth, Judge Carey did, in effect, rule on the request by not ruling on it. There is thus no

---

[2] Debtor's response purports to grant itself leave to file another response after a judgment is entered. The Court should take notice that the response the debtor already filed does not stop at arguing that the government's request is premature; it goes on discuss several asserted reasons why the government's request should be denied.

assurance that this Court will have sufficient time to rule and that a trustee, if one is appointed, will have sufficient time to get up to speed before a trial begins June 12. It is true that Judge Carey, after asking the government whether it would seek a further stay if this Court did reverse and mandate conversion (to which government counsel responded that he would ask for time for a trustee to get up to speed and determine whether to waive the attorney-client privilege), indicated that he did not need to address that issue yet. But the government is not "collaterally attacking" that ruling (which is not a ruling at all). To the contrary, this is precisely why the government's primary request to this Court was not for an immediate stay, but only to "retain jurisdiction" to grant one if and when necessary to preserve the effectiveness of any relief granted in the appeal.[3/] Nevertheless, in case this Court was disinclined to retain jurisdiction, the government, as a fallback, and only as a fallback, requested that, again "if" this Court reverses the denial of conversion, it then include in its judgment an order staying the Delaware trial for a limited period in order to assure that a trustee can make a reasoned determination of whether to waive the privilege sufficiently in advance of trial to assure that the government has time to review the files of the debtors' attorneys in advance of a trial.[4/]

In this regard, it is important to take notice that the debtor's response expressly states that "[i]f the United States is not satisfied with Judge Carey's handling of [a subsequent request for a stay], it can then file whatever motions are procedurally *and jurisdictionally* appropriate." It is thus clear that debtor is reserving the right to allege that this Court's jurisdiction will have lapsed if

---

  [3/] With a transcript not yet available, it is admittedly difficult to be 100% confident in hindsight of what precisely was stated at this point. But it matters not because (1) the government's papers clearly requested postponement of the trial until the appeal from denial of conversion was concluded, and (2) if this Court reverses that denial before the trial, but leaving insufficient time for a trustee to get up to speed and determine whether to waive the privilege and/or for the government to review the files of the debtor's attorneys, then the government will file a request for a further stay with the Delaware Bankruptcy Court and only request one from this Court if the trial judge denies the request.

  [4/] DI# 60 in fact states that "[t]he United States respectfully submits that retention of jurisdiction is less intrusive and commits to the Delaware Bankruptcy Court in the first instance the discretion to consider reasonable further requests by the United States (or by a trustee if a trustee chooses to seek to intervene in the Delaware adversary proceeding)."

it does not retain jurisdiction at the time it issues an appellate judgment.  Accordingly, this Court should simply retain jurisdiction and then, as debtor suggests, the United States will first request a stay from Judge Carey again, and only if necessary will the United States then bring the matter before this Court.

The Indenture Trustee incorrectly argues that this Court lacks jurisdiction to stay the Delaware proceeding.  In support it cites non-bankruptcy precedents holding that venue transfer deprives the transferor court of jurisdiction.[5]  Non-bankruptcy precedents are wholly inapposite.  Bankruptcy Rule 8005 expressly authorizes this Court to stay any other "proceedings" in the bankruptcy case.  That is clearly a reference to "proceedings" falling under 28 U.S.C. § 1334(b), whereas the "case" falls under the jurisdiction of § 1334(a).  One of the kinds of proceedings described in 28 U.S.C. § 1334(b) is a "proceeding arising under title 11."  That refers to causes of action created by the Bankruptcy Code itself (as opposed to non-bankruptcy causes of action "arising in or related to a case under title 11").  The government's adversary complaint that was transferred to Delaware arises under 11 U.S.C. § 502 and 510(c), because count I objects to a claim for a debt (alleging it is really equity in substance) and count II seeks equitable subordination.  This Court has the power to stay that proceeding to the extent this Court decides that the government was always entitled to have a disinterested trustee be appointed and thereupon determine whether to waive the debtor's attorney-client privilege in connection with that proceeding.

Looked at another way, this Court has before it in this appeal the issue of which Chapter this case should have proceeded under since 2002 when Judge Shiff denied the governments motion.  If it decides that it was reversible error to deny the government's motion to convert (or appoint a Chapter 11 trustee) in 2002, this Court has the power to mandate an appropriate remedy to undo the effects of that error.  In addition to Rule 8005, 11 U.S.C. § 105 affords this Court the authority to issue any order necessary to protect its appellate jurisdiction or to retain jurisdiction

---

[5] Despite the "In re" in the case name, In re Warrick, 70 F.3d 736 (2d Cir. 1995), is not a bankruptcy case or proceeding.

4

sufficient to assure that the relief it grants in this appeal is not immediately nullified by further proceedings in the bankruptcy case, or in any adversary proceeding therein.  It should also be borne in mind that "exclusive" *in rem* jurisdiction over the bankruptcy estate is ultimately vested in this Court, pursuant to 28 U.S.C. § 1334(e), referred to its bankruptcy "unit" (28 U.S.C. § 151) under 28 U.S.C. § 157.  Ultimately, it is by the exercise of this Court's primary *in rem* jurisdiction that any judgment of the Delaware Bankruptcy Court can be given effect or enforced.  Incident to its *in rem* jurisdiction, this Court may stay any proceeding in the country (in any court – state or federal) that has the potential to affect the rights to and distribution of the estate.  See Celotex Corp. v. Edwards, 415 U.S. 300, 313 (1995) (bankruptcy court could enjoin federal district court action in another district pursuant to its power under 11 U.S.C. § 105, even if the action was not statutorily stayed by 11 U.S.C. § 362).

  This Court, on March 14, 2005, rejected similar arguments by the appellees when, incident to the government's appeal from the July 2002 order overruling the government's objections to the cash collateral stipulation of the debtor and the indenture trustee, this Court stayed the Delaware Bankruptcy Court's 12/12/02 order directing the debtor to disburse funds to pay for services rendered by debtor's counsel in the Delaware adversary proceeding.  (The Delaware District Court had theretofore stayed the distribution only temporarily – until this Court ruled.)

  Debtor's response falsely claims that because the government "successfully brought a motion in the Delaware adversary proceeding to compel the Debtor to produce documents it had withheld on the basis of the attorney-client privilege," and then was granted a second deposition of one of debtor's former attorneys (Stanley Bloch), "the United States has already received what it argued before this Court to be a principal benefit of conversion to chapter 7: access to Debtor's privileged documents."  (Debtor's Resp. p.5.)  The debtor then argues that a trustee "will serve no purpose other than to further the United States' relentless attempts to avoid going to trial."  The debtor's counsel is well aware that the United States moved to compel production of a limited

5

number of documents and has, to this day, never been given open access to all of the files of debtor's attorneys.  Also, various witnesses asserted the debtor's attorney-client privilege in refusing to answer questions in their depositions, including the debtor's chief executive officer and principal, Bruce Armstrong, his predecessor, Steven Simmons, and another one of debtor's former attorneys, Michael Blumenthal.  Further, as this Court is no doubt cognizant, reasonable minds may sometimes differ on the relevance or responsiveness of documents to a discovery request and requesting a few documents from a privilege log is no substitute for open access to the universe of available documents in an attorney's files.[6/]  Perhaps most probative is the fact that the debtor has declined invitations to waive its attorney client privilege and direct its attorneys to open their files to government counsel.

Partly to support the contention of "relentless . . . efforts to delay" for no logical reason, and partly in an effort to prejudice this Court against granting a stay, Part III of debtor's response misrepresents the procedural history in Delaware.  Since debtor has not filed the entire Delaware record with this Court, it is inappropriate for it to be characterizing that record overall as reflective of unreasonable government delay.[7/]  The United States maintains that, in fact, 80% of the seven years it has taken for the adversary proceeding to be close to trial is due to wasteful litigation tactics of the debtor and the indenture trustee and their note-holder co-defendants in the adversary proceeding.

Debtor's response incorrectly states (p.5) that on March 7, 2006, Judge Carey denied re-

---

[6/] The United States is not listing here all of the reasons it seeks a waiver of the privilege.

[7/] The debtor correctly states that Judge Walsh's letter reassigning the Delaware adversary proceeding to Judge Carey stated that he found the government's recusal motion meritless, but the implication that the motion's purpose was for delay is incorrect an unwarranted.  The motion required the approval of the Assistant Attorney General for the Tax Division, Department of Justice, and was reviewed and approved at multiple levels.  Had Judge Walsh stayed on the case, the government was prepared to seek a writ of mandamus to remove him as his recusal was clearly mandated under Third Circuit precedent (which favors interlocutory review by mandamus procedure where recusal motions are denied).  And, that, as we informed the parties to the Delaware adversary proceeding when they made a similar accusation of delay on the record there, would probably have resulted in far greater delay since the government would have sought a stay pending disposition of the petition for the writ.

6

transfer to Connecticut and then on March 8, 2006, the United States moved to continue the trial. In fact, the motion for re-transfer was not heard or ruled upon until March 29, 2006. The March 8, 2006 motion to continue the trial had nothing to do with the motion for re-transfer.[8]

     For present purposes, the most important consideration regarding any delay is that it is only because the absurd insistence of the debtor and the indenture trustee that the 21.5% stake in any recovery on the secured claims of the junior subordinated PIK note holders that is held by debtor's management does not present a conflict of interest, and that the debtor is nevertheless a "disinterested" fiduciary for the bankruptcy estate, that this case was not converted to Chapter 7 four years ago. Accordingly, any eleventh-hour delay that is now engendered by the appointment of a trustee prior to the trial in Delaware is the appellees' fault, not the government's.

                                              PETER SKLAREW
                                              Federal Bar No. CT 17864
                                              U.S. Department of Justice, Tax Div.
                                              P.O. Box 55
                                              Washington, D.C. 20044-0055
                                              (202) 307-6571

*Local Counsel:*

KEVIN J. O'CONNOR
United States Attorney
ANN M. NEVINS
Assistant United States Attorney

---

[8] It had to do with the work-load of the government's lead trial attorney, Alan Shapiro, and was necessitated partly because of the filing by the debtor and its co-defendants of four extensive pre-trial motions on March 1, and partly because defendants had refused to enter reasonable stipulations regarding foundational facts for the admissibility of certain business records and certain facts for which the government obtained sworn declarations. This caused the government to have to draft an extensive motion for trial depositions of unavailable witnesses to gain admissibility of documents that were not even disputed in the summary judgment proceedings in 2005. Not surprisingly, at the April 12, 2006 hearing, Judge Carey granted the government the requested trial depositions, except to the extent the defendants agreed at the hearing to certain of the stipulations originally requested, after the Court made it clear the government would get more depositions if the defendants did not stipulate. This was typical of the predilection of debtor and its co-defendants to litigate every minor issue to the eyeballs, causing needless delay, which the debtor and its co-defendants then blame on the government.

## CERTIFICATE OF SERVICE

    IT IS CERTIFIED that service of the **COMBINED REPLY TO RESPONSES OF DEBTOR (DI# 67) AND INDENTURE TRUSTEE (DI# 68) TO U.S. REQUEST (DI# 60) THAT ANY JUDGMENT REMOVE 10-DAY STAY, ETC. (and Request for Leave to File Reply if Necessary)** is, this <u> 21st </u> day of April, 2006, being made on counsel for the appellees by first class mail, postage prepaid, addressed as follows:

Daniel H. Golden  
Akin, Gump, Strauss, Hauer & Feld, LLP  
590 Madison Avenue  
New York, NY  10022  

Craig I. Lifland  
Zeisler & Zeisler  
558 Clinton Avenue  
Bridgeport, CT  06605  

Ira Goldman  
Shipman & Goodwin  
One American Row  
Hartford, CT  06103-2819  

Patricia Beary  
Asst. U.S. Trustee  
265 Church Street, Ste. 1103  
New Haven, CT  06510-7016  

Joan Pilver  
Assistant Attorney General  
State of Connecticut  
55 Elm Street, 5th Floor  
Hartford, CT 06141  

_____  
ANN M. NEVINS  
Assistant United States Attorney