UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re:<br><br>SCOTT CABLE COMMUNICATIONS, INC.,<br><br>   Debtor.<br><br>UNITED STATES OF AMERICA,<br><br>   Appellant,<br>   v.<br><br>SCOTT CABLE COMMUNICATIONS, INC.,<br>STATE STREET BANK AND TRUST CO. as<br>Indenture Trustee for certain note holders, and<br>AKIN, GUMP, STRAUSS, HAUER & FELD, LLP,<br><br>   Appellees | **No. 3:02-CV-1725 (AWT)**<br>(consolidated bankruptcy appeals)<br>(Bankr. Ct. Case No. 98-51923) |

**REQUEST THAT COURT TAKE JUDICIAL NOTICE OF CERTAIN
EVENTS IN DELAWARE ADVERSARY PROCEEDING, INCLUDING
RESCHEDULED TRIAL, AND STATEMENT OF CONTINUED NEED
FOR DECISION AS SOON AS POSSIBLE ON THE CONVERSION ISSUE**

On May 23, 2006, this Court, in a telephonic hearing, announced that it would be issuing a decision reversing the bankruptcy court's denial of the government's motion to convert the bankruptcy case to Chapter 7 and either ordering conversion or remanding with instructions to convert, but explained that it intended to issue a written decision that was not yet written. This Court was aware that the trial in the Delaware Bankruptcy Court was set for June 8, 2006, and that a hearing was set for the next day in the Delaware District Court on a related appellate matter.

The United States now requests that this Court take judicial notice of certain events in the Delaware adversary proceeding, including the postponement of the trial in light of this Court's anticipated forthcoming decision, and also wishes to highlight the continued need for a decision well in advance of the rescheduled trial date, in light of the matters to which a Chapter 7 trustee may need to attend prior to the commencement of a trial, as recently discussed before the Delaware

1

Bankruptcy Court.  (The next hearing in the Delaware adversary proceeding is set for August 16, 2006, and it would be helpful for a Chapter 7 trustee to have already been appointed by that time.)  For these purposes, the United States attaches transcripts of a telephonic hearing held on June 5 and 8, 2006, in the Delaware Bankruptcy Court, and then calls this Court's attention to certain statements reflected therein which the United States considers germane to the continued need for a decision as soon as possible on the conversion issue in these appeals.  (This Court has not indicated definitively whether the decision will address the other issues in these appeals or sever the conversion issue from the other issues.)

Preliminarily, this Court may first wish to note the results of the hearing in the Delaware *District* Court on May 24, 2006.  The hearing was on a motion by the government for leave to appeal the denial of a motion to retransfer venue to Connecticut in light of the evaporation of the reason it was transferred to Delaware in 2001 (*i.e.*, to have it be determined by Judge Walsh, who has since reassigned the matter to Judge Carey), and the fact that various witnesses the government wanted to subpoena to trial are within the subpoena range of the Connecticut Bankruptcy Court, but not the Delaware Bankruptcy Court.  Judge Jordan of the Delaware District Court denied the motion for leave to appeal, but added that he was not addressing certain reasons that the government argued had come to light after Judge Carey's ruling denying the motion for retransfer, including this Court's announcement, the preceding day, of its intention to reverse the denial of conversion to Chapter 7 (and including other information that had recently come to the government's attention regarding certain documents prepared by debtor's former New York attorneys who are beyond the subpoena power of the Delaware Bankruptcy Court).  A transcript of the May 24, 2006 argument before Judge Jordan is not attached, but will be supplied promptly if this Court so directs.

At a telephonic hearing on June 5, 2006, and continued on June 8, 2006, the Delaware Bankruptcy Court granted a government motion to postpone the trial and reset it to begin October

2

16, 2006, and issued certain other rulings that bear on the continued need for a decision on the conversion issue in these appeals as soon as possible.  The following description of various portions of the transcripts is set forth to help this Court direct its attention toward particular portions of the transcripts that it might wish to read, while excluding other portions, and to present a few matters to which the government would call this Court's attention.  At pages 3-7 of the June 5, 2006 transcript, the undersigned recites the recent history of the interaction between this appeal and the Delaware trial and describes the May 23, 2006 telephonic hearing before this Court, at which this Court gave advance indication of what it's bottom line ruling would be on the conversion issue in these appeals.  At pages 7-17, the undersigned argues the government's motion to postpone the Delaware trial.  At pages 17-30 Mr. Schwartz, for Media Communications Partners (one of the lead note holder defendants) argues in opposition to postponement, followed thereafter by counsel for the debtor, counsel for Allstate Insurance (another note holder defendant), and counsel for the indenture trustee who all, for the most part, seconded Mr. Schwartz's arguments (pp. 30-32), and followed thereafter by rebuttal by the undersigned (pp. 33-45) and sur-rebuttal by defendants' attorneys (pp. 46-49).

One point Mr. Schwartz stressed is that the postponement sought was "open-ended and could lead to extensive delay upon delay."  (6/5/06 Tr. at 18.)  He added that this would result in "an indefinite holding pattern" based on a motion to convert that was denied (by Judge Shiff) "nearly four years ago."  (Id. at 19.)  Judge Carey then interrupted to note that he had placed a call that morning to Judge Thompson, who had confirmed the intention to convert or remand with instructions to convert the case to Chapter 7, and that "this was something on which he was presently working, and that a written decision would be issued soon" but that Judge Thompson could give "no specific date."  (Id. at 19-20.)

Mr. Schwartz continued by arguing about various events that the government envisioned all being completed before the trial could go forward:

> So, what the government envisions is that we put this adversary proceeding into a state of abeyance for an uncertain period of time, and wait not only for the decision in Connecticut, but for the actual appointment of a trustee, for the trustee to retain counsel of [sic] the trustee retains – to obtain access to the voluminous record of this adversary proceeding with facts dating back to 1988, and then wait for the trustee to obtain access to the record of the two bankruptcy cases that were filed. Then we would wait for the trustee to obtain access to whatever privilege documents might exist. Then the trustee and his or her counsel would have to review and digest all the documents that were assembled and make a determination whether to take a position on the merits, and if so, what position.

(Id. at 20-21.)  Mr. Schwartz also argued that the government maintained it would need to review any documents and had indicated it may then may seek depositions to garner testimony enabling the admission of any new documents into evidence, given that debtor's attorneys were located beyond the subpoena range of the Delaware Bankruptcy Court.  (Id. at 20.)

Another noteworthy point made by Mr. Schwartz is that the note holders will be arguing that a Chapter 7 trustee is bound by a cash collateral stipulation agreed to by the debtor in possession immediately after the case was filed in 1998, and "so ordered" by Judge Shiff, purporting to preclude a future Chapter 7 from challenging the security interest.  (Id. at 26-27.)  The government maintains that the provision is patently void and not binding on a future Chapter 7 trustee (see id. at 36), but what is more important to note for present purposes is that it is clear that a trustee's determination of whether or not to intervene in the adversary proceeding is going to be the subject of considerable efforts by the defendants to dissuade the trustee from intervening. (Defendants have also indicated that they will attempt to dissuade the trustee from waiving the attorney-client privilege.)  See also id. at 29 (Mr. Schwartz arguing that postponing the trial for a trustee will lead to "satellite litigation over various issues of privilege and the cash collateral order, and other things").

This Court may also wish to note that, at page 44, the undersigned took issue with the defendants' depiction of the time that a trustee would need to get up to speed, arguing that a trustee could read the parties' respective pre-trial statements and make an expeditious determination of where the estate's interests lie.  Nevertheless, the United States informs this Court that the pretrial

4

statements are extremely large (including 681 enumerated fact contention paragraphs of the government and 277 proffered by the defendants), and it would be wrong to assume that a trustee will not require at least several weeks of reading, research, possibly meeting with the parties' attorneys, and deliberating.

Judge Carey's ruling on the postponement motion begins at page 49 of the June 5, 2006 hearing transcript. Among the points we would emphasize here is that Judge Carey stated that he was "not, as you know, prepared to delay trial based upon the fact that the appeal was pending, but now that the District Court has indicated that it's going to make a decision and has indicated the reason why, *we're close enough, I think that – to having that decision* that I think it does make sense to postpone trial." (Id. at 51 (italics added).) Judge Carey stated that he would "set a firm trial date, which I hope will give the trustee enough time to do whatever it is he decides he wishes to do." (Id.) He first sought to have the trial begin in September (id.) but, due to scheduling conflicts among counsel, ultimately set it to begin October 16 (and including three weeks). Judge Carey also recognized that a trustee could conceivably seek to have the adversary proceeding be re-transferred to Connecticut, notwithstanding the denial of the government's motion to that effect, assuming the trustee sought to intervene.[1]

Judge Carey made other rulings on separate government motions that also bear on the amount of time that may be necessary for the parties to prepare for the October 16, 2006 trial in Delaware. Prior to the June 5 hearing, Judge Carey had granted the government leave to take a Rule 30(b)(6) deposition of the Baer Marks law firm in New York City, in respect to three documents that had been produced when Judge Walsh had overruled the debtor's attorney-client privilege assertion based on the crime-fraud exception ("the compelled production"), in respect to which the government had already deposed some specific Baer Marks attorneys. Just before the

---

[1] Judge Carey expressed cognizance that the Delaware District Court had recently denied the government's motion for leave to appeal re-transfer of venue to Connecticut but observed, in that denial, that the District Court was not addressing recent events including but not limited to this Court's announcement, on May 23, 2006, that the case would be converted to Chapter 7. (6/5/06 Tr. at 51-52.)

June 5 hearing, the government learned that it had been working from an incomplete set of documents constituting the compelled production and moved to expand the scope of the Baer Marks deposition that had been allowed in order to ask questions about documents not covered at all during prior depositions of Baer Marks lawyers.[2/]  During the June 5 hearing, Judge Carey ordered the postponement of already-granted Rule 30(b)(6) deposition until after the appointment of a Chapter 7 trustee, and reserved for future ruling the government's motion to expand that deposition.  Judge Carey explained that if the Chapter 7 trustee waives the privilege, the government may be seeking to expand the deposition yet further and the Court wants to decide all such requests together (id. at 52-53), and then assure that any remaining discovery is conducted efficiently (id. at 59).  The United States therefore asks this Court to take judicial notice that, assuming the Chapter 7 trustee waives the attorney-client privilege, there will almost certainly be a need to brief certain motions in the Delaware Bankruptcy Court between the time a trustee indicates such a waiver and the trial, and additional deposition testimony may have to be incorporated into a pre-trial.

     The telephonic hearing with Judge Carey was continued on Monday, June 8, for the purpose, among others, of finalizing the trial schedule and addressing certain pre-trial deadlines.  At the end of that hearing, the undersigned indicated that the government would be informing this Court of the trial postponement, and noted a concern that being informed of the October 16, 2006 trial date might cause this Court to assume, incorrectly, that a ruling in the appeal would not be necessary until shortly before that, and asked if Judge Carey could assist in this regard.  (6/8/06 Tr. at 24-26.)  Judge Carey stated that the request was "understandable" but that he was reluctant to intercede with this Court, but he suggested that the undersigned inform this Court of the next status

---

  [2/] The error was one of good faith on both sides.  Debtor's counsel had produced a complete set of the compelled documents by e-mail and inadvertently did not include all of the documents in a mailed hard-copy set.  Government counsel worked from the hard-copy set when it originally deposed the Bear Marks lawyers.  But the government had failed to compare that hard-copy set with the list of documents in the order compelling the production, instead assuming it was complete.

hearing set for July 13, 2006 (in the hope this Court would issue a ruling before that conference). Judge Carey added that he would not allow the trial to be delayed indefinitely "[i]f either – for some reason a trustee was not appointed relatively soon or you know, if the trustee is not as diligent as he or she should be under the circumstances." (Id. at 27.)

The undersigned was waiting for a transcript of the June 5 and 8 hearings to inform this Court, in writing, of what transpired, but did not receive the transcripts until after the July 13 status conference. On July 12, 2006, the undersigned telephoned this Court's law clerk (with counsel for one appellee on the line and permission from counsel for the other) to inquire whether there was any information we could convey to Judge Carey at the next day's hearing, regarding progress toward completing a decision, and informed the law clerk that the Delaware trial had been postponed until October. The law clerk, after communicating with Judge Thompson, indicated that the status was the same as in early June due to the fact that Judge Thompson had been called upon to preside over another criminal trial that had just ended.

At the telephonic status conference with Judge Carey on July 13, 2006, Mr. Schwartz for Media Communications, who had been informed by counsel for the indenture trustee of the results of the communication with this Court, advised Judge Carey of the lack of any progress toward a decision in these appeals, and launched into an argument that the October trial setting should not be further postponed regardless of the timing of the appointment of a trustee. The undersigned advised Judge Carey that the government had intended to file a transcript of the June 5/8 hearing with this Court but had not yet received a transcript. (Unbeknownst to the undersigned the June 5 transcript had already become available, but not the July 8 transcript.) Counsel for one of the defendants suggested that the government also include a transcript of the July 13 status conference, and Judge Carey indicated that he would order an expedited transcript to facilitate that.

Since a week has gone by and a transcript of the July 13 status conference in Delaware has not yet been received, the United States is filing this submission without it.

7

The next status conference in the Delaware adversary proceeding was scheduled (during the July 13, 2006 hearing) for August 16, 2006.

WHEREFORE the United States asks that this Court take judicial notice of the attached transcripts for the purposes of considering the level of priority to give to this matter, and respectfully requests that this Court give priority to completing a decision in these appeals, or at least with respect to the conversion issue in these appeals.

KEVIN J. O'CONNOR
United States Attorney

ANN M. NEVINS
Assistant United States Attorney

   /s/ *Peter Sklarew*
PETER SKLAREW
Federal Bar No. CT 17864
U.S. Department of Justice, Tax Div.
P.O. Box 55
Washington, D.C. 20044-0055
(202) 307-6571

**CERTIFICATE OF SERVICE**

    IT IS CERTIFIED that I have caused the foregoing **REQUEST THAT COURT TAKE JUDICIAL NOTICE OF CERTAIN EVENTS IN DELAWARE ADVERSARY PROCEEDING INCLUDING RESCHEDULED TRIAL AND STATEMENT OF CONTINUED NEED FOR A DECISION AS SOON AS POSSIBLE ON THE CONVERSION ISSUE** to be electronically filed, which will result in automated electronic service, this  20th  day of July, 2006, by the Court's ECF system and, in addition, to the extent any of the following are not indicated as served on the ECF confirmation notice, I will immediately cause them to be served by e-mail or First Class Mail:

Daniel H. Golden
Akin, Gump, Strauss, Hauer & Feld, LLP
590 Madison Avenue
New York, NY  10022

Craig I. Lifland
Zeisler & Zeisler
558 Clinton Avenue
Bridgeport, CT  06605

Ira Goldman
Shipman & Goodwin
One American Row
Hartford, CT  06103-2819

Patricia Beary
Asst. U.S. Trustee
265 Church Street, Ste. 1103
New Haven, CT  06510-7016

Joan Pilver
Assistant Attorney General
State of Connecticut
55 Elm Street, 5th Floor
Hartford, CT 06141

        /s/ *Peter Sklarew*
      PETER SKLAREW
      Attorney, Tax Division
      U.S. Dept. of Justice