UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | . | Case No.  96-00166-PJW |
| | . | |
| ACE-TEXAS, INC., | . | |
| | . | 824 Market Street |
| | . | Wilmington, Delaware  19801 |
| Debtor. | . | |
| | . | June 5, 2006 |
| . . . . . . . . . . . . . . | . | 2:00 p.m. |
| | . | |
| UNITED STATES OF AMERICA, | . | Adv. No.  1-01-04605 |
| | . | |
| v. | . | |
| | . | |
| STATE STREET BANK AND | . | |
| TRUST COMPANY, as Trustee | . | |
| for Junior Subordinated | . | |
| Secured PIK Notes, et al., | . | |
| | . | |
| Defendants. | . | |
| . . . . . . . . . . . . . . | . | |

TRANSCRIPT OF HEARING
BEFORE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the United States of America: | U.S. Department of Justice Tax Division By:  ALAN MARTIN SHAPIRO, ESQ. PETER SKLAREW, ESQ. P.O. Box 55 Washington, D.C.  20044 |
| For Media Communications Partners L.P.: | Foley Hoag, LLP By:  ANDREW Z. SCHWARTZ, ESQ. EURIPIDES D. DALMANIERAS, ESQ. Seaport World Trade Center West 155 Seaport Boulevard Boston, MA  02210 |
| Audio Operator: | Todd Kirk |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

APPEARANCES (CONT'D):

For U.S. Bank:                    Shipman & Goodwin LLP
                                  By:  KATHLEEN M. LAMANNA, ESQ.
                                  One Constitution Plaza
                                  Hartford, CT  06103

For Allstate Insurance            Sidley Austin LLP
Co.:                              By:  GUY S. NEAL, ESQ.
                                       TERESA CHAN, ESQ.
                                  787 Seventh Avenue
                                  New York, NY

For Media Communications          Zuckerman Spaeder LLP
Partners LP:                      By:  THOMAS G. MACAULEY, ESQ.
                                  919 Market Street, Suite 990
                                  Wilmington, DE  19899

For Allstate Insurance Co.:       Ashby & Geddes, LLP
                                  By:  JOSEPH C. HANDLON, ESQ.
                                       WILLIAM P. BOWDEN, JR., ESQ.
                                  222 Delaware Avenue, 17th Floor
                                  Wilmington, DE  19899

For U.S. Bank:                    Monzack & Monaco, P.A.
                                  By:  FRANCIS A. MONACO, JR., ESQ.
                                  1201 North Orange Street
                                  Suite 400
                                  Wilmington, DE  19899-2031

For Scott Cable                   Buchanan Ingersoll & Rooney, P.C.
Communications, Inc.:             By:  TERESA CURRIER, ESQ.
                                  The Brandywine Building
                                  1000 West St., Suite 1410
                                  Wilmington, DE  19801

For Scott Cable                   Akin Gump Strauss Hauer &
Communications, Inc.:                Feld, LLP
                                  By:  ABID QURESHI, ESQ.
                                  590 Madison Avenue
                                  New York, NY  10022-2524

For Stanley Bloch:                Brown Raysman Milstein Felder &
                                     Steiner LLP
                                  By:  JEFFREY WEINGART, ESQ.
                                       KATHERINE McGRATH, ESQ.
                                  950 Third Avenue
                                  New York, NY  10022

1          THE CLERK:  Court is now in session.

2          THE COURT:  Good afternoon, counsel.

3          UNIDENTIFIED SPEAKER:  Good afternoon.

4          MS. LAMANNA:  Good afternoon.

5          UNIDENTIFIED SPEAKER:  Good afternoon, Your Honor.

6          THE COURT:  Has anything occurred since the filings

7  of any of the issues been resolved?

8          MR. SKLAREW:  Not to my knowledge, Your Honor.  This

9  is Peter Sklarew.

10          THE COURT:  All right.  I'd like to first consider

11  the government's motion to postpone trial.  Who will be arguing

12  on behalf of the government?

13          MR. SKLAREW:  Peter Sklarew, Your Honor.

14          THE COURT:  All right.  Mr. Sklarew is the movant.

15  Would you like to begin?

16          MR. SKLAREW:  Yes, Your Honor.  As my motion

17  indicates, we have been essentially diligently litigating a

18  conversion issue in Connecticut since 2002.  It was our belief

19  that we were bound by that ruling until and unless it was set

20  aside on appeal.  Nevertheless, we made it clear in the

21  pleadings in the Connecticut case, and I believe it was known

22  to everyone here, it's no secret that it was always our

23  position that the main purpose of that appeal was to have a

24  disinterested trustee determine whether to waive an attorney-

25  client privilege so that we could ask not just a specific --

4

1  not just get the specific documents that Judge Walsh ruled were

2  subject to the crime fraud waiver, but more broadly gain access

3  to all of the records of the debtor on both levels in the 1996

4  and 1998 case, and also re-ask the questions at the various

5  depositions, and there were dozens and dozens of questions that

6  two of the debtors' attorneys and one of its principals had

7  objected to on grounds of the attorney-client privilege.  We

8  have been doing that for a long time.  We have repeatedly, as

9  much as one can do without incurring the ire of the Court,

10  tried to ask the District Court in the most polite way as

11  possible, to hurry up.

12      We were advised that we would not be able to get the

13  Judge to get a ruling until the Cendant litigation was over.

14  That advice was given to us in March of 2005, which was a time

15  that the Court did deny all the motions to dismiss the appeals

16  and assure that the appeals would go forward, and indicate that

17  he would at least rule on them at some point.

18      We learned that the Cendant case -- or that the

19  Cendant case resulted in a second retrial.  I guess it does go

20  forward.  But that -- we learned that Judge Thompson took

21  himself off that case for the third retrial right about the

22  time of the hearings before Your Honor in March and April, I

23  believe right before the March hearing.  And the way this issue

24  came up before your Court is in response to -- actually it was

25  in response to our motion to transfer the case.  The parties

**J&J COURT TRANSCRIBERS, INC.**

1  adverse to us argued that there was nothing left to do in

2  Connecticut, and that's when we indicated, you know, there was

3  a lot left to do, but we still didn't really have any

4  indication from Judge Thompson that anything would happen.  We

5  had just learned that the Cendant trial would no longer be

6  occupying him and he had indicated that this would be the first

7  thing on his burner after that trial.  So, at the March 29th

8  hearing all of this was discussed briefly, but there was no

9  real resolution of it, and on March 30th, one day later, Judge

10  Thompson spontaneously issued an order for oral argument, at

11  which point the parties got in a dispute about when oral

12  argument would be, and my adversaries in the appeal

13  specifically asked Judge Thompson to postpone the argument and

14  the entire appeal until the trial went forward in this

15  adversary first because it might moot the appeal.  Judge

16  Thompson rejected that view and said no, he thinks the

17  determination should be made before the trial.  And I can only

18  think of one reason for that.  Implicit in his ruling he

19  understood that we should have a Chapter 7 trustee determine

20  whether to waive the privilege, acting in the best interest of

21  the estate rather than in the best interest of the debtor's

22  management before that.  And so, then he indicated he would

23  rule before the trial and he asked us to report back to him on

24  what happened at the April 12th hearing because he knew that

25  there was a motion pending to postpone the trial from May 8th

**J&J COURT TRANSCRIBERS, INC.**

1    to June 12th, or to actually postpone it at that point.  We

2    hadn't set a date yet.  Your Honor, I think, had given us three

3    areas in June, July and August.  And we went back essentially

4    to Judge Thompson and told him that the -- in a filing that

5    everyone got notice of, that Your Honor had postponed the trial

6    until June 12th, and in that filing we specifically

7    nevertheless urged the Court to expedite a ruling because we

8    indicated it would take time for a trustee to get up to speed,

9    it would take time for a trustee to be appointed -- a little

10   bit of time, at least, and that so even though your case had

11   been postponed to June 12th, we asked that his ruling still

12   come before May 8th, or as soon thereafter as possible.

13   Defendants opposed that, as well.  They wanted him to delay

14   again.  At least the indenture trustee and the debtor on behalf

15   of the estate opposed that.

16          The next thing that happened is we did get an --

17   well, what -- we were approaching the trial date in your Court,

18   and we sent another notice to Judge Thompson, essentially in a

19   filing that said, you know, things are approaching and if you

20   could please give us a possible ruling.  And at that point he

21   held a telephonic conference on May 23rd and indicated what his

22   ruling would be, but that he was having trouble finishing the

23   opinion because he still had some -- a memo to write for the

24   incoming Judge in the Cendant case, and he expected to get to

25   it soon, but he wanted us to have the benefit of his ruling in

1  advance so that we could take whatever steps we needed to take

2  in respect to the Delaware proceedings.  It was the next day

3  that we had oral argument on the government's motion for leave

4  to appeal the denial of transfer in front of Judge Jordan.  And

5  I won't go into that right now, but some things I think relate

6  more to our other motion in respect to that, although Judge

7  Jordan did indicate at the very end of his ruling that he

8  understood as a result of the recent events, including the

9  conversion, that the parties would be arguing before Your Honor

10 about whether to reschedule the trial, and that he was not

11 indicating any way of what the ruling should be on that, but he

12 understood that this provided a basis for us to at least to be

13 arguing to extend the trial, and the other side would be

14 arguing not to.

15           So, that sort of brings us to where we are, and I

16 would like to quote something I just found in a transcript in

17 preparing for this this morning.  It relates partly to the

18 other motion but also partly to this motion.  It's Mr.

19 Schwartz, on Page 72 of the April 12th, 2006 hearing before

20 Your Honor, and it had to do with getting in the IRS memos and

21 depositions of the IRS witnesses, whose memos had been in the

22 files of the debtor and the defendant since we produced them in

23 2002, August of 2002.  Without any explanation why they

24 couldn't have made the motion sooner to depose them, Mr.

25 Schwartz said in that hearing, quote, "It would be a crying

8

1  shame if this case was determined here without all of the

2  evidence, went up on appeal to the District Court, the Court of

3  Appeals, even the Supreme Court, and ended up having to be

4  remanded for further fact development.  We already have --

5  we're already seven-plus years into the case, so that's yet

6  another reason why the administration of justice and the

7  Court's discretion of this evidentiary record should be as

8  fully developed as possible when we conduct this trial."  And I

9  think that's very appropriate to consider for both of the

10  motions in the current context.

11          THE COURT:  Well, Mr. Sklarew, let me stop you for a

12  moment and talk about the standard that I must apply here in

13  determining whether to grant the relief that the government has

14  requested.  And I don't think the parties necessarily would

15  disagree about this, but the decision law in this District and

16  in this Circuit indicate clearly that the decision to grant or

17  deny this type of delay is within the Court's discretion.

18  Among other cases I looked at, Judge Farnan's decision in

19  Cognex v. National Instruments.  That's reported at 2001

20  Westlaw 34368283.  It's a 2001 District of Delaware decision.

21  In that he said, "In determining whether a stay is appropriate,

22  the Court should weigh the competing interests of the parties

23  and attempt to maintain an even balance."  Where a stay will

24  forestall the trial date, the Court has -- he says, "this Court

25  has required the party requesting the stay to make a showing of

**J&J COURT TRANSCRIBERS, INC.**

1    a clear case of hardship or inequity before the Court can enter

2    a stay order."  And I think that's the standard that I am going

3    to apply here.  Tell me, under these circumstances, why the

4    government has met that standard.

5            MR. SKLAREW:  I will in a moment, Your Honor, but I

6    first preliminarily must take issue with the standard for this

7    unique case.  We are in a one of a kind situation in which we

8    have an appellate ruling that clearly indicates the Judge in

9    the Appellate Court that has the administration of this estate

10   and has the in rem jurisdiction over the estate believes that

11   the government always had the right to a disinterested trustee,

12   and it's been stalled on that basis for many years now.  We've

13   always had a right to that.  We've always made the argument

14   we've had a right to that.  We've made that clear all along.

15   And the fact that we're at trial at this point is because the

16   defendants, or particularly the debtor, and on behalf of all

17   the defendants, purportedly, and the indenture trustee on

18   behalf of all of the noteholders, purportedly, resisting

19   conversion, indicating there was no conflict of interest and

20   that there was no reason to have an independent trustee, and

21   that nothing would change in the adversary proceeding as a

22   result of that.  We now have law in another Court that is

23   binding on those parties to that effect.  They cannot argue to

24   the opposite.  It would be highly unusual, I think, for this

25   Court to basically essentially nullify the effect of that four-

1   year appeal by going forward.  So, I disagree that the standard

2   here in these unique circumstances where we have this split

3   jurisdictional problem, is abuse of discretion standard.  I

4   submit that the standard here is one of comity and respect for

5   the District Court's already made ruling, or announced ruling,

6   even though it hasn't written the opinion yet, in Connecticut.

7         Secondly,  do think we meet the standard, and we meet

8   the standard because we are talking about if the Court looked

9   at these documents, some dynamite evidence, we're talking about

10   dynamite evidence that, at worst, was excusable neglect that

11   the government did not discover at this -- you know, did not

12   have because of a lack of a comparison of the production logs

13   and the items that were produced, simply --

14         THE COURT:  And I will tell you, in considering that

15   circumstance in which neither party accuses the other of any

16   untoward behavior, I find it still remarkable and frankly I

17   guess it shows a lapse on behalf of both parties, one for not

18   having reviewed the hard copies of the documents when they were

19   received, and then subsequently deleting the e-mail, and yet on

20   the other hand having sent hard copies of documents, an

21   incomplete set of documents that were ordered to be produced.

22   And it's remarkable that those mutual lapses have gone

23   undiscovered for so long.  I'm just amazed by it.

24         MR. SKLAREW:  Well, Your Honor, let me address that,

25   but I do want to get back to the standards also on the hardship

1  in a moment.  But in addressing that, I agree with Your Honor

2  that there's no accusations here of any deliberate untowardness

3  by either party in this.  There are a series of mistakes on

4  both sides.  But Your Honor did mention that we -- and I'm not

5  sure you meant this, really.  It may have been the way you

6  spoke.  But you said something about not having reviewed the

7  documents, the hard copy, and then getting rid of the e-mail.

8  Actually, Mr. Shapiro, who is here with me, and you can

9  question him if you like, he did review the hard copies

10  immediately, and he immediately called his opponents and asked

11  for follow-up depositions because he thought that even what

12  they did contain was highly probative.  And they refused

13  follow-up depositions, and he had to make a motion for follow-

14  up depositions and brief it.  And I think what has to be

15  gleaned from this is really something that Your Honor said also

16  in the -- I'll go back to the April 12th hearing.  And this is

17  Page 99 of the transcript.  You said, "You know, whenever I

18  have an adversary or contested matter of this magnitude, it's

19  inevitable that things come up pretrial, after discovery is

20  closed, and you know the ideal would be not to have that happen

21  at all.  But in real life, it happens, so, my goal here is to

22  try to be as focused as possible and have the parties be as

23  focused as possible, without delaying the trial, yet being as

24  fair under the circumstances to all the parties as can be."

25  Now, at that point we were able to do that without delaying the

**J&J COURT TRANSCRIBERS, INC.**

1  trial, at that time, because it was still April 12th.  But --

2  or actually, we did, I think, end up delaying the trial a

3  little bit because it went from May 8 at that hearing to the

4  June 12th, because the defendants were not available in August

5  or July, at least one of them wasn't in July, and one in

6  August.

7         The point I'm making, though, is that in addition to

8  what I just said, Mr. Shapiro was laboring with a humongous

9  record.  We have 20 boxes of documents in this case.  We were

10  fighting essentially a large motion that was heavily briefed on

11  the motion to compel, and it was briefed months and months

12  before it was actually ruled upon.  So, it is true -- I'm

13  sorry.  Mr. Shapiro has just corrected me.  We had more than 60

14  boxes of documents.  You know, in all of this, to be sure, the

15  prudent thing to have done when he got the hard copy, not just

16  to review it and decide whether he wanted to take follow-up

17  depositions, which was preoccupying him, but also would have

18  been to compare it to the privilege logs.  But he didn't at

19  that time because he had no reason to believe that it wouldn't

20  be complete.  It had just been ordered produced and it was 45

21  pages of information for what was supposed to be, if he even

22  remembered the number of documents at the time, 13 documents.

23         So, it was an understandable error, and it is very

24  important evidence.  And the reason I think the equities weigh

25  in our favor is you weigh that very important evidence against

**J&J COURT TRANSCRIBERS, INC.**

1    the fact that we have -- one, we don't even know the degree of

2    hardship that will be conferred -- you know, imposed on the

3    government with respect to other documents until the trustee

4    decides whether to waive the privilege.  So, we don't even know

5    what else is out there, and we don't know what we'd get if we

6    got answers to our deposition questions, or trial questions

7    from some of the other lawyers we've learned about recently who

8    had something to do with some of these documents.  So, it's

9    sort of delving in the dark in the sense of that, and we have

10   this additional reason, which is the trustee's appointment to

11   postpone the trial coupled with these documents that have been

12   discovered.  I'm not relying solely on the late discovery, or

13   recognition of these documents, as much as the trustee's

14   appointment, but the documents bear into it as well.  It was a

15   good faith mistake, and it is dynamite evidence when we look at

16   it.  And the government should have an opportunity to get this

17   evidence in.

18          Now, there is a solution that doesn't require

19   postponing the trial except for the trustee's additional

20   documents which I have proposed, and that is, and I do believe

21   Your Honor can do this.  We have the Baer Marks firm, we have

22   all the attorneys that worked on the case who also worked in

23   the 1996 case when they worked on the 1995 documents that we're

24   looking at, they also continued to work on the case in 1996.

25   They were authorized as counsel, who are now having a dispute

1  about some of the documents that they drafted and that were

2  pre-bankruptcy planning documents for planning the very

3  bankruptcy that's at issue now.  And I believe it's well within

4  the authority of this Court, in light of the nature of those

5  documents and what they show, to order the Baer Marks attorneys

6  to appear.  They have contacts with Delaware.  They have more

7  than minimum contacts.  They appeared in Delaware in this case,

8  in the case that, you know, the 1996 case.  That year, by the

9  way, the adversary proceeding is currently captioned under in

10 the Delaware Court, or associated with.

11         There's also the 1998 Stroock Stroock & Stroock memo

12 of the debtor's present counsel, and the lead counsel from

13 Stroock Stroock and Stroock went over to Akin Gump from that.

14 That's now one of the memos that's now in contention, as well.

15 Clearly the government can -- excuse me -- the Court can order

16 present counsel to appear, just like the Court has indicated

17 the IRS witnesses should appear.  And I think that's an

18 important, you know, analogy here to the whole situation.  The

19 IRS witnesses, the documents that they had with respect to the

20 IRS were not even missing.  They admit they had them since

21 August of 2002.  They simply argued that they are important

22 evidence and they should be able to authenticate them, and the

23 solution was to bring people to trial.  Well, the solution here

24 with Baer Marks is to bring people to trial from the Baer Marks

25 firm and from the former Stroock Stroock & Stroock firm, whose

1  attorneys are currently at Akin Gump, which is current counsel

2  for the debtor.  So, I think the Court can do that.

3          Now, I'm not suggesting it do that, because to me the

4  more appropriate thing to do here for a different reason is to

5  postpone the trial, and that is because we should have a

6  trustee waive the privilege and be able to question these

7  gentlemen without that specter looming, and also ask questions

8  of the previous deponents who refuse to answer those questions.

9  So, I think for that reason we should postpone the trial, and

10 then we can go ahead and take the additional depositions of the

11 Baer Marks attorneys, or not, depending on what a trustee does.

12 And, Your Honor, if a trustee doesn't waive the privilege, Your

13 Honor could then order them to appear at trial, at least for

14 the ones that the privilege has already been overruled by Judge

15 Walsh, at least for these six documents that we now have.  So,

16 I think that it's a confluence of other -- of events that have

17 conspired, essentially, through no -- and when I say conspired,

18 I certainly don't mean any kind of bad faith.  I agree with you

19 there has been no untowardness on either side in that regard.

20 But the confluence of events have conspired to a situation

21 where when we have a last minute appointment of a trustee, and

22 it's certainly not the government's fault that it's a last

23 minute appointment, and there was resistance on behalf of every

24 -- all the defendants that was made, and we also have the

25 inadvertent failure of the government to have realized that the

1  documents that were received in response to Judge Walsh's

2  production order compelling production was an incomplete set at

3  the time that we inspected those documents and moved to take

4  follow-up depositions and did take follow-up depositions of

5  some of the Baer Marks attorneys with respect to the documents

6  we were aware of right after that order, and diligently.

7       So, with that confluence of events, particularly

8  coupled with the fact that it's clear that the Connecticut

9  District Court agrees with -- has no agreed with our reasons

10  for needing a disinterested trustee, always the primary focus

11  of the appeal and it's the primary focus of the statement that

12  Judge Thompson made on the record on May 23rd as to his reasons

13  for granting conversion, sets up an unusual situation, possibly

14  a unique situation, and this case is already fairly unique. We

15  have -- you know, before this we have not only the split

16  jurisdiction, we have -- a lot of parties have argued that

17  certain aspects of this are a case of first impression.

18  Certainly aspects of the equitable subordination case are,

19  which is really what this discovery is really more about than

20  the other issue. And given the unique case and the unique

21  situation, I would suggest that the Court certainly has

22  discretion to grant the continuance, and ought to grant the

23  continuance so that the truth comes out. This is a $40 million

24  case. We are seven years into it, as Mr. Schwartz said, and it

25  would be a shame not to have all the evidence in the record at

1 this point to go forward in this trial without it because of

2 the, and I think you have to weigh the other side, this is just

3 part of the standard, let me get back to the standard, is

4 weighing the damage to the other side, and there really is no

5 damage on the other side.  There is some delay.  There is a

6 possible 60, 90, maybe even 120 day delay.  It is hard to

7 predict.  The Court could stagger it.  Your Honor could, of

8 course, grant a partial -- you know, a continuance for some

9 time and see what happens, see if the -- what the trustee does,

10 how far we get along, and keep a tight rein on us.  There are

11 many ways, you know, to do that.  But I think we have an

12 unusual confluence of events, and the damage on the other side

13 of a 90-day delay when money is in an interest-bearing account,

14 we've waited seven years, is really extremely minimal, if any

15 recognizable damage, at all.  Because if every delay was

16 automatic damage, you'd never be able to meet the standard.

17             THE COURT:  Thank you, Mr. Sklarew.  Let me hear from

18 others.

19             MR. SCHWARTZ:  Your Honor, Andrew Schwartz for the

20 Media defendants.  We oppose the motion for a continuance

21 primarily on the grounds that the motion is speculative.  And

22 we agree with you that the standard that the government, as the

23 movant, must meet is clear case of hardship or inequity, and we

24 submit to you by definition, speculation cannot be a clear

25 case.  We also oppose the motion on the grounds that the

1  continuance requested is open-ended and could lead to extensive

2  delay upon delay.

3       As we have stressed repeatedly in recent months, the

4  case has been pending since November '98.  That's now seven-

5  and-a-half years.  The trial was supposed to happen in October

6  of 1995 -- I'm sorry, 2005, then it was supposed to happen in

7  May of this year.  At the government's request it was pushed

8  back to June 12th, which is, I'm sure you're well aware, is

9  just a week away.  Your Honor has dealt with all the various

10 motions in limine and the other pretrial motions in the last

11 several months.  The government, last week, served its portions

12 of the joint pretrial order including 681 supposedly undisputed

13 facts.  The defendants worked on the weekend readying their

14 portions of the joint pretrial order extensively, now due on

15 Wednesday.  The final pretrial conference is Thursday.  This

16 case is ready for trial.  All of the witnesses who are

17 appearing live have cleared their calendars.  Your Honor has

18 cleared your docket.  All of the lawyers involved have blocked

19 out the necessary time.  And as I've argued to you before, it's

20 not easy to get all the planets aligned so that an exercise of

21 this magnitude can be conducted on the road, but everyone has

22 done it in reasonable reliance on the trial date, and we are

23 all ready to go, and that includes the government, judging by

24 the extensive submissions we received from Mr. Shapiro last

25 week.

1          The government now however says we should all stop
2    dead in our tracks and go into what amounts to an indefinite
3    holding pattern.  And they say this because on May 23rd Judge
4    Thompson indicated that at some point in the future he was
5    going to issue an opinion reversing the denial of the
6    government's motion to convert.  And that motion was filed, as
7    I understand the facts, for the first time in 2000.  It was
8    withdrawn, and then renewed in 2001 and/or 2002.  It was denied
9    in July 2002, nearly four years ago, and it's been the subject
10   of an appellate process since then, since mid-July 2002, and
11   it's still not resolved because as Judge Thompson certainly has
12   indicated what his inclination is to do, and I'm not suggesting
13   he's going to do anything else, it hasn't happened yet and we
14   don't know when it's going to happen.
15          THE COURT:  Mr. Schwartz, I called Judge Thompson
16   this morning to confirm two things.  Now, I had read the
17   transcript of the conference that was submitted to me by the
18   government of the -- I guess May 23rd discussion I'll call it,
19   to confirm, number one, that Judge Thompson was, consistent
20   with what was indicated in the transcript, going to either
21   convert the case or remand it to the Bankruptcy Court with an
22   order to convert the case.  And he confirmed to me today that
23   that's still his intention.  Secondly, I wanted to confirm that
24   this was something on which he was presently working, and that
25   a written decision would be issued soon.  And consistent,

**J&J COURT TRANSCRIBERS, INC.**

1  again, with what he had indicated in the transcript, he offered

2  no specific date by which the opinion would be issued, but told

3  me, my words, not his, that he was working on it.  So, I expect

4  something soon.

5        MR. SCHWARTZ:  Well, that's useful information, Your

6  Honor, but it does not materially impact our position, and I'll

7  explain why.

8        THE COURT:  Go ahead.

9        MR. SCHWARTZ:  The government -- its motion basically

10  speculates that once the denial of conversion is reversed, the

11  Chapter 7 trustee may attempt to, quote, switch sides, end

12  quote.  Those are the government's words, not mine.  Or it may

13  accede to the government's request that the trustee broadly

14  waive the debtor's privilege beyond the waiver that Judge Walsh

15  effectively ordered.  And then the government speculates, on

16  top of that, that if the privilege is waived, it may find

17  documents helpful to its case, which by the way it already says

18  is rock solid, and it says that if the privilege is waived it

19  may want to take more depositions, including re-deposing people

20  who have already been deposed, to attempt to develop what it

21  speculates may be additional helpful evidence.  So, what the

22  government envisions is that we put this adversary proceeding

23  into a state of abeyance for an uncertain period of time, and

24  wait not only for the decision in Connecticut, but for the

25  actual appointment of a trustee, for the trustee to retain

counsel, for the trustee and counsel of the trustee retains --

to obtain access to the voluminous record of this adversary

proceeding with facts dating back to 1988, and then wait for

the trustee to obtain access to the record of the two

bankruptcy cases that were filed.  Then we would wait for the

trustee to obtain access to whatever privilege documents might

exist.  Then the trustee and his or her counsel would have to

review and digest all the documents that were assembled and

make a determination whether to take a position on the merits,

and if so, what position.

       And you might stop there and ask why would the

trustee take a position or an interest in the litigation given

that it is obviously a dispute between two creditor

constituencies.  And the government itself s on record in

Connecticut as having said that the debtor and the estate have

no legitimate interest in the outcome of the adversary

proceeding.

       THE COURT:  Well, let's talk about that for a minute.

One of the suggestions that the government made in one of its

submissions was given the development of events it was time to

pause, take a step back, and just look at things.  I did that.

In fact, the government had asked that a hearing on its motion

be held Friday, and I set it for today to give me the time to

go back and review certain things with the specific issues here

in mind.  And among the things I looked at was Judge Walsh's

1  2002 decision, which is reported at 2002 Westlaw 417013.  It's

2  the short opinion in which Judge Walsh granted the motion of

3  the debtor to intervene in this adversary.  And in that

4  decision he said the following.  "Although debtor may not have

5  a significant and financial interest in the outcome of the

6  adversary proceeding, it does have an interest and fiduciary

7  duty as debtor-in-possession to ensure that the estate's assets

8  are distributed in accordance with the proper legal and

9  equitable priorities of the parties in interest.  It also has

10  an interest in the adversary proceeding because the outcome of

11  the proceeding has the potential to disrupt debtor's current

12  capital structure as established by the confirmation order

13  entered in connection with the debtor's prior reorganization

14  case."

15        Not coincidently, I think, in the decision that Judge

16  Schiff made in July of 2002, which is reported at 2002 Westlaw

17  1988166, the Judge, in determining -- well, first of all, in

18  denying conversion and denying the motion for the appointment

19  of a trustee, and in overruling the government's objections to

20  a cash collateral request, quoted that language from Judge

21  Walsh's decision.  So, it seems to me both were in agreement

22  about the appropriate role of a debtor-in-possession, at least

23  in the context of these circumstances.

24        You then go to the transcript of the May 23rd

25  telephone conference held with Judge Thompson in which he says,

**J&J COURT TRANSCRIBERS, INC.**

1  very significant to me is the fact that there is a conflict of

2  interest on the part of the debtor's management and in its --

3  in a situation where the plan was rejected as having a

4  principal purpose -- as a principal purpose the avoidance of

5  taxes.  It seems to me that only a trustee could properly make

6  decisions about whether to waive attorney-client privilege or

7  whether the estate should pursue using the assets of the estate

8  for the benefit of a class of creditors that includes

9  management of the debtor.  And then, upon conversion you have

10  Section 704, which sets out the responsibilities of the

11  trustee.  And it strikes me that whether you view the issue in

12  the narrow sense of, well, ought the trustee or will the

13  trustee, Chapter 7 trustee, when appointed, waive the attorney-

14  client privilege?  Or if you take a look at overall what the

15  trustee's responsibility is, the conversion obviously changes

16  dramatically the standing of the debtor to be the champion of

17  certain interests.  So, with the conversion of the case and the

18  appointment of a trustee, while it has not yet occurred, it

19  seems to me there's a dramatic change in the role that the

20  debtor plays here, and one that the trustee will review, I'm

21  sure, and then choose to either agree with or disagree with, or

22  do something completely different with, including considering

23  the issue of whether to waive the attorney-client privilege.

24  So, you know, this portends a real change, I think, in the

25  tenor of the proceeding.  Tell me why you think I'm wrong about

24

1  that.

2       MR. SCHWARTZ:  Well, as an initial response let me

3  say that the dramatic change that you are suggesting in the

4  role of the debtor that may occur presupposes that the debtor

5  has been playing a major role in the recent history of the

6  case, and I think the experience, since it's been before you,

7  attests to the fact that the ultimate interest holders have

8  been the parties who have been active primarily in defending

9  the case in its recent phase.  The debtor has been quite quiet

10 in the various proceedings before you, as long as you have

11 presided over the case, and for some period of time before

12 that, so --

13      THE COURT:  And that's true, and there is a very good

14 reason for that  -- it's because the debtor doesn't have, as

15 the parties have argued before the various Judges a financial

16 stake in the outcome, that the debtor is here in this adversary

17 because of its other fiduciary responsibilities that both

18 Judges Walsh and Schiff have talked about, and it seems to me

19 that Judge Thompson has recognized.  And it's that part of the

20 participation with the coming of a trustee which I think may

21 dramatically change what's going on here, because ultimately

22 it's the trustee's responsibility to see that the assets are

23 distributed in accordance with the priority scheme, and the

24 relief sought in this adversary goes to the very heart of who

25 gets the money.

1          MR. SCHWARTZ:  There's no doubt about the last point,

2    but my point is that the debtor has been passive for quite some

3    period of time, since the noteholders have intervened.

4    Increasingly the noteholders have taken the lead in the defense

5    of the case because ultimately the beneficial interest, in

6    large part, is theirs.  And the point I was raising that

7    resulted in your comments is that among the speculation we all

8    have to engage in now in trying to envision what might happen

9    with the trustee is a question of would the trustee get

10   involved?  And I think when you look at the fact that the

11   ultimate interest holders are now active in the case, there is

12   no funding for a trustee except if, at the end of the day, the

13   government wins.  The government itself has taken the position

14   that the estate party really, whoever it is, whether it's the

15   debtor or now a trustee, by extension has no economic interest

16   in the outcome.

17          MR. SKLAREW:  Objection.  We never took that

18   position.  I'll explain it later.

19          MR. SCHWARTZ:  Well, I would like to differ, Mr.

20   Sklarew, in -- because I have an actual quotation in front of

21   me that goes back quite a few years, but in connection with the

22   dispute that took place in Connecticut in 2002 the government

23   did say in one of its oppositions that the debtor and the

24   estate have no legitimate interest in the outcome of the

25   adversary proceeding, so I stand by the quotation.  I'd be

1  happy to provide it to you off line.

2          THE COURT:  Well, in any event, at least two Courts

3  have decided otherwise, so --

4          MR. SCHWARTZ:  That's true --

5          THE COURT:  Let's just move on.

6          MR. SCHWARTZ:  -- with regard to the debtor.  But we

7  are still, Your Honor, in the realm of speculation, and I think

8  that when you go down the road of speculation, by definition

9  you're outside the scope of the standard of what the government

10 has to show.  And we have raised a number of -- it would be as

11 much speculation for us, as for the government or anyone else

12 to say what's going to happen, and we're not saying what's

13 going to happen.  But we have raised a number of factors

14 suggesting that a trustee could not or would not do what the

15 government contemplates.  And foremost among them is the 1998

16 cash collateral order which was entered on notice to the

17 government and which the government did not appeal, and which

18 expressly provides in the first instance that the debtor

19 acknowledges the legitimacy of the secured claims and won't

20 challenge the liens, and they will cooperate with the lenders,

21 and then goes on to say that its binding on any successor,

22 including a Chapter 7 trustee.

23         Now, Mr. Sklarew says in his reply that that's

24 invalid and can be attacked under Rule 60(b), but Rule 60(b)

25 only gives you a year to attack orders.  The government would

1  be estopped from attacking this one, and the order was entered

2  seven years ago, seven-and-a-half years ago.  So, that's one

3  big problem with the government's wishful thinking of what

4  might unfold in its favor.  And again, when we look at the

5  prejudice that would flow from an indefinite delay on the cost

6  of all these various different developments unfolding over a

7  period of months, if not longer, we have to take a look at

8  what's the purpose of the proposed delay, and the purpose of

9  the proposed delay is to see, on a speculative basis, what

10 might develop.  And given at least that one structural obstacle

11 that exists, we would suggest to you that, especially where the

12 debtor's privilege has already been overridden with respect to

13 specific documents, to delay the case which is now literally on

14 the eve of trial for an indefinite period of time because

15 something might happen would not be appropriate.

16       I also want to raise one other point and approach

17 this from a slightly different angle.  As we all acknowledge,

18 the conversion appeal has been pending since 2002.  Despite

19 that fact, it was not until March of this year, 2006, that the

20 government first suggested in this proceeding that the timing

21 of the trial should be affected by the conversion appeal.  Just

22 to quickly review the history of this, the trial date of

23 October 2005 was originally set in February 2005 at a

24 conference before Judge Walsh.  There was no mention then that

25 the resolution of the appeal would have any bearing on the

1 timing of the trial.  Then we were before Judge Walsh in July

2 of 2005 when he denied the government's summary judgment motion

3 and set the trial for April '06.  At that point the government

4 said nothing about the timing of trial being influenced by the

5 outcome of the appeal.  And this was after the motions to

6 dismiss the appeal had been denied.  Then, in December of 2005,

7 I think you're familiar with this history, the government

8 submitted a letter to Judge Walsh, said it was willing to go to

9 trial in May '06 or October '06 and there was a telephonic

10 hearing on that subject a few days later.  Again, nothing was

11 said at that time about the resolution of the appeal having any

12 conceivable impact on the timing of the trial.  And then, most

13 recently we appeared before Your Honor on February 13th of 2006

14 at which time the May 8th trial date was reaffirmed, and once

15 again the government said nothing about the timing of the trial

16 being impacted by the pending appeal in Connecticut.  It wasn't

17 until February -- I'm sorry -- March 10th, '06, when Mr.

18 Sklarew submitted a reply brief, I believe, in connection with

19 the secondary transfer initiative, that this was mentioned.

20 So, you've only been with us, and we've only been with you

21 since early this year.  You may have formed the impression that

22 the government has always been making this point in this Court.

23 It has not.  The case has been pending since '98, the

24 conversion proceeding since 2000, and it was not until 2006

25 that this Court, the conversion issue was mentioned as a basis

1  for possibly affecting the timing of the trial.  So, this is a

2  very recent vintage, and in our view another reason why it's

3  not a sufficiently compelling reason to derail a case that is

4  really on the verge of trial.

5       So, from our standpoint the case is ready for trial.

6  It should go forward on June 12th.  I think that to entertain

7  the relief the government is requesting would lead to

8  potentially endless delay, including satellite litigation over

9  various issues of privilege and the cash collateral order, and

10 other things.  And I wouldn't be surprised if we got another

11 retransfer motion, which of course we would appose.  The motion

12 really piles speculation on top of speculation on top of

13 further speculation.  It comes very, very late in the day.  We

14 have already been prejudiced by the delay in getting the matter

15 to trial.  Judge Walsh recognized that when he sent the case to

16 you saying that getting the case to trial in the near term was

17 important, and our view is it would be unfair to prejudice our

18 clients any further based on what amounts to a wish and a

19 prayer.  So, we would ask that this motion be denied.  We don't

20 think the government has satisfied the standard that you've

21 referenced and we've cited by relying on speculation as to what

22 might unfold.

23      THE COURT:  Thank you.  Does anyone else wish to be

24 heard in opposition to the motion?

25      MR. QURESHI:  Your Honor, it's Abid Qureshi from Akin

1    Gump Strauss Hauer and Feld on behalf of the debtor.  I would

2    like to briefly be heard.

3              THE COURT:  Go ahead.

4              MR. QURESHI:  Your Honor, the debtor also opposes the

5    government's motion, and I'll confine my comments just to one

6    point that Mr. Schwartz made, and that is the speculative

7    nature of the relief that the government is seeking here.  They

8    talk constantly about the trustee waiving privilege.  I would

9    just like to remind Your Honor that as far as I am aware, all

10   of the documents from the debtor that were withheld on a claim

11   of attorney-client privilege in the course of production the

12   government now has.  They were given to the government in two

13   phases.  Prior to the motion to compel that the government

14   filed being argued the debtor agreed, having re-looked at some

15   of the documents on its logs that there were, in fact, a few

16   documents that upon further investigation we determined were

17   not privileged and provided those to the government.  And the

18   remaining documents over which the government was seeking

19   access were provided when it won on the motion to compel.

20   There were a number of documents not ordered produced by Judge

21   Walsh, but on the reason that they were simply irrelevant to

22   the dispute between the parties.  So, I think that just, again,

23   goes to the point that it is very speculative to delay this

24   trial even further on the theory that a trustee may waive

25   privilege and that there may be any documents there that would

1  be of interest to the government in any event.  Thank you, Your

2  Honor.

3       MR. SKLAREW:  Your Honor, may I respond to some of

4  the arguments?

5       THE COURT:  Let me -- Mr. Sklarew, let me just --

6  I'll give you an opportunity for a brief reply, but let me make

7  sure that I've heard from anyone else who wishes to be heard in

8  opposition to the motion first.

9       MR. NEAL:  Your Honor, Guy Neal for Allstate

10  Insurance Company.  We join in the opposition filed by the

11  Media Partners.

12       THE COURT:  All right.  Anyone else?

13       MS. LAMANNA:  Your Honor, this is Kathleen LaManna of

14  Shipman & Goodwin on behalf of U.S. Bank, which is the

15  indenture trustee.  And Mr. Schwartz did a comprehensive job of

16  describing the position of the defendants.  I'd just like to

17  add I think it's unrefutable that the timing of the conversion

18  issue coming up is unfortunate, and it's unfortunate that the

19  conversion has not been entered.  We do believe, as we have

20  said for years, that a trustee would agree that there's nothing

21  to be done on behalf of the estate.  It is unfortunate that

22  they are not here to say that.  We believe that they will come

23  to that conclusion, and hopefully quickly.  But I just want to

24  speak to one comment made by counsel for the United States,

25  that we are here because of resistence by the indenture trustee

1  and the debtor to the conversion motion, and the government is

2  well aware that our resistence to that conversion motion was

3  based in very large part upon the fact that we believe no gain

4  would come from the appointment of a Chapter 7 trustee, but in

5  fact only delay.  And unfortunately we find ourselves in that

6  place, or in fear or being in that place today, and I think

7  that Judge Jordan said it correctly when he recognized that

8  it's unrefutable in this case that there is regrettable delay

9  and that this needs to move forward.  That's all.  Thank you,

10  Your Honor.

11       THE COURT:  Thank you.  All right.  Mr. Sklarew?

12       MR. SKLAREW:  Yes, Your Honor.  Several things have

13  been said that are really not accurate in terms of the history

14  of the case, and obviously I want to hone in on the speculation

15  issue, in particular as a legal issue.  First of all, with

16  respect to the speculation -- let me take that first because I

17  think it's the most important thing, given that Mr. Schwartz

18  said it about six or seven times I counted, and then it was

19  said twice by Mr. Qureshi and once by Ms. LaManna, at least.

20       With respect to speculation, first of all, all of the

21  arguments about a trustee and what a trustee should do were

22  made in the appeal.  One of the reasons that Judge Schiff

23  denied conversion, as Your Honor has already perceived, was in

24  quoting Judge Walsh's order.  And what he said was it was the

25  law of the case, which gets to, by the way, why we haven't been

**J&J COURT TRANSCRIBERS, INC.**

1  screaming about the Connecticut appeal in this case all along,

2  because we've been bound by that decision all this time.  But

3  let me take that separately.  The law of the case, it's been

4  ruled against us back and forth between the two Courts at least

5  four or five times now in different contexts, and one of the

6  very important contexts was the notion that the debtor had a

7  duty to defend its capital structure and a fiduciary duty to

8  the secured creditors.  We argued, pointing to Second Circuit

9  BAC law, and several decisions, including a decision by Judge

10 Schiff himself in a prior case that the trustee's duty is

11 primarily to unsecured creditors and that the only duty to

12 secured creditors is a more limited duty.  I think the more

13 limited duty was a different case and it was from another

14 jurisdiction, but it was essentially to the effect that a

15 trustee owes a duty to secured creditors in terms of protecting

16 their collateral.  But in terms of representing them in a

17 litigation, they represent themselves, and it's the trustee's

18 duty to avoid secured claims where possible.  The trustee has

19 many avenues to do that.  One of them is equitable

20 subordination.  One of them is setting aside fraudulent

21 conveyances and security interests that have been made

22 fraudulently.  The trustee has a duty to object to claims that

23 are not valid claims, including claims that are debt when they

24 are supposed to be equity.  Those are all the trustee's duties

25 under 704.  And the Supreme Court has said that a trustee's

**J&J COURT TRANSCRIBERS, INC.**

1   duty should be exercised in the best interest of the estate.

2   That would not be to support a security interest against the

3   estate.  We were nevertheless held to be collaterally estopped,

4   and all these arguments are made in the appeal.  And in my

5   argument in the appeal before Judge Thompson was four square

6   that the collateral estoppel only applies, at most, at the

7   coordinate level, and that when it reaches the appellate level

8   Judge Thompson is free to reject Judge Walsh's ruling because

9   it is a non-appealable ruling at that time.  Judge Walsh's

10  ruling on granting intervention was an interlocutory ruling.

11  The government could not appeal it, therefore, to the extent it

12  has law of the case implications that spread to Connecticut,

13  which I think was disputable, it could not spread past the

14  Trial Court level.  That is the basis on which we took the

15  appeal.  I suspect that will be addressed, although I cannot

16  predict Judge Thompson's opinion, but I suspect that will have

17  to be addressed in his opinion, that law of the case issue.  On

18  that we will end up with a ruling if he's ruling in our favor

19  that at least he is not bound by that law of the case and that

20  he accepts our argument that a trustee has a primary fiduciary

21  duty to the unsecured creditors.

22          Mr. Schwartz indicated, when I indicated the

23  objection, because I did it twice, I apologize for that, that

24  the government was quoted as saying in early 2002 pleading that

25  neither the debtor nor the estate has an interest in the

1    adversary proceeding.  I think, if you read it in context, the

2    argument we're making is that neither the debtor or the estate

3    has interest in defending a security interest.  I'm not sure if

4    maybe there was a slip of the tongue made a slight bit

5    differently, but that's consistent with what we argued, because

6    we have always argued throughout the entire appeal in

7    Connecticut that a trustee has a duty to all of the unsecured

8    administrative creditors, including the state of Connecticut,

9    the state of Texas, the state of Delaware, I believe, is one of

10   the claimants, and certainly there are 11 state taxing

11   authorities that are claimants that didn't have the resources

12   to join this adversary proceeding, but particularly with it

13   being transferred to Delaware, and that -- that the state of

14   Connecticut, I think, has one of the largest claims, and I know

15   it didn't want to come down here, because we asked it to, to

16   join us down here, and they said they can't litigate in

17   Delaware.  So, the -- that's the situation in terms of that.

18   There are unsecured, admittedly post-petition, but unsecured

19   creditors, and now it's going to be a converted Chapter 7 case,

20   and it's the trustee's duty to represent the claims of those

21   creditors against a disputable security interest.  So, I don't

22   think there's any speculation here that a trustee is going to

23   reach the conclusion because he's compelled as a matter of law

24   to reach the conclusion that he must exercise or waive that

25   privilege in the best interests of the estate.  So, unless he

1  decides our claim is frivolous, he's going to have to waive the

2  privilege and give us access.

3        Now, whether they're join the litigation or not is

4  another matter, and I -- you know, that's really secondary as

5  far as I'm concerned.  I do believe the trustee should have an

6  opportunity to join this litigation if he wants, and I

7  certainly do not believe that the cash collateral order entered

8  three weeks after the case was filed in a rush to have a

9  stipulated cash collateral order that would bind a future

10 trustee from never objecting to their claim, I just think the

11 notion that that's going to be held valid or anything but void

12 is completely absurd and it just shows the kind of misconduct

13 that's gone on in this case, including by the indenture

14 trustee, who helped and joined in that stipulated cash

15 collateral order to try to preclude a Chapter 7 trustee from

16 objecting to a claim.  It's just bizarre to me that they could

17 make that argument, but I'll leave that to the trustee if he

18 wants to fight that argument.

19       THE COURT:  Well, Mr. Sklarew, in fairness to the

20 defendants here, that type of provision has over the years

21 become pretty standard.  Now, that's not to say given the

22 subsequent development of events since that time, and including

23 what appears to be Judge Thompson's view about management's

24 conflict of interest.  That's not to say that the provision in

25 the order would be enforced in the context of this adversary.

**J&J COURT TRANSCRIBERS, INC.**

1 I just -- it doesn't, in and of itself, indicate to me any

2 misconduct on the other side, but that doesn't mean the order

3 at this point, given what's happened, ought to be -- or that

4 provision of it ought to be enforced.  And we're not here today

5 on that issue, so --

6            MR. SKLAREW:  Right.  You're right --

7            MS. LAMANNA:  Your Honor, may I speak to that

8 briefly?  This is Kathleen LaManna.

9            MR. SKLAREW:  Do you want her to wait until I'm done,

10 Your Honor, or should I pause for a moment?

11            THE COURT:  I don't want to get sidetracked on an

12 issue that isn't necessary for me to dispose of the motion

13 today.  That's my concern.  But, yes, Mr. Sklarew, you should

14 finish first.

15            MR. SKLAREW:  All right.  Your Honor, whether I agree

16 with you that -- whether that's any kind of evidence of

17 misconduct is not before Your Honor at this moment, so it need

18 not be decided.  But the point is that a trustee can certainly

19 make arguments that he can still get involved.  But even if he

20 doesn't get involved, we believe that the waiver is going to

21 come, and it's not just for documents.  Mr. Qureshi did

22 indicate at the end that he gave us all the documents now, and

23 so there can't be any other documents.  Well, the government

24 had to make a selective determination of what to compel at the

25 time.  It did not take a shotgun approach.  So, there were many

other documents on their privilege log, or their three
privilege logs that we did not seek among those 13 documents at
that time.  We don't know what they say from the nature of the
information.  We don't know what's in them.  But more
importantly, it is clear that we did not get all the documents
because the -- it is Item 35 in our second request for
production clearly called for all legal documents referring to
any of the debtor's lawyers, and that would have been the
billing records of Baer Marks, and they did not produce those
to us, so we never had those.  That's part of my motion today.
We don't know what else could have inadvertently -- I'm not
accusing anyone of misconduct here -- inadvertently forgotten.
If a trustee allows us full access to the documents, we may
find other documents, and the documents that are at issue
today, these six smoking gun documents, or at least four or
five of them are, are examples of why it's important to do this
kind of thing, because if we had been given access to the
documents two years ago, for example, we would have found these
documents again anyway, notwithstanding our original error in
not cross checking the logs.

In that regard, the -- you know, they say there's
nothing else to give, but I have repeatedly invited --
repeatedly invited the debtor to simply waive the privilege.
And probably, if they had done that a while back, might have
taken the wind out from under the sails of my appeal in

1  Connecticut.  I asked them it three years ago, to waive the

2  privilege, if there was nothing else the government was going

3  to get, and let us go through their files, and they would not.

4  In addition, we now have the right, if the trustee waives the

5  privilege, to go not only through the Baer Marks files, but to

6  go through the files of the Akin, Gump firm, because they

7  represented the former -- the estate.  And the trustee now

8  represents the estate and gets to make that determination.  One

9  of the documents is the Stroock Stroock & Stroock document --

10 excuse me, the Stroock Stroock & Lavan document, which is

11 before you today, shows that in the 1998 bankruptcy the

12 debtor's law firm and lawyers recognized that the first

13 bankruptcy could easily be characterized as a fraud, and

14 worried about whether or not they could then go forward with

15 the second plan and under what terms and did some research, and

16 apparently, they say, at least, they concluded they could go

17 forward without, you know, being part of that fraud.  But they

18 recognized the prior plan was essentially a fraud on the

19 government, and they did analysis about it and decided how they

20 would go forward.  And they made some very astounding

21 disclosures that were far more indicative and far more proper

22 than the first plan.  So, it's going to be very interesting to

23 talk to some of the Stroock & Stroock attorneys, or the now

24 Akin Gump attorneys about what went through, and what

25 conclusions were made at that time as part of the evidence, and

1  who they discussed it with and what statements were made to
2  them in discussing it with the Baer Marks attorneys, because
3  the Baer Marks attorneys' handwritten notes are all over that
4  Stroock Stroock & Stroock memo, so it was shared and talked
5  about.  So, there's a lot going on here that we've just found
6  out that is not just getting documents into Evidence, it's
7  asking what went on behind the scenes in talking about these
8  documents and in getting these documents, and in creating these
9  documents.  So, there's a lot at stake that we don't know.
10  There's been never a determination to waive the privilege in
11  order to, even though they say that nothing will be discovered,
12  and that could have been done at any time.

13      With respect to the notion that we have never
14  disclosed our desire in this adversary proceeding, everyone was
15  aware of it.  It may not have been disclosed on the record in
16  this adversary proceeding until recently, but it was disclosed
17  numerous times in the Connecticut Bankruptcy Court and in the
18  Connecticut District Court in the appeal, and I argued
19  repeatedly in the appeal that we should have access to this
20  before the trial goes forward in order to have additional
21  discovery.  And the reason we didn't disclose it in this
22  proceeding is unlike Judge Walsh's March 4th, 2000 -- I have
23  the date right, I think -- 2002 order granting the debtor
24  intervention, which was an interlocutory non-appealable order,
25  the order denying conversion was a final appealable order, and

1  it definitely did bind the United States.  We were not allowed

2  to argue in the Delaware adversary proceeding that we had a

3  right to a trustee.  And any argument to postpone the trial on

4  the grounds that we had a right to a trustee until there was

5  some indication which didn't come until very recently from the

6  District Court that that ruling was going to be reversed, or be

7  even determined quite soon would have been just improper.  We

8  had no right to ask for a continuance of the trial on those

9  basis.  We had no right to reopen discovery on that basis until

10  we had that kind of a ruling.

11       So, the bottom line here is any speculation I think

12  really should be -- should be a reason to postpone, not to not

13  postpone, because there's a very good chance that we will get a

14  waiver of the privilege, and there's no way to know whether or

15  not we might find very important evidence, particularly

16  testimonial evidence, unless the case is postponed and we get

17  the chance to question the debtor's former attorneys.  Again,

18  the defendants have not really shown any harm in that regard.

19       Getting back to the comments, there was a mention

20  that the government didn't object to the cash collateral order,

21  and that's not -- the one that said that the trustee couldn't

22  litigate.  I don't think it was our job to represent the

23  trustee back then, but we actually did react to the cash

24  collateral order.  What the cash collateral order says is that

25  nobody can object to the claim, and nobody can object to the

42

security interest unless it's done by a deadline.  And we
brought our adversary proceeding one day before that deadline.
And if you don't think it was because of the cash collateral
order I'd say think again, because it was.  We absolutely were
aware of the cash collateral order, saw it, saw the deadline.
We personally thought it was void, non-enforceable even as to
us, but in order to avoid that battle we rushed our adversary
complaint before we even knew what was essentially going on
here almost.  We had to take essentially what was a shot in the
dark because we had to preserve our rights because of that
deadline in a very short time frame, essentially, and draft the
adversary complaint and file it.  So, the government did timely
object to the claim and object to the security interest through
this adversary proceeding, and if a trustee intervened in this
adversary proceeding on the side of the government's complaint
it would clearly have a relation back doctrine that would avoid
the issue, as well, that they're talking about having the order
bind the trustee.  I'm not saying the trustee is going to want
to do that, but if the trustee wanted to do that, I think a
trustee could do that.

        So, it was not until basically the Cendant trial was
over when we had a basis to essentially say, look, we're so
close to a ruling now in Connecticut that the Court should
postpone the trial, and I did that, by the way, Your Honor,
while it was a reaction to their transfer response, it was a

1  reply, I then turned around as soon as the Connecticut District

2  Court had a kind of -- prior hearing, not the May 23rd hearing,

3  but there was an April 11th hearing, before the April 12th

4  hearing in this Court, on April 11th I filed DI-411, dated

5  4/11/06, just a coincidence there, in your Court I filed a

6  supplement to the United States motion to continue the trial

7  based on the 4/11/06 status conference in the Connecticut

8  appeals, and it was in that status conference that Judge

9  Thompson stated that he was going to turn to this matter now

10 that the Cendant case was over, and he had not yet indicated

11 which way he would rule, but he did say he was going to have a

12 ruling.  And since we were going to have a ruling fairly soon,

13 I moved to expand our prior motion to continue the trial.  And

14 that so -- so, I did it as soon as possible, as soon as I --

15 the day that I knew there might actually be progress on that

16 case before we had a trial or at a close time.  And so, I think

17 the government has been diligent in that regard.

18         The -- and I'd also point out that until March of '05

19 with respect to all the other times we supposedly didn't do

20 anything, until March of '05 there was a motion to dismiss the

21 appeal pending, and an alternative motion for interlocutory

22 appeal because it wasn't even sure that the appeal was going to

23 go forward.  The debtor and the indenture trustee both insisted

24 that the order was interlocutory and that interloctury appeal

25 could not be granted or should not be granted, and it wasn't

1    until March 14th, 2005, even, that we even got a briefing

2    schedule, weren't able to go forward with the appeal on its

3    merits.  So, I think certainly the earlier rulings are not to

4    any effect that the -- or, excuse me, the earlier times when we

5    indicated that we were proceeding with discovery as if we were

6    going to a trial without a trustee I don't think should be

7    something that hampers the government at this point in time

8    given that the law of the case bound us in that regard, and

9    that it was on appeal, and we first had to get it set aside,

10   essentially.

11          There was a -- I think Mr. Schwartz indicated that

12   th4 delay will be greater than it is, also.  He indicated that

13   a trustee will take a lot of time and have to review the entire

14   record, and I don't think that's really necessarily true.  I

15   think a trustee is going to be able to have the benefit of all

16   the work both parties did, and will be able to read the

17   parties' pretrial statements, essentially, and see what -- at

18   most, and be able to make a legal determination of where the

19   estate's interests lie.  In addition, a trustee doesn't have to

20   retain counsel.  And it's very unlikely a trustee will retain

21   counsel, to do that at first, because as Mr. Schwartz points

22   out, until a trustee makes a preliminary determination that the

23   government is likely to win this adversary proceeding the

24   trustee is going to be very worried about any expenses because

25   there's going to be no payment for a trustee or his attorney if

the government doesn't prevail, or if the trustee doesn't join
us and prevail on this.  So, I think it's very likely that a
trustee will make the initial determination without first
hiring counsel, bearing in mind that Chapter 7 trustees on the
standing panel are attorneys themselves, and so are competent
to make those kinds of determinations.

So, I think there's been an overstatement of what the
delay has been, and I suspect that particularly this Court may
have some ways to put a little bit of, if not pressure, at
least requests on a trustee to get the job done more quickly.
If a trustee does, you know, indicate he needs some time, I
suspect that, again, there are ways the Court can keep a reign
on us in terms of not letting this kind of delay get out of
hand and telling a trustee the trustee -- you know, the Court
would appreciate the trustee making up his mind, whether he's a
party or not.  Obviously if he becomes a party Your Honor can
order him to -- can set a deadline.  If he doesn't become a
party then a trustee, I think, can be requested by the Court to
make some determination by -- in a reasonable time, and I can't
imagine a trustee would not take that kind of a request from
the Court seriously.  So, I think there are ways we can move
the case along, and avoid the, quote, indefinite delay, and
delay after delay after delay that Mr. Schwartz has painted as
a picture that's necessarily going to flow from this that I
don't think is necessarily going to flow from this.  So, that's

1   my response to their arguments, Your Honor.

2            THE COURT:  Thank you, Mr. Sklarew.  Anything briefly

3   from other --

4            MR. SHAPIRO:  Yes, Your Honor.  This is Alan Shapiro

5   for the government.

6            THE COURT:  No, Mr. Shapiro.  Mr. Sklarew has argued

7   the motion on behalf of the government.  I'd like to hear from

8   -- just briefly from anyone else on the objector's side, if

9   there's something else.

10           MR. SCHWARTZ:  Your Honor, Andrew Schwartz.  Ms.

11  LaManna, I think, wanted to interject something.  And I have a

12  couple of comments, but I'd rather give her a chance first.

13           MS. LAMANNA:  Okay.  Thank you.  Yes.  I won't

14  belabor the point, and I know we're not here on the cash

15  collateral order, but there were a couple of statements I just

16  don't want to leave on the record without refuting.  We

17  represent the indenture trustee, which is a secured creditor in

18  this case, and it's the only secured creditor of the debtor.

19  And the debtor could not use our cash collateral without our

20  permission and the cash collateral order is a reflection of the

21  results of that discussion and our agreement with respect to

22  that issue.  We certainly believe prior orders of the Court are

23  enforceable, but I realize that's not before the Court, and I

24  won't --

25           THE COURT:  And that's why I've asked counsel not to,

**J&J COURT TRANSCRIBERS, INC.**

47

1  you know, diverge and talk about that, so --

2          MS. LAMANNA:  I'll respect that and leave it at that,

3  Your Honor.  Thank you.

4          THE COURT:  Thank you.

5          MS. LAMANNA:  I just also want to point out that the

6  government's indications with respect to discovery certainly

7  lends themselves to suggest that discovery will not be a short

8  -- further discovery will not be a short endeavor if they

9  intend to re-ask every question that has been asked, as they

10 put it, over the years and years of discovery that have ensued.

11 Thank you, Your Honor.

12         THE COURT:  Mr. Schwartz?

13         MR. SCHWARTZ:  Your Honor, it's Andrew Schwartz.

14 Just briefly, with regard to what was submitted in Connecticut

15 in April of 2002, if I might just read three sentences, or four

16 sentences so the record is complete.  What the government said

17 at that time is, quote, "The estate is just a bank account.

18 There is no chance for reorganization or plan.  This case

19 essentially amounts to a dispute between two bodies of

20 creditors.  The debtor and the estate have no legitimate

21 interest in the outcome of the adversary proceeding.  The

22 government contends that the arguments the debtor has submitted

23 in support of intervention and which the Delaware Bankruptcy

24 Court accepted in error (in the government's opinion) are a

25 sham.  The debtor is a bank account, not a going concern.  All

**J&J COURT TRANSCRIBERS, INC.**

1   that is left in this case is to decide which of two bodies of

2   creditors get the funds in the bank accounts." Just two more

3   sentences. "Debtor has no meaningful interest in protecting

4   any capital structure. As a fiduciary to all creditors it has

5   as much of an obligation to the United States as it does to the

6   PIK noteholders." This was filed by the United States Attorney

7   in Connecticut on April 12th of 2002, I believe, so I think

8   that is what the record reflects, and I'll send Mr. Sklarew the

9   citation. It may be a pleading he was not involved with.

10          The only other thing I want to say concerns the

11  argument about what was and wasn't represented to Judge Walsh

12  and to you are various points about the extent to which the

13  conversion appeal would affect the timing of our trial. The

14  government was certainly free to say at any point that there

15  was a pending appeal that it was pursuing, which, if it

16  prevailed, would affect the timing of this trial. While they

17  were bound by the order that existed, they have an appeal

18  pending of it, and they certainly could have called that to the

19  attention of Judge Walsh or to you at any time. In fact, when

20  they did call it to your attention the first time in March of

21  1996 the order still had not been reversed and there had been

22  no indication of which way it would be definitively decided.

23  So, those arguments were available at any point. They were not

24  made. They are of recent vintage, and I think that's one fact

25  that you can take into account in exercising your discretion.

**J&J COURT TRANSCRIBERS, INC.**

1          I second what Ms. LaManna said about Mr. Sklarew's

2  description of the discovery he'd like to see taken.  It does

3  suggest that this would be an extensive delay, if he has his

4  way, which he may or may not, but that gets into the

5  speculation which we think does make out a clear case of

6  hardship or inequity.  Thank you.

7          THE COURT:  All right.  Thank you, counsel.

8          MR. SKLAREW:  Your Honor, may I just make a couple of

9  comments with respect to that?

10          THE COURT:  Briefly.  Is it --

11          MR. SKLAREW:  Briefly, Your Honor.

12          THE COURT:  Mr. Sklarew?

13          MR. SKLAREW:  Yes.

14          THE COURT:  No.

15          MR. SKLAREW: Oh.  I'm sorry.  I thought you said yes.

16  I'm sorry, Your Honor.

17          THE COURT:  That's all right.  I've heard

18  sufficiently from counsel.  As I said, I've reviewed all the

19  submissions that were made in connection with the motion to

20  postpone trial.  In addition I read the notice styled by the

21  United States that had been filed and to which was attached the

22  May 23rd transcript.  I've reviewed various of the decisions

23  that have been made in this case, the 1998 decision by Judge

24  Schiff denying confirmation, Judge Thompson's 2001 decision

25  concerning the right of the government to bring this adversary

**J&J COURT TRANSCRIBERS, INC.**

1 proceeding, the decision of the Bankruptcy Judge transferring

2 venue of this adversary sua sponte, it was made in 2001, the

3 other decisions that I've already referred to, and the -- Judge

4 Walsh's decision from 2003 denying the defendant's summary

5 judgment motion.

6         In balancing the interests of the parties here, and

7 the relative harms, it's pretty clear that we're on the eve of

8 trial, discovery is not quite but almost closed, and this

9 factor weighs in favor of denying the relief that has been

10 requested.  When I look at the other side of it, that is what

11 harm there would be to the defendants in postponing the trial,

12 the money is in interest-bearing account, as the government has

13 indicated.  I see that there are two reasons besides that I

14 think that weigh in favor of granting the relief that the

15 government has asked for.  One is, the pending appointment of

16 the trustee which will occur soon after the District Court

17 issues its written decision on the appeal.  This -- the

18 appointment of a Chapter 7 trustee largely unseats the debtor

19 in its role as estate fiduciary, and secondly, raises the

20 possibility -- and I don't know whether the trustee will or

21 won't waive the privilege, or to what extent he will or she

22 will, but it does raise the possibility that the privilege

23 would be waived, and I find that significant in this case,

24 especially when I see things only recently coming to light to

25 the Court, anyway, of the so-called smoking gun evidence.  And

1  I will say it does weigh in favor of the position that the

2  government has been taking all along.  I was not, as you know,

3  prepared to delay trial based upon the fact that the appeal was

4  pending, but now that the District Court has indicated that

5  it's going to make a decision and has indicated the reason why,

6  we're close enough, I think, that -- to having that decision

7  that I think it does make sense to postpone trial, so I am

8  going to grant the government's motion.  I do not have room on

9  my calendar in July or in August, you know, to which much of my

10 calendar has been pushed as a result of having to block out

11 June for this trial.  The postponement, in a way, is really

12 with some reluctance because as all the parties know, and as

13 I've made clear, it's my desire to bring this matter to trial,

14 because I do agree with the defendants it's gone on long

15 enough.  But I can't be unmindful of the recent developments,

16 and I do, as Mr. Sklarew suggests I would, intend to set a firm

17 trial date, which I hope will give the trustee enough time to

18 do whatever it is he decides he wishes to do, so that the delay

19 will be short lived, especially when you compare it to the life

20 of the litigation so far.  And my inclination is to set a trial

21 date for September.

22        Now, the only other comment I wanted to make at this

23 point, and then we can talk about some other details, is that

24 in the hearing before Judge Jordan on the government's motion

25 for leave to appeal my re-transfer decision, at least as the

1  excerpts were offered in the filings, there was some discussion

2  of, again, given recent developments, whether the government

3  might file yet another re-transfer motion.  I wanted to take

4  this opportunity to tell the government that unless the Chapter

5  7 trustee joined in such a motion and decided to participate

6  directly in the adversary, I see very little likelihood that I

7  would grant such a motion, and I might not even consider it

8  without the trustee's participation.  And I just wanted to let

9  the government know that now.

10         I would, however -- so therefore, I would expect that

11  if such a motion is to be filed, it would not be filed before

12  an issuance by the District Court of its opinion, and some

13  opportunity of the Chapter 7 trustee to consider what role the

14  trustee, if any, wished to play in this adversary.

15         Okay.  So, I will ask counsel to confer and submit an

16  order disposing of the motion in accordance with my bench

17  ruling today, and simply referring to the motion having been

18  granted for the reasons I stated on the record today.  Now,

19  that having been said, there are other issues that I think we

20  need to address, and there are others that counsel may think we

21  need to address.  In light of my ruling today, frankly, I was

22  not inclined to consider the government's other motion.  I was

23  inclined just to have us stop here, and to do nothing further,

24  because if in fact the defendants are right, and I don't know

25  whether they are or aren't, that the effect of this ruling will

**J&J COURT TRANSCRIBERS, INC.**

1  lead to other discovery requests by the government.  I wish to

2  consider them all together.  I don't wish to consider piecemeal

3  discovery requests, including the government's pending motion,

4  in addition to what may yet come down the road.  I want to deal

5  with it as a package.  And if there are other things the

6  parties think that we need to address in the order to be

7  prepared and submitted as a result of my ruling today, I'm open

8  to considering them now.

9          MR. NEAL:  Your Honor, Guy Neal for Allstate.

10         THE COURT:  Go ahead.

11         MR. NEAL:  May I raise the issue of the trial date?

12  Because unfortunately I have some conflicts that are going to

13  be hard for me to move, a confirmation hearing before Judge

14  Fitzgerald in the middle of September being one of them.  And I

15  don't know if now is the appropriate time, Your Honor, to

16  address our trial schedule.  We're dealing with a difficult

17  situation where the defendants, I believe, uniformly feel that

18  the trial will not last three weeks, but I respect the

19  government's view that at all times they have insisted on three

20  weeks or more, and that creates calendaring difficulties.

21         THE COURT:  Well, my inclination would be, based upon

22  a review of my calendar, to open up a three week block

23  beginning September 11th.

24         MR. SCHWARTZ:  Your Honor, Andrew Schwartz for the

25  Media defendants.  There are a couple of problems with that

**J&J COURT TRANSCRIBERS, INC.**

54

1 from our standpoint.  We know that one of our witnesses will be

2 out of the country I think until the 18th of September, and Mr.

3 Dalmanieras is telling me maybe the 25th, and you've also got

4 the Jewish New Year that falls in the middle of that, so while

5 we've been the ones, of course, who have been pushing to have

6 this done sooner rather than later, if we're going to September

7 I think we're looking toward the last week of September as a

8 start date.  I don't know how that squares with your schedule,

9 or the government's, or our co-counsel, but as a practical

10 matter I'm afraid we wouldn't be able to start until the 25th,

11 which causes me considerable discomfort, because we'd rather it

12 start, as you know, the earliest possible date.  But we have

13 witnesses and they have schedules, and it sounds like Mr. Neal

14 is also out of pocket for most of the period that our people

15 are unavailable.

16        MR. NEAL:  Yes.  If I could interject?  I know other

17 people need to speak about their calendar, but maybe just to

18 throw this out as a frame of reference, September, in light of

19 what Mr. Schwartz just said, and my own calendaring

20 difficulties, September is going to be extremely difficult for

21 myself.  I would propose the first week in October, if at all

22 possible.  And I'd invite, certainly, Kate LaManna and the

23 government to speak as to their calendaring issues.

24        THE COURT:  Well --

25        MS. LAMANNA:  Your Honor, this is Kathleen LaManna.

**J&J COURT TRANSCRIBERS, INC.**

1 Those dates we will make work.

2         THE COURT:  All right.  Well, let's talk specifics,

3 then.  We're talking about starting Monday, October 2nd?

4         MR. SCHWARTZ:  And that also is a Jewish high holy

5 day, Your Honor, so that -- that would not work for several of

6 us.

7         THE COURT:  Okay.

8         MR. NEAL:  May I recommend the 16th and the three

9 weeks that follow?

10        THE COURT:  Well?

11        MR. SCHWARTZ:  That looks fine for us.

12        MR. NEAL:  October 16th.  And certainly, Your Honor,

13 we respect your calendar, of course.  To the extent there is a

14 day or two that Your Honor can't do it, perhaps we could have a

15 day or two break in the trial.  I am not personally opposed to

16 that.

17        THE COURT:  You'd be good enough to let me do that?

18        MR. NEAL:  I know that's -- that should have gone

19 unstated, Your Honor.

20        THE COURT:  That's just exceptional, counsel.

21        MR. NEAL:  But I'm just throwing that in as a

22 recommendation.

23        THE COURT:  All right.  Those three weeks beginning

24 October 16th are generally available.

25        MR. SHAPIRO:  Your Honor, this is Alan Shapiro for

**J&J COURT TRANSCRIBERS, INC.**

1 the government.  I would like to be able to talk to a couple of

2 our witnesses to make sure that they will be available at some

3 point during that block of time.  I mean, obviously I would be

4 willing to mix people around, or move them around in order,

5 just so that they can fit whatever block of time works for

6 everybody, but we're now moving beyond what I had really talked

7 to people about in terms of their availability.

8         THE COURT:  Okay.  Well, you'll have the opportunity

9 to do that before an order is submitted.  I think what we'll

10 do, since we had -- what is it, this Thursday?  Or, set aside

11 for the final pretrial conference?

12         MR. SHAPIRO:  Yes, Your Honor.

13         THE COURT:  Is it will give -- let's hold that time

14 and let's convene again at that time, and then you can confirm

15 to me that whatever loose ends have to have been wrapped up or

16 addressed in connection with the order have been addressed, and

17 what isn't resolved then I will resolve then.  And that --

18         MR. SCHWARTZ:  May we assume, Your Honor, that the

19 defendants are now relieved of any obligation under the

20 pretrial order process?  It doesn't seem to make sense to go

21 forward with that --

22         THE COURT:  My thought, Mr. Schwartz, was just to

23 freeze everything right where it stood, to the extent that that

24 made sense.

25         MR. SKLAREW:  Your Honor?

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  Yes?

2          MR. SKLAREW:  One point on that is in -- in light --

3  this is Peter Sklarew, Your Honor.  In light of the

4  postponement of the trial we certainly have no objections to a

5  more than reasonable postponement of defendant's deadline to

6  submit their contentions.  But we've submitted our contentions,

7  and they are quite extensive.  And I think that to leave until

8  the last minute, right before trial, even a couple of weeks

9  before trial at this point there's no point in doing that, and

10  we should get the defendant's contentions some time --

11          THE COURT:  I don't disagree with that, Mr. Sklarew,

12  and what my thought was is that we would set another date, or

13  dates, as status hearings, so that as it became clearer what

14  the District Court was going to reason in its opinion, and

15  having made a decision, and what the Chapter 7 trustee was

16  going to do or not do, we'd be able -- we'd have trigger dates

17  so that we could all convene and react to it in terms of

18  governing the remaining pretrial activity.  So, I don't

19  disagree with you, but I'm not inclined to pick a deadline for

20  them right now.  And we can go back and address that at another

21  time.  But let's just tentatively say I'll block off three

22  weeks beginning Monday, October 16th.  The only day I do have

23  some things, which I'll attempt to move around, the one day

24  that I know I cannot have a trial date is October 26th, because

25  I'll be in Washington at an A.B.I. program.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. SCHWARTZ:  Your Honor, are you available at any

2     point the week prior to the one that we have been discussing,

3     which would be the week that starts on October 9th, because if

4     we need to talk to witnesses and Mr. Shapiro needs to do the

5     same, it would be good to know if we had that additional time

6     available to work with --

7          THE COURT:  The answer is yes, I do have some things,

8     but I can move them.  And I'd just remind you that Monday the

9     9th is Columbus Day, that's a federal holiday.

10          MR. SCHWARTZ:  Right.

11          MS. CURRIER:  Your Honor, this is Terry Currier for

12     the debtor.

13          THE COURT:  Yes.

14          MS. CURRIER:  One point of clarification about us

15     keeping the dates as Thursday that was originally for the

16     pretrial.  Does Your Honor want us to do a Court call like

17     this, or to appear in person?

18          THE COURT:  Court call is fine.

19          MS. CURRIER:  Great.  Thank you.

20          MR. WEINGART:  Your Honor, this is Jeff Weingart from

21     the Brown Raysman law firm --

22          THE COURT:  Yes.

23          MR. WEINGART:  -- representing the Baer Marks law

24     firm in connection with the 30(b)(6) that was scheduled for

25     tomorrow.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  Yes.

2          MR. WEINGART:  It's my understanding of what's going

3  on today is that that 30(b)(6) will not be going forward, and I

4  just wanted to confirm that, please.

5          THE COURT:  That would be my inclination.

6          MR. SKLAREW:  Your Honor, we noticed the 30(b)(6) and

7  I agree with that, but I would -- I think it would be useful to

8  get some clarification today that at -- I don't know, maybe

9  Your Honor wants to put this off for another hearing, but that

10  when, you know, things move along and we do reschedule whatever

11  that 30(b)(6) is, the Court will have decided the issue with

12  respect to these additional documents, the six documents at

13  issue, because if we are going to be dealing with those

14  documents, we certainly want to ask questions about them at the

15  same depositions.  Obviously it require some additional

16  attorneys because there's other people involved with these

17  documents.

18          THE COURT:  Well, let's put it this way.  I'll make

19  the rulings so that what remains in the way of discovery will

20  be conducted efficiently.

21          MR. SKLAREW:  Thank you, Your Honor.

22          THE COURT:  All right.

23          MR. SHAPIRO:  Your Honor, this is Alan Shapiro again

24  for the government.  We have recently filed proposed orders I

25  guess for prior decisions that you've made, and on April 12th

**J&J COURT TRANSCRIBERS, INC.**

1  we had filed a couple of trial stipulations, and I think there

2  was a Rule 30(b)(6) proposed order based on something that you

3  had ruled on in the past.  I think it would be helpful to all

4  just so that there's not too much stuff that gets lost in the

5  amount of time that's going to happen in the future, if perhaps

6  that's something that you could make a decision as to whether

7  you wanted to sign some time in the near future so that at

8  least those matters that had apparently been resolved are

9  wrapped up as a housekeeping matter before we go on to the

10 other things that people have talked about today.

11         THE COURT:  I think that's a good suggestion, Mr.

12 Shapiro, unless there's some reason why anyone else thinks I

13 shouldn't act upon those.  Okay.  Let me take a look at them

14 between now and Thursday, and I'll dispose of them no later

15 than the time set for our conference telephone.

16         MR. SHAPIRO:  And that time again is?

17         THE COURT:  It's --

18         MR. SCHWARTZ:  Two o'clock, I believe.  That's two

19 o'clock on the 8th of June.

20         THE COURT:  That's two o'clock on the 8th.  That's

21 right, Mr. Schwartz.

22         MR. SHAPIRO:  All right.  Thank you.  And, Your

23 Honor, again, Mr. Shapiro.  I apologize.  You know, it's been a

24 long hearing, you all have done a lot of work.  On the 8th do

25 you envision us doing -- maybe a little agenda would be helpful

 1  to us at this point.  I mean, I've really -- I've been taking

 2  notes, but I am not quite clear on exactly what you wanted to

 3  do on the 8th.

 4          THE COURT:  Well, I want to make sure the terms of an

 5  order that I've asked you to confer and submit are finalized by

 6  that time.

 7          MR. SHAPIRO:  Okay.

 8          THE COURT:  And if there aren't -- and if it isn't

 9  finalized by that time we'll work out whatever has to be

10  finished.  And to consider anything else that the parties have

11  thought of between now and then with respect to the terms of

12  what should or shouldn't go forward.  Let's also pick a status

13  conference now.  Does it make sense, counsel, to have something

14  as early as, say, the end of this month?

15          MR. SKLAREW:  Your Honor, I think it would be useful,

16  since we had those three weeks set aside in June, to have at

17  least one date in June to -- we can always touch base and get

18  right off, or maybe the -- you know, the parties could have a

19  tentative date and file something three days before, if we all

20  agree that there's no point in having it, then I guess there's

21  no point in conducting the phone call.

22          THE COURT:  All right.

23          MR. SKLAREW:  There seems to me no harm in having at

24  least a tentative conference set so that if something comes up

25  we can deal with it.

1          MR. SHAPIRO:  That's one issue where we actually may

2    agree with Mr. Sklarew, Your Honor.  Setting something perhaps

3    the last week of June would be I think a good idea from the

4    standpoint of the defendants.

5          THE COURT:  How is Thursday, June 29th, ten o'clock?

6          MR. SKLAREW:  Actually, Your Honor, I think I have a

7    conflict beginning the 30th.  I was actually not going to be at

8    that very last day if the trial took the last day, and it may

9    bleed over into Thursday.  If we could just go one day back to

10   Wednesday or Tuesday, it would be much better for me.  I don't

11   have an absolute conflict yet, but I have something I'm taking

12   off for on -- I'm actually taking off for a week on the very

13   next morning.

14         THE COURT:  All right.  How about Wednesday, June

15   28th, at ten o'clock?

16         MR. SKLAREW:  That's great.  I'd appreciate it, Your

17   Honor, and that's okay with us.  I that okay with all the

18   defendants?

19         MR. SCHWARTZ:  It's actually not with the Media

20   defendants, but the 27th would be.

21         MR. SKLAREW:  Tuesday?

22         MR. SCHWARTZ:  Yes.

23         MR. SKLAREW:  Your Honor, is that okay with the

24   Court?

25         THE COURT:  Yes.  Tuesday the 27th at ten is fine.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. SKLAREW:  And that's telephonic, right?

2          THE COURT:  That will be telephonic unless because of

3   what has to be addressed I decide otherwise.  But we'll set it

4   initially as telephonic.

5          MR. SKLAREW:  And it's my understanding -- this is

6   Peter Sklarew, Your Honor, that document 439 is temporarily

7   tabled.  There will be no decision on that, and we'll just wait

8   and see what happens with that?  That's the six documents?

9          THE COURT:  That's correct.

10          MR. SKLAREW:  Okay.

11          THE COURT:  I'm not going to consider that at this

12   point.  I'd like to consider that in conjunction with any other

13   requests, and I'm not -- that's not an invitation, it's just

14   that if there is something I'd rather deal with it all at once.

15   Okay.  Anything further for today?  Thank you, counsel.

16          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

17          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

18          THE COURT:  That concludes this hearing.  Court is

19   adjourned.

20                          *  *  *  *  *

21

22

23

24

25


**J&J COURT TRANSCRIBERS, INC.**

**C E R T I F I C A T I O N**

      I, TAMMY DeRISI, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


<u>/s/ Tammy DeRisi</u>          Date:  July 10, 2006

TAMMY DeRISI

J&J COURT TRANSCRIBERS, INC.

**J&J COURT TRANSCRIBERS, INC.**