UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: ) <br> ) <br> SCOTT CABLE COMMUNICATIONS, INC., ) <br> ) <br> Debtor. ) <br> _____ ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Appellant, ) <br> v. ) <br> ) <br> SCOTT CABLE COMMUNICATIONS, INC., ) <br> STATE STREET BANK AND TRUST CO. as ) <br> Indenture Trustee for certain note holders, and ) <br> AKIN, GUMP, STRAUSS, HAUER & FELD, LLP, ) <br> ) <br> Appellees ) | **No. 3:02-CV-1725 (AWT)** <br> (consolidated bankruptcy appeals) <br> (Bankr. Ct. Case No. 98-51923) <br><br><br><br><br><br><br><br><br><br><br><br> October 3, 2006 |

**MEMORANDUM IN SUPPORT OF MOTION OF
UNITED STATES TO STAY DELAWARE ADVERSARY PROCEEDING**

The United States has moved this Court, pursuant to Rule 8005,[1/] to stay the trial in the Delaware Adversary Proceeding until at least 60 days after the Court issues its decision in the appeal from the denial of conversion to Chapter 7, subject to extension of said stay until a trustee can become sufficiently familiar with the issues to determine whether to waive the debtor's attorney client privilege and also whether to seek to become involved in the litigation.

At a hearing today, October 3, 2006, the United States Bankruptcy Judge for the District of Delaware (Carey, Kevin J.) denied the government's most recent request for a continuance of a trial scheduled to start on October 16, 2006. In doing so, Judge Carey essentially stated that (a) he granted the last continuance for a period that he thought would be sufficient for the District Court in Connecticut to issue a decision and order having the effect of converting the bankruptcy case to

---

[1/] Except where indicated otherwise, all statutory references are to the Bankruptcy Code (11 U.S.C.) and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

one under chapter 7; (b) he does not think justice will be served by postponing the trial further without a decision and order from the District Court in Connecticut; and (c) if the Connecticut District Court issues a decision and order essentially converting the bankruptcy case before the October 16, 2006 trial date, Judge Carey will consider an oral motion from the government renewing its motion for a continuance of the trial.

The United States is therefore requesting an emergency hearing (telephonic or in-court), and requesting that the Court notify Assistant U.S. Attorney Ann M. Nevins of a date and time for such a hearing so that she may then notify other counsel. The United States has satisfied Rule 8005's requirement to seek relief first in the bankruptcy court as described below. A courtesy copy of this motion will be emailed to counsel for all defendants in the Delaware adversary proceeding (and if the Court deems it appropriate, the United States will not object to their appearing for the limited purpose of opposing a stay), although the indenture trustee is the fiduciary for all junior subordinated PIK note holders, including the active defendants in the Delaware adversary proceeding.

The jurisdiction of this Court to stay the Delaware Bankruptcy Court is addressed below, given that the appellees here have previously argued that this Court lacks power to stay the trial in Delaware. Should this Court determine it lacks jurisdiction, the United States may file a motion with the Delaware District Court to stay the trial incident to a motion for leave to appeal the Delaware Bankruptcy Court's denial of a postponement or, in the alternative, a petition for a writ of mandamus to stay the trial. In our view, however, this Court is the more appropriate Court to resolve the matter since it is the effectiveness of this Court's appellate ruling that we are seeking to prevent from being undermined.

**Background Pre-dating June 5, 2006 Order Postponing June 12th Trial to October 16th**

Because this Court, on May 23, 2006, announced what its ruling on the conversion aspect of these appeals will be, we provide procedural history only beginning shortly before that time, before presenting argument.

1. On April 13, 2006, the United States filed in these appeals the *United States' (1) Report on Delaware Trial Date Change, (2) Request That Court Rule on Conversion Issue as Soon as Possible, (3) Request That Any Judgment for Reversal Remove the 10-day Stay in Bankruptcy Rule 8017 and Mandate Immediate Entry by the Bankruptcy Court of an Order Converting the Case to Chapter 7 (Without Prejudice to an Appeal to the Second Circuit), and (4) Request That this Court Retain Jurisdiction for Certain Purposes.* (DI# 60.) The debtor and Indenture Trustee objected (DI# 67, 68) and the government replied (DI# 70). As part of the opposition to the government's request to retain jurisdiction, appellees argued that this Court lacks jurisdiction to stay the trial in Delaware. The government's reply argued to the contrary.

2. On May 18, 2006, the United States filed in these appeals a *Notice of Hearing on May 24 in Delaware District Court and That a Ruling by this Court on the Conversion Issue Could Impact the Issues at That Hearing.* (DI# 73.)

3. On May 23, 2006, this Court held a telephonic hearing at which it stated that it had determined to reverse the denial of the government's motion to convert and either order conversion or remand with instructions to do so, but that the Court had not completed an opinion. (The transcript is DI# 77 in these consolidated appeals.)

4. On May 24, 2006, the Delaware District Court (Judge Jordan) heard argument on a government motion for leave to appeal an order of Judge Carey denying re-transfer of the adversary proceeding to the Connecticut Bankruptcy Court. (Del. Dist. Ct. No. 06-mc-91.) One aspect of Judge Carey's reasoning in denying the re-transfer motion (as echoed by Judge Jordan in

denying the motion for leave to appeal) has some bearing on the appropriateness of awaiting the appointment of a trustee before proceeding with the trial. The government's motion to re-transfer had argued that the reassignment of the matter from Judge Walsh to Judge Carey eliminated the only reason that Judge Shiff had indicated as the reason to transfer the case to Delaware. The re-transfer motion also argued that, since the original transfer, discovery indicated that there are several significant material witnesses within the trial subpoena range of the court in Bridgeport, Connecticut who will not appear for trial in Delaware, including, most importantly, lawyers from the Baer Marks law firm that provided services to the debtor in 1995-98, including representing it in the 1996 bankruptcy in Delaware.[2] Finally, the government argued that if a Trustee was appointed as a result of the instant appeals, the Trustee would, based on the duty to represent the estate, likely waive the debtor's attorney-client privilege in the Delaware adversary proceeding, which would make it even more important to be able to subpoena to trial the New York attorneys from the Baer Marks law firm that had represented the debtor in the 1996 case, since they asserted the attorney-client privilege in refusing to answer deposition questions (as did the debtor's principal, Bruce Armstrong). In denying the motion for re-transfer at a hearing on March 29, 2006 (written order entered April 10, 2006), the Delaware Bankruptcy Court ruled that the motion to re-transfer would be considered from the standpoint of the status quo, with the case pending in Delaware, with the burden on the government. In this regard, Judge Carey stated he would not revisit Judge Shiff's original transfer order particularly given that this Court had denied leave to appeal that transfer order and indicated at the hearing in 2001 on that motion for leave that Judge Shiff had not abused his discretion. At the same time, Judge Carey indicated in denying the motion

---

[2] Although some (not all) of their depositions were taken (the Delaware rules limit the number of depositions a party may take), the government argued that it wanted them available to ask questions the need for which were not apparent at the time of the depositions and which might not become apparent until other witnesses testify at trial.

for re-transfer, that other procedures might be available to ameliorate any prejudice from the inability to subpoena the Baer Marks attorneys to trial, including possibly presiding over trial depositions.[3]

5. At the argument in the Delaware District Court on May 24, 2006, on the government's motion to take an interlocutory appeal from the denial of retransfer, the United States informed Judge Jordan of this Court's announcement, the previous day, that the case would be converted. In denying leave to appeal, Judge Jordan indicated he would not consider any events that occurred after Judge Carey's order denying re-transfer, including this Court's announcement that the case would be converted to Chapter 7. Judge Jordan indicated that one of the reasons he was denying leave to appeal was that the government's argument for re-transfer was partly dependant upon things Judge Carey had not considered – including this Court's announcement the preceding day – and that any argument that new events added support to a motion for transfer should be taken to the bankruptcy court (Judge Carey) in the first instance.[4] Although the issue of the timing of the trial was not directly before Judge Jordan, it had some bearing on the re-transfer issue before him because Judge Carey's denial of re-transfer was premised in part on an assumption that if the case was transferred back to Connecticut, the trial would be delayed due to a more congested docket here. At the very end of his bench ruling, Judge Jordan indicated recognition that the conversion to Chapter 7 may provide a basis to ask Judge Carey to change the trial schedule. While not part of

---

[3] In the bench ruling denying retransfer ((Del. Bankr. Ct. Adv. No. 01-4605, DI# 405, pages 68-71), Judge Carey allowed that "[t]here's a possible issue with respect to convenience of the witnesses or availability of the witnesses, but there may be some way for the Court to ameliorate that." This was apparently a reference to a statement by Judge Carey, interjected during counsel's argument on the motion, that he might be able to preside over a trial deposition by video (*ibid*. at 58-59). (This transcript, and all other items filed with the Delaware Bankruptcy Court may be viewed on Pacer from the docket of the Delaware adversary proceeding (No. 01-4605).)

[4] Another just-transpired event was that certain documents from the Baer Marks law firm in New York City had just surfaced, that were not previously seen by government counsel for reasons explained in paragraph 7 of this motion *infra*, and the government maintained (and maintains) they are "smoking-gun" type documents.

the bench ruling, Judge Jordan, during the argument on the motion for leave to appeal, endorsed the notion that the problem with the need to lay a foundation for or authenticate documents from the files of the Baer Marks law firm in New York might be handled through a deposition.

      6. On Friday, May 26, 2006, upon receiving the transcript of this Court's May 23, 2006 tele-conference, the United States filed with the Delaware Bankruptcy Court the *United States' Report to Court That Case Will Be Converted,* attaching thereto a copy of that transcript. (Del. Bankr. Ct. Adv. No. 01-4605, DI# 437.) This notice stated that the United States would soon file a motion to postpone the trial so that a trustee could be appointed and get up to speed and determine whether to waive the privilege and/or whether to participate in the trial, before the trial went forward, and so that government could, if a trustee waives the privilege, review the files of the debtor's attorneys and take some of their depositions, given the inability to subpoena them to a trial in Delaware. (All items filed with the Delaware Bankruptcy Court may be viewed on Pacer from the docket of the Delaware adversary proceeding (No. 01-4605).)

      7. The United States felt it had to file one motion of greater urgency before turning to prepare the motion to postpone the trial. Thus, following the Memorial Day weekend, on May 30, 2006, the United States filed with the Delaware Bankruptcy Court the *United States' Motion (and Request for Expedited Telephonic Hearing) (1) to Rule that Certain Important Documents That the United States Has Just Obtained Are Admissible into Evidence Based on, and Along With, the Descriptions and Explanations of the Documents In Debtor's (Overruled) Objections to Producing Them, and/or to Allow an Expanded Deposition of Baer Marks Attorneys, to Obtain Testimony Regarding the Documents, and (2) to Compel Production of the Baer Marks Billing Logs Prior to or in Conjunction With Its Deposition*. (Del. Bankr. Ct. Adv. No. 01-4605, DI# 439.) The "important documents" referred to in the title of this motion were originally withheld from production as protected by the attorney-client privilege, but Judge Walsh had overruled the objections

after an *in camera* inspection, based on the crime-fraud exception.  The government did not realize until recently that a hard-copy packet of the documents produced in compliance with the Delaware Bankruptcy Court's October 16, 2003 order compelling discovery based on the crime-fraud exception to the attorney-client privilege was incomplete.[5]  We are attaching two of the six recently-learned-of documents for reasons explained *infra*.  The Delaware Bankruptcy Court had already ruled that the government could take a limited deposition of the Baer Marks law firm related to three other documents it was previously aware of.  The motion just described thus sought to expand the scope of that deposition.

      8. One day later, on May 31, 2006, the United States filed with the Delaware Bankruptcy Court the *United States' Motion to Postpone the Trial until a Chapter 7 Trustee Is Appointed and Can Determine Whether to Waive the Privilege And/or Participate, and for Additional Reasons*. (Del. Bankr. Ct. Adv. No. 01-4605, DI# 440.)   That court set a time for responses and held a telephonic hearing on June 5, 2006.

### Grant of Postponement and Aftermath

      9. At the June 5, 2006 hearing, Judge Carey, after listening to arguments on behalf of all parties, granted the motion to postpone the trial and, at a continued hearing on June 8, 2006, reset the trial to begin on October 16, 2006.  He deferred decision on the motion to expand the deposition of the debtor's former New York attorneys at the Baer Marks firm, in order to inquire into the recently surfaced documents, because he recognized that a Trustee's determinations could

---

[5] When the order compelling production was issued, debtor's counsel said he would e-mail the documents to government counsel but government counsel asked for a hard-copy production.  The hard-copy production was incomplete.  While the e-mail contained all the required documents, the government's trial attorney, Alan Shapiro, had no recollection of ever having received it and, if he did receive it, thinks he would have deleted it without opening its attached files because he had the hard-copy packet and believed it was complete.  The government discovered the discrepancy shortly before filing the motion referenced in the text, and debtor's counsel then sent the e-mail a second time.  That is when government counsel first laid eyes on the documents that are the subject of the motion referenced in the text.

further impact such a deposition. A conforming written order was subsequently entered.

    10. In the bench ruling, which is reflected at pages 49-52 of the transcript (Del. Bankr. Ct. Adv. No. 01-4605, DI#470), Judge Carey observed that it was appropriate to "balance the interests" of the party seeking a continuance against the interests of the parties opposing it. His Honor observed that the parties were nearly on the "eve of trial," which weighed against continuance, but added that there is still some discovery to accomplish, inasmuch as the Court postponed it in the expectation that a trustee would soon be appointed, and this might affect its scope. Judge Carey noted that the money is in an interest-bearing account. Judge Carey indicated that he felt the most important reason weighing in favor of a postponement was that this Court had indicated that a trustee would be appointed partly so that a disinterested fiduciary could determine whether to assert or waive the debtor's attorney-client privilege. The Delaware Bankruptcy Court recognized that this raised a substantial possibility that the privilege will be waived.

    11. Judge Carey also stated in his bench ruling that the dispute over whether the Rule 30(b)(6) deposition of the Baer Marks law firm (which the court had already granted as to certain documents) should be expanded to cover what the government characterizes as "smoking-gun" documents that came to the government's attention only shortly before the June 5, 2006 hearing was a persuasive reason to await the appointment of a Trustee. (See Del. Bankr. Ct. Adv. No. 01-4605, DI#470 at pages 50-51.) The United States believes that not only may other documents be discovered if a Trustee waives the privilege, as the Delaware Bankruptcy Court recognized in postponing the Baer Marks deposition, but also the Baer Marks deposition may be affected by whether a Trustee directs the lawyers from that law firm to be more forthcoming and less circumspect in providing information to the government.[6/] A Trustee may also waive the privilege

---

[6/] During negotiations over fact stipulations for the final pre-trial order in the Delaware adversary proceeding, the defendants' counsel made it clear that they will fight tooth and nail over the foundations for the admissibility of every one of the Bear Marks documents – not only the ones that are presently

for communications between the debtor and the Akin Gump firm and its predecessor on this case (Stroock, Stroock, & Levan), which the recently-surfaced documents reveal had communications with Baer Marks, and which apparently determined that the disclosures to be made in the Connecticut case in 1998 should be a good deal more informative to the taxing authorities than those made during the 1996 case in this Court.

12.  Since June 5, 2006, the parties in the Delaware adversary proceeding have complied with various pre-trial requirements and, along the way, have participated in several telephonic status conferences or hearings.  The time has not been wasted as the parties have exchanged exhibits, exchanged pages and lines of deposition testimony to be offered into evidence as trial depositions (numerous witnesses are beyond the 100-mile subpoena range of the court in Delaware, including but not limited to several in Connecticut, New York City, or Northern New Jersey), exchanged objections to deposition testimony and counter-designations of additional material for context, and also counsel have spent more than 50 hours negotiating fact stipulations, narrowing some of the issues for trial.[7/]

### Denial of Supplemental Motion for Further Postponement

13.  At a status conference on September 19, 2006, the United States orally moved for a further trial continuance in light of the fact that this Court had not entered its decision on the appeal from the denial of the motion to convert to Chapter 7, and that a forthcoming trustee would not have sufficient time to get "up to speed" to determine whether to participate and/or to waive the attorney client privilege of the debtor and thus accord the government access to the files of the

---

unidentified as to author or date, but even clearly dated memoranda from one named Baer Marks attorney to another, such as the ones attached here.

7/ Under Judge Carey's pre-trial order, each side served statements of proffered undisputed facts, subject to refinement through negotiation.  The government proffered 681 fact paragraphs and the defendants 277.

debtor's former attorneys (and perhaps instruct those attorneys to be less circumspect and more forthcoming in answering deposition questions). Judge Carey denied the request without prejudice.

14. On Monday, September 25, 2006, the United States filed with the Delaware Bankruptcy Court the *United States' Supplemental Motion (and Request for Expedited Telephonic Hearing) to Further Postpone the Trial So That a Chapter 7 Trustee Can Determine Whether to Waive the Privilege and/or Participate, and for Additional Reasons.* Judge Carey directed defendants to file their response by Monday, October 2, 2006, and set the matter for telephonic hearing on Tuesday, October 3, 2006.

15. As argued in the government's supplemental postponement motion, not only may a Trustee enable the government to discover additional material documents, but also a Trustee may waive the privilege as to testimony by the debtor's chief executive officer, Bruce Armstrong, who refused to answer numerous questions at his deposition based on the assertion of the attorney-client privilege. A Trustee may also direct the lawyers who represented the debtors in the 1996 case to be more forthcoming and less circumspect in providing information to the government.

16. At the 10/2/06 hearing, Judge Carey denied the supplemental motion for a further postponement. In doing so, Judge Carey essentially stated that (a) he granted the last continuance for a period that he thought would be sufficient for the District Court in Connecticut to issue a decision and order having the effect of converting the bankruptcy case to one under chapter 7; (b) he does not think justice will be served by postponing the trial further without a decision and order from the District Court in Connecticut; and (c) if the Connecticut District Court issues a decision and order essentially converting the bankruptcy case before the October 16, 2006 trial date, Judge Carey will consider an oral motion from the government renewing its motion for a continuance of the trial.

## Discussion

### A. Authority to Stay the Delaware Trial

Rule 8005 generally governs stays pending appeal in district court appeals from bankruptcy court orders. Rule 8005 permits not only stays of the particular order appealed but also expressly includes the power to "suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest."

Other proceedings in the case would include the Delaware adversary proceeding. This is reflected in the general jurisdictional provisions. Thus 28 U.S.C. § 1334(a) vests the district court with exclusive jurisdiction over the "case" – *i.e.*, the chapter 7, 11, 12, or 13 case (which may be referred to the bankruptcy court pursuant 28 U.S.C. § 157), while § 1334(b) vests the district court (referable to the bankruptcy court) with non-exclusive jurisdiction over all "proceedings" that either arise under title 11, arising in a case under title 11, or are related to a case under title 11. The adversary proceeding the government commenced is a proceeding arising in a case under title 11. Both the debt/equity and equitable subordination counts could arise in a dispute outside bankruptcy regarding the payment or priority of the junior note holders' claims, but arise within the bankruptcy case because they govern the allowability of the claims as debts and their priority of distribution in the bankruptcy case. Thus, the Delaware adversary proceeding falls within Rule 8005 as one of the "proceedings" that may be stayed pending an appeal from the denial of conversion. *Cf. In re Trans World Airlines, Inc.*, 18 F.3d 208, 211 n.5 (3d Cir. 1994) ("Bankruptcy Rule 8005, by its terms, provides the bankruptcy court with substantially broader discretion than afforded a court by Rule 62," Fed.R.Civ.P.).

Section 105 of the Bankruptcy Code also affords this Court the authority to issue any order necessary to protect its appellate jurisdiction or to retain jurisdiction – even after a judgment

reversing the Connecticut Bankruptcy Court's denial of the government's motion to convert – sufficient to assure that the relief it grants in this appeal is not effectively nullified by further proceedings in the bankruptcy case, or in any adversary proceeding therein. It should also be borne in mind that "exclusive" *in rem* jurisdiction over the bankruptcy estate is ultimately vested in this Court, pursuant to 28 U.S.C. § 1334(e), referred to its bankruptcy "unit" (28 U.S.C. § 151) under 28 U.S.C. § 157. Ultimately, it is by the exercise of this Court's (including its bankruptcy unit's) primary *in rem* jurisdiction that any judgment of the Delaware Bankruptcy Court can be given effect or enforced – *i.e.,* via distribution of the funds that are held in the DIP account by the debtor in possession (which funds will be turned over to a Chapter 7 trustee upon conversion). Incident to its *in rem* jurisdiction, this Court may stay any proceeding in the country (in any court – state or federal) that has the potential to affect the rights to and distribution of the estate. *See Celotex Corp. v. Edwards*, 415 U.S. 300, 313 (1995) (bankruptcy court could enjoin federal district court action in another district pursuant to its power under 11 U.S.C. § 105, even if the action was not statutorily stayed by 11 U.S.C. § 362).

For similar reasons, as a pragmatic matter, there is no issue over the enforceability of a stay order. Assuming that this Court granted a stay and the Delaware Bankruptcy Court neverthless proceeded (which we are confident it would not do – this is purely a theoretical point to show that this Court has jurisdiction, which is sometimes said to be dependent upon the pragmatic power to enforce an order), this Court, in light of its exclusive *in rem* jurisdiction, could direct the Connecticut Bankruptcy Court to ignore a judgment resulting from a trial that violated this Court's order.

Similar arguments were raised when the government sought a stay of the Delaware Bankruptcy Court's 12/12/02 order granting interim fees to debtor's counsel. The Delaware District Court entered a temporary stay stating it would defer to this Court and this Court, on March 14, 2005, as part of its order denying the appellees' motion to dismiss the appeal from the cash

collateral order (which was a predicate to the application for interim fees in Delaware) granted the government's motion to stay compliance with the Delaware Bankruptcy Court's 12/12/02 order.

As noted in the introduction above, if this Court determines it lacks authority to stay the Delaware adversary proceeding and/or that it would be more appropriate for the government to approach the Delaware District Court, the government may take that step.  But the United States maintains that this Court is the more appropriate appellate forum to resolve the matter since it is the effectiveness of this Court's appellate ruling on the conversion issue that we are seeking to preserve.  At a minium, if this Court concludes it lacks power to issue a stay, it may at least inform the Delaware Bankruptcy and District Courts by its ruling whether it would prefer that its appellate determination not be nullified by having the Delaware adversary proceeding proceed to trial before a Trustee is appointed and able to make a considered determination on whether or not to waive the debtor's attorney-client privilege.

**B.  Test for Stay**

In considering whether to grant a stay pending appeal under Bankruptcy Rule 8005 – and we submit the same standard applies to a stay after the conclusion of an appeal sufficient to assure that the Court's appellate judgment is not pragmatically nullified – courts generally consider the same factors that judges consider in whether to grant a stay pending appeal to a court of appeals: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated  'a substantial possibility, although less than a likelihood, of success' on appeal, and (4) the public interests that may be affected."  *Hirschfield v. Board of Elections*, 984 F.2d 35, 39 (2d Cir. 1992).  As observed in *Hayes v. City University of New York*, 503 F.Supp. 946, 963 (S.D.N.Y.), *aff'd on other grounds* 648 F.2d 110 (2d Cir.1981), cited with approval in *Hirschfield*, likelihood of success on the merits does not mean that an appellant must persuade the judge that ruled against it that the appellant is

more likely to win reversal than not (bearing in mind that the standard is the same before the trial judge as before the appellate court). It suffices to show a "substantial possibility" of success that is well under 50%.

As regards harm, the harm to the movant and opponent are balanced -- greater harm to an appellant if a stay is not granted may justify correspondingly greater harm to an appellee if the stay is granted; conversely, the degree of harm to the appellant need not be as great to justify a stay that will result in no harm at all to an appellee. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) ("the stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules").

Rule 8005 provides that the motion must explain why the relief was not obtained from the bankruptcy judge. The United States complied with that requirement by first moving the Delaware Bankruptcy Court to postpone the trial until the completion of this appeal and until the relief granted by this appeal can be implemented.

**C. Application**

*(1) Irreparable Injury to the Appellant*

The United States has consistently and diligently, for a very long time, sought to have a disinterested trustee determine whether to waive the debtor's attorney client privilege. It has sought that relief for an almost singular purpose – to assure that all relevant evidence is available for introduction in the Delaware adversary proceeding.[8/] If the United States is now forced to go to trial without being able to review the files of the debtor's attorneys, it will suffer two alternative kinds of irreparable harm. First, it may be permanently deprived a chance to discover relevant

---

8/ The United States also argued for conversion in order to prevent diminution of the estate, but that issue became less important once this Court and the Delaware Bankruptcy Court stayed the distributions of interim fee awards to debtor's counsel, and the concerns underlying that issue are now bound up more in the merits of the other part of these consolidated appeals – *i.e.*, whether counsel for the estate should be paid for litigating in support of a lien *against* the estate.

facts. The defendants in the Delaware adversary proceeding are well aware that, after a three week trial, post-trial submissions, and a decision by the Delaware Bankruptcy Court on the merits of the government's adversary complaint, if the government loses, an appellate court is likely to look most skeptically at an argument for a do-over because of some additional evidence that might have been adduced. Alternatively, if an appellate court would order a re-trial based on the discovery of additional material evidence as a result of the appointment of a disinterested trustee, then the United States (and the courts) will have irretrievably wasted substantial resources on a lengthy trial.

### (2) No "Substantial Injury" to Respondents

On the other hand, there is no possibility of substantial harm either to the appellees or to the other defendants in the Delaware adversary proceeding flowing from a temporary stay. The cost is a modest delay (*e.g.*, perhaps 90 days) on an adversary complaint filed almost 8 years ago, and which is almost certain to engender at least one level of appeals before it is over. Nor can that 8-year time be attributed to government delay. Because of the Connecticut Bankruptcy Court's initial summary judgment based on *res judicata*, there was an initial delay of three years before discovery even began. Discovery took far longer than it might have in part because defendants objected to almost all of the government's discovery requests and sought to litigate virtually ever issue. It also took the Delaware Bankruptcy Court considerable time to adjudicate the government's motion to compel production of withheld documents based on the crime-fraud exception to the attorney client privilege. When Judge Walsh issued his ruling, the defendants fought the government's request for follow-up depositions on the documents ordered to be produced, even though Judge Walsh had already indicated during the hearing on the motion to compel that he would be inclined to grant follow-up depositions if, after *in camera* inspection, he determined to compel the production of the documents. Considerable time was consumed as well in the briefing of the government's and Indenture Trustee's respective motions for summary

judgment on the merits.[9/]  While the long pendency of the proceeding is unfortunate fro all parties, at this juncture it makes no sense to suddenly rush to start a lengthy trial potentially without all of the material evidence in order save perhaps 90 days.[10/]

### (3) Substantial Possibility of Success on the Merits

This Court has already stated that the government *will* succeed in its appeal from the denial of conversion, so this aspect of the test for a stay should not be an issue.

### (4) The Public Interest

The public interest favors assuring that the government is able to discover all of the evidence that may be relevant to present in the trial of the Delaware adversary proceeding and obtain it in a form admissible at trial.  It is not just that $40 million is at stake for the public fisc (state and federal), although that alone supports a stay.[11/]  The adversary proceeding also contains an important substantive question of whether the debtor's management and the note holders improperly used the 1996 bankruptcy case in Delaware to get the debtor to grant to the junior note holders a security interest in all of the debtor's assets specifically to leapfrog the priority of their

---

9/ The defendants had made a previous motion for summary judgment in the Delaware proceeding based on the alleged finality of the plan, arguing that plan-finality was somehow different than the *res judicata* argument that this Court had already rejected in reversing the initial summary judgment order.  Judge Walsh denied the motion.

10/ This estimate, however, presumes this Court will issue its decision and judgment in the appeals, or at least the conversion portion of the appeals, *very* soon.  Built into this estimate is the time it will take a trustee to review important portions of the record in the Delaware adversary proceeding, meet with the government's attorneys and listen to their contentions as to why the trustee should waive the privilege, meet with the defendants' attorneys who will presumably want a chance to make a counter-pitch, plus the time it will take the government, assuming the privilege is waived, to review the files of the debtor's attorneys and then take follow-up depositions of certain of those attorneys (which may first require the briefing of a motion for such depositions since defendants have consistently fought the government's efforts to obtain evidence in an admissible form at every conceivable turn).

11/ There are numerous administrative State tax claims on file in the case due to the presence of assets sold in various states.  The IRS and the State taxing authorities will share the estate's funds *pro rata* if the United States succeeds in the Delaware adversary proceeding since the funds are insufficient to satisfy all the administrative tax claims.

previously unsecured claims over a tax on gains that they knew would be incurred in a sale of the assets within three years of the confirmation of the 1996 plan, because they knew that their investment would be wiped out by the anticipated tax in a liquidation at the time of the 1996 bankruptcy, and knew that there was a substantial risk that they would still receive little or no recovery on their investment in a future sale unless they could get a security interest to reposition their formerly unsecured notes to be paid ahead of taxes resulting from the sale.

  In this regard, the documents that the government most recently learned about are a paradigmatic example of why it is important to have a trustee involved.  Attached hereto are two documents that reflect that debtor's former attorneys and its management discussed the scheme to leapfrog the priority of the junior subordinated notes over that of a tax liability, discussed the possible need to manufacture some "consideration" to the debtor for its grant of the security interest, and discussed the need to communicate the scheme to the unsecured note holders, so that they would go along with the plan on the one hand, but on the other hand, wanted not to be required to disclose the scheme in a bankruptcy plan disclosure statement that would have to be sent to the IRS.  Defendants are still trying to keep the attached documents out of evidence in Delaware by, among other things, arguing that the government's failure to have compared the hard-copy production, sent in purported compliance with Judge Walsh's order compelling production, with the list of documents at issue in the motion to compel, which would have caused the government to realize that documents were missing, was an "inexcusable" failure.[12]  What is clear is that if a disinterested trustee had waived the privilege years ago, the government would have found these documents at that time by having the government's own attorneys inspect the files of

---

12/ As noted in paragraph 7 of the background facts above (and footnote 3), the Delaware Bankruptcy Court deferred ruling on the government's motion to expand the deposition of the Baer Marks law firm to cover the documents that recently surfaced.  Defendants also insist that, thus far at least, the United States has adduced no foundation for the admissibility of the Baer Marks documents.

debtor's counsel.

## Relief Sought

The United States requests that this Court stay the trial in the Delaware adversary proceeding until a trustee is appointed and has sufficient time to familiarize himself or herself with the issues, decide whether to seek to participate in the Delaware adversary proceeding, decide whether to waive the attorney-client privilege even if the trustee decides not to participate, and (if the privilege is waived) for the government to have sufficient time to examine the files of the debtor's counsel and seek leave of the Delaware Bankruptcy Court to take such additional depositions, prior to trial, as the information learned as a result of the waiver of the privilege indicates to be appropriate.

KEVIN J. O'CONNOR
United States Attorney

 */s/ Ann M. Nevins*
ANN M. NEVINS
Assistant United States Attorney
Federal Bar No. CT06484
915 Lafayette Blvd., Room 309
Bridgeport, CT  06604
(203) 696-3000

PETER SKLAREW
Federal Bar No. CT 17864
U.S. Department of Justice, Tax Div.
P.O. Box 55
Washington, D.C. 20044-0055
(202) 307-6571

**CERTIFICATE OF SERVICE**

    IT IS CERTIFIED that I have caused the foregoing **MEMORANDUM IN SUPPORT OF MOTION OF UNITED STATES TO STAY DELAWARE ADVERSARY PROCEEDING** to be electronically filed, which will result in automated electronic service, this  3rd  day of October, 2006, for the same by the Court's ECF system and, in addition, to the extent any of the following are not indicated as served on the ECF confirmation notices, I will immediate cause them to be served by First Class Mail:

| | |
|---|---|
| Daniel H. Golden<br>Akin, Gump, Strauss, Hauer & Feld, LLP<br>590 Madison Avenue<br>New York, NY  10022 | Patricia Beary<br>Asst. U.S. Trustee<br>265 Church Street, Ste. 1103<br>New Haven, CT  06510-7016 |
| Craig I. Lifland<br>Zeisler & Zeisler<br>558 Clinton Avenue<br>Bridgeport, CT  06605 | Joan Pilver<br>Assistant Attorney General<br>State of Connecticut<br>55 Elm Street, 5th Floor<br>Hartford, CT 06141 |
| Ira Goldman<br>Shipman & Goodwin<br>One American Row<br>Hartford, CT  06103-2819 | |

    In addition, courtesy service of a pdf version of this filing is also being made on all counsel in the Delaware adversary proceeding by the following e-mail addresses:

    currier@klettrooney.com; dgolden@AkinGump.com;  aqureshi@akingump.com; ssatyaprasad@akingump.com; fmonaco@monlaw.com; kmangan@monlaw.com; klamanna@goodwin.com; igoldman@goodwin.com; mpollio@goodwin.com; pbenner@goodwin.com; wbowden@ashby-geddes.com; jhandlon@ashby-geddes.com; gneal@Sidley.com; tchan@sidley.com; vguldi@zuckerman.com; Tmacauley@zuckerman.com; edalmani@foleyhoag.com; AZS@foleyhoag.com;

                                            */s/ Ann M. Nevins*

                                            ANN M. NEVINS<br>                                            Assistant U.S. Attorney