# BAER MARKS & UPHAM
805 Third Avenue
New York, New York  10022

Stanley E. Bloch

Telephone: 212-702-5871
Facsimile: 212-702-5797

TO: Michael V. Blumenthal

FROM: Stanley E. Bloch

DATE: May 12, 1995

RE: American Cable Entertainment-Scott  (42473-01-01)

---

This is a follow up to our meeting yesterday regarding American Cable Entertainment-Scott ("ACE-Scott") and what options may be available.

In our initial meetings with Bruce Armstrong and John Flanagan, the feeling was that there was not a problem with the Scott side of their operations since they believed that they would be in a position to sell Scott for a price sufficient to cover all debt except junior subordinated debt and then the price would cover a part of the junior subordinated debt. Management has an arrangement under which they participate with the junior subordinated debt holders in a portion of proceeds received by them. Because of the tax consequence of a sale of assets, it has always been assumed that any disposition of Scott would be as result of a stock sale. The main difference between an asset sale and a stock sale is that Scott is a C-corporation and therefore there would be significant taxes on a sale of assets at the corporate level and then further taxes on a distribution of proceeds (if there were any, which there won't be) to the equity holders.

At the present time, the debt structure of Scott is approximately as follows:

- Senior secured bank debt held by 3 banks aggregating approximately $9,000,000;

- Senior secured insurance company debt held by 10 insurance companies aggregating approximately $23,000,000;

- Senior subordinated secured debt held by 2 insurance company aggregating approximately $17,000,000;

- $50,000,000 of subordinated debentures (unsecured) held by the public;

- Unsecured subordinated notes aggregating approximately $12,000,000; and

- Unsecured subordinated notes aggregating approximately $36,000,000.

The assets have a fair market value if sold in separate pieces (which would be expected to maximize the amount realized) of about $135,000,000.

The first question I have relates to the ability to grant a security interest now to the various unsecured creditors. You and I have generally discussed this but I would like somebody to take a few hours (no more than that without at least talking to me) to determine whether there are any problems either under bankruptcy laws or fraudulent conveyance laws with granting to the unsecured creditors junior liens on the assets securing the debt. While there are presently no contracts for sales of any of the assets, it is contemplated that ultimately the assets will be sold since, as I understand it, income taxes resulting from any sale of assets would come ahead of unsecured creditors. What we are trying to do is put the present creditors in a position of getting paid and avoiding incomes taxes on the sales from eating up a good part of the proceeds. Please note that because the assets have a very low basis, the income taxes could be as high as an aggregate of about $50,000,000. Also note that if there were any sale of assets the actual consummation of the sales would not take place for a minimum of three months and possibly as long as a year after the time of granting of any security interest. In answering my question, I would want also to know whether it is necessary to obtain any concession from the lender in consideration of the grant of the security interest. For example, would it be necessary to have the maturity of the debt extended for a period of time or the interest rate increased or are we able to grant the security interest for an antecedent debt without getting any other benefit from the lenders.

The second question is more general and is more of the type that we discussed on the Kentucky-Indiana transaction and that is simply with the facts that I've given you is there any possibility of reorganizing this company that you can see.

SEB/nmh

SCP5724