

**U.S. Department of Justice**

**Tax Division**

*Civil Trial Section, Northern Region*

| | |
|---|---|
| Section Tel. No. (202) 307-6533 | P.O. Box 55 |
| Section Fax No. (202) 514-5238 | Washington, D.C. 20044 |
| Attorney: Peter Sklarew | 555 Fourth Street, N.W. (Rm. 7804) |
| Attorney's Direct Line: (202) 307-6571 | Washington, D.C. 20001 |

5-14-6702

September 9, 2006

Hon. Alvin W. Thompson
Judge, United States District Court
450 Main Street
Hartford, Connecticut 06103

**By Hand to Chambers (and by ECF Filing)**

Re:    In re Scott Cable Communications, Inc.
        No. 3:02-CV-1725 (consolidated bankruptcy appeals)

Dear Judge Thompson:

In the telephonic hearing held Friday, October 6, 2006, Your Honor granted the government's request, by Assistant U.S. Attorney Ann Nevins, to hold the hearing open tentatively for continuation today, October 10th, at 4:30 p.m., provided that the government informed the parties of the nature of any relief the government may continue to seek, given the Court's surprising announcement that it was no longer anticipating a ruling consistent with its announcement at the May 24, 2006 hearing. As we understand the Court's current intention, rather than reversing the denial of conversion, Your Honor will instead be preparing a decision affirming it on the premise that Judge Shiff did not "abuse his discretion," even though Your Honor stated you would have reached the opposite result if making the determination as the trial judge. This letter is to indicate to the parties and the Court that the government continues to seek a stay, and to explain that position, and, since the availability of a stay depends in part on the likelihood of success on the merits, also to explain at least in summary fashion why we believe that the Court's reasons foreshadowed during Friday's hearing are flawed and deserve further deliberation in light of certain considerations that we believe the Court may have overlooked. Since I was out of the office last week, I have had very little time to prepare this summary of essential points and would therefore respectfully suggest that the Court consider whether it may wish to call for additional briefing on any of the points made herein.

**Our understanding of the Court's current disposition**

We understand the Court's current disposition to be as follows.

Preliminarily, the Court recognizes that it is beyond dispute that the debtor's management is subject to a major and fundamental conflict of interest due to its 21.5% stake in any recovering on the series A junior subordinated PIK notes (which make up 85% of the PIK notes at issue in the Delaware adversary proceeding). This conflict of interest affected (indeed, effected) the debtor in possession's determination to take the side of the junior PIK note holders in the Delaware adversary proceeding and, more importantly, to assert the attorney-client privilege in having its management and its former attorneys (during the 1996 reorganization case) refuse to answer numerous deposition questions. The government would further note that this conflict continues to taint the unwillingness of the estate's "fiduciary" to grant government counsel open access to the files of the debtor's former and present attorneys and direct them to be forthcoming in providing information about oral communications.

Notwithstanding the conflict of interest, Your Honor appears to have reached the conclusion that this conflict was merely a factor to be considered in the exercise of discretion by the bankruptcy judge on the issue of whether to convert to Chapter 7 or appoint a Chapter 11 trustee, and the District Court, as an appellate tribunal, cannot say that Judge Shiff abused that discretion. In explaining this conclusion, Your Honor indicated that the underpinnings of Judge Shiff's rulings are unclear.  Although not stated, we presume you have concluded that this lack of clarity somehow makes it more troublesome for the District Court, as an appellate court, to second guess the bankruptcy judge.  Your Honor also referred at the October 6 conference to a line of cases (not yet revealed as to citations) that suggests that a bankruptcy judge may address a conflict of interest by remedies other than converting a case to Chapter 7.

### Our position as to what the Court has overlooked and how it is about to err

Our position as to what the Court may have overlooked may be divided into two areas – those concerning the conflict of interest and those concerning the additional grounds for conversion not explicitly mentioned by Your Honor at the October 6 conference – *i.e.*, the undisputed inability to confirm a plan that is one of Bankruptcy Code § 1112's stated "causes" to convert.  At the same time, these two points are not wholly unrelated as noted in a moment.

Although we maintain that Judge Shiff indeed abused his discretion, to the extent he exercised any discretion, the point we wish to emphasize first is that, although Judge Shiff's ruling was not entirely clear, it is not appropriate for the District Court to assume that any discretion was exercised at all, given the comments Judge Shiff made during hearings and in his written orders. Specifically, we submit that it is unmistakable that Judge Shiff felt that the conflict of interest of debtor's management could not be a factor in the exercise of any discretion because he was, in his view, constrained by what he concluded (incorrectly as a matter of law) was the "law of the case," stemming from an interlocutory ruling of the Delaware bankruptcy judge in the Delaware adversary proceeding.[1]

---

1/  Judge Shiff repeatedly rebuffed the government's various objections and motions on the basis of collateral estoppel or issue preclusion, based on the 3/4/02 ruling of the Delaware Bankruptcy Court granting the debtor's motion to intervene in the adversary proceeding:

First, at the 5/1/2002 hearing on the cash collateral stipulation, the government argued that it was improper for estate funds to be used to litigate in conflict with the estate's objective pecuniary interests and Judge Shiff stated that "And your argument is an attempt to make an end run around Judge Walsh.  He said they could do it."  (DI# 367 at 59-60.)  Later in the colloquy, Judge Shiff referred to this as "law of the case."  (*Ibid.* at 64-65.)  Judge Shiff further explained Judge Walsh's ruling as not simply being that the "debtor" could intervene, but as a ruling that the "estate" had an interest in defending against the government's arguments for subordinating the junior PIK notes or recharacterizing them as equity for distribution priority purposes.  *See ibid.* at 64-65 ("[t]he estate has an interest, Judge Walsh said").

Second, the written order of July 18, 2002, overruling the government's objections to the cash collateral stipulation and denying its motion to convert stated that "[t]he final order of the Delaware Bankruptcy Court is not subject to collateral review."  Although it is not entirely clear whether that reasoning ("not subject to collateral review") was applicable to the denial of conversion as well, it appears to be the only conceivable basis given that the government was emphasizing the very same conflict of interest of the debtor's management as reasons both why it would be both wrong to allow the estate's funds to be used to fight against the government's adversary complaint in the Delaware proceeding and why a disinterested trustee was needed.

Third, although this occurred after the denial of conversion rather than in conjunction with it, Judge Shiff's statement in the 12/23/02 order overruling the government's objection to Akin Gump's fees reflects back on his stance at the time of the 7/18/02 order because the government was raising

(continued...)

Since Judge Shiff's "law of the case" conclusions were wrong as a matter of law, it follows that either he did not exercise any discretion because he felt he was precluded from doing so or he erred as a matter of law in exercising any discretion because he failed to weigh an important factor due to the erroneous legal conclusion that it was impermissible for him to weigh that factor.

To the extent that there is any uncertainty about whether Judge Shiff's rulings were skewed by incorrect conclusions regarding law of the case principles, it is inappropriate for an appellate court to *assume* that discretion was properly exercised (weighing all appropriate factors) where there is substantial uncertainty over that. To the contrary, and particularly since no other reason was remotely suggested by Judge Shiff, the government would at least be entitled to a remand for the bankruptcy court to explain its ruling. Fundamental principles of due process would be implicated if a party could be precluded from appealing a ruling based on abuse of discretion simply because there is no way to review the exercise of discretion because it was wholly unexplained. While not every court order requires a full explanation, an appellate court "may properly remand for further elucidation when review would be substantially hindered without it" even as to a non-substantive order, such as one regarding a forum *non conveniens* issue. DeShane v. Deere & Co., 726 F.2d 443, 446 (8th Cir. 1984). In DeShane, the court of appeals observed that "[a]s the record now stands we are not in a position to determine whether the district court considered and properly weighed all the legally relevant factors involved in a forum *non conveniens* ruling." It therefore "vacate[d] the judgment and remand[ed] the case to the district court for appropriate findings and reasons for its resolution of the factual, legal *and discretionary issues* presented." Id. (emphasis added). Moreover, a motion to convert a bankruptcy case is far more substantive than a forum *non conveniens* ruling, and its denial far more strongly merits the articulation of a reason, particularly where "cause" to convert as defined in the statute is clearly demonstrated and there has to be some countervailing interest to justify denying conversion. See also King v. Greenblatt, 52 F.3d 1 (1st Cir. 1995) (finding that remand was necessary because the record was insufficient for the court of appeals to determine why the district court denied the modification of a consent decree).

In addition, this is not like other cases involving conflicts of interest that may arguably be ameliorated by some alternative relief – the second line of authority mentioned by Your Honor at the October 6 tele-conference. It is in this connection that the issue of the conflict of interest becomes partly intertwined with the fact that confirmation of a Chapter 11 plan is undisputedly impossible.

---

1/ (...continued)
the same conflict of interest concern. Thus, initially, at the 12/3/02 hearing, as AUSA Nevins was barely getting started summarizing the government's objection to the fee application of debtor's counsel, and was speaking of the conflict of interest of the debtor's manager, Judge Shiff indicated "I've heard all of this before." (DI# 413, R.8003 Ex.6 (transcript) at 7.) Judge Shiff added that to credit the government's conflict of interest argument would be to allow a collateral attack on the Connecticut Bankruptcy Court's order granting the debtor's motion to intervene, which is "the law of this case." (*Ibid*. at 34.) Then, in the 12/23/02 order overruling the government's objection to the interim fees application of debtor's counsel (DI# 421), Judge Shiff stated: "The IRS objected for essentially the same unpersuasive reasons it raised in opposition to the debtor's motion for the cash collateral carve out, *i.e.*, that the debtor lacks standing to defend the Delaware adversary proceeding, has an actual conflict of interest, and is administratively insolvent." Although the December 2002 transcript and order refer only to the cash collateral portion of the July 2002 order, logically, Judge Shiff's erroneous conclusion that "law of the case" principles preclude the government's conflict of interest argument with respect to the interim fees and cash collateral issues would have equal applicability to the same conflict of interest consideration as a factor supporting conversion. Indeed, the debtor and the Indenture Trustee has made precisely such law of the case arguments and Judge Shiff agreed with them.

In the typical case involving a dispute over whether a conflict of interest on the part of an individual debtor or a corporate debtor's management calls for conversion to Chapter 7 or the appointment of a Chapter 11 trustee, there is a potential for confirmation of a plan and, in the meantime, it is possible to isolate the conflicted individual from decisions regarding the issue in respect to which there is a conflict. Examples include where an individual debtor has allegedly made a fraudulent transfer and refuses, as the estate's fiduciary (debtor in possession), to bring an action under Bankruptcy Code § 544 or § 548. In such instances, an official Creditors Committee may be authorized by the bankruptcy court to bring the fraudulent transfer action. Other examples include where a corporate debtor's CEO may be isolated from a particular aspect of management of the debtor.

The instant case does not lend itself to these solutions and also does not involve a potential for confirmation of a plan, the possibility of which might weigh against conversion. It is beyond dispute that no Chapter 11 plan can be confirmed. In that regard, we submit that there is little if any discretion that could be exercised, even ignoring any conflict of interest. Section 1112 defines as cause to convert or dismiss, the inability to confirm a plan. The word "may" is used only because the court may convert or dismiss. There is no basis to maintain a case under Chapter 11 where no Chapter 11 plan is possible.[2] Assuming we a wrong in that regard, however, the conflict of interest, coupled with the inability for the goals of Chapter 11 to be realized, makes it a quintessential abuse of discretion to deny conversion.

But the situation here is worse still, because it is undeniable that the sole interest in keeping the case in Chapter 11 was to allow the debtor's management, with its undisputed conflict of interest, to remain in control of the estate's position in respect to the Delaware litigation. That makes this case different than any other case in which a party appeals the denial of conversion or the appointment of a Chapter 11 trustee based solely on a conflict of interest regarding some unrelated or peripherally related matter, which might then be ameliorated through alternative remedies. To our knowledge, no court has ever attempted to simply order a corporation to waive its attorney-client privilege on a wholesale basis and direct all of its officers and attorneys to assist a creditor in seeking information to aid that creditor in a major piece of litigation on which the distribution of the proceeds of a sale of the debtor's assets will turn. Thus, the only plausible relief the government was able to seek in 2002, when it cited the need for a neutral determination with respect to the assertion of the debtor's attorney-client privilege that had just been asserted in discovery at that time (in 2002), was the appointment of a disinterested trustee. Moreover, when the government moved for conversion or, in the alternative, for the appointment of a Chapter 11 trustee, neither the appellees nor any other party in interest in the bankruptcy case remotely suggested any possible alternative relief as a reason for denying both alternatives requested by the government.[3] Nor did Judge Shiff cite any such possible alternative as a basis for denial, and we submit that it is beyond cavil that Judge Shiff would have viewed (incorrectly) any such alternative relief as barred by the "law of the case" since he felt that the government was precluded from asserting any conflict of interest in light of the Delaware bankruptcy court's grant of the debtor's motion to intervene.

---

[2] Thus, Judge Walsh, observing the confirmation of a plan was impossible, wondered aloud at a hearing in early 2003 why the underlying bankruptcy case had not been converted to Chapter 7, and asked for letter briefs on the impact conversion would have on certain matters. (See transcript attached to this Court's docket item no. 22 in No. 02-1725.)

[3] During this appeal, the debtor has repeatedly declined or ignored government invitations to waive generally, broadly, and fully, the debtor's attorney client privilege.

The combination of the fact that there was and is no possibility of confirming even a Chapter 11 plan of liquidation, let alone one of reorganization, the lack of any readily identifiable alternative relief to the appointment of a disinterested trustee to determine whether to waive the debtor's attorney-client privilege, and the fact that the only conceivable purpose for keeping the debtor a "debtor in possession" with the duties and powers of a trustee under 11 U.S.C. § 1107 was to allow its management to remain in control with respect to the debtor's position vis-a-vis the Delaware adversary proceeding, together make a remand unnecessary because the only proper exercise of discretion on these facts was and still is to order conversion. At a minimum, however, the government is entitled to a remand so that Judge Shiff can exercise any discretion freed of his erroneous conclusion that his hands were tied by Judge Walsh's interlocutory ruling granting the debtor's motion to intervene.

### Our position on the continued appropriateness of a stay

The government's reasons for seeking a stay of the Delaware adversary proceeding, and our arguments as to this Court authority to stay the proceeding in Delaware are contained in the motion for a stay filed on Tuesday, October 3, 2006 (DI#s 83, 84). We submit that those reasons are sufficient to support a stay as long as this Court believes there is a likelihood that the government will ultimately prevail on the merits of its motion to convert to Chapter 7 or appoint a Chapter 11 trustee, whether because our arguments above have given Your Honor reason to deliberate further before reaching a final appealable decision, or because the government may prevail in an appeal to the Second Circuit.[4/] The Second Circuit has made it clear that all that is required is a "probability" of success and that this does not mean the movant must show its chances are even close to 50%, which would be an impossible standard since no judge would be inclined to rule that he or she was more likely than not be reversed on appeal. See Hirschfield v. Board of Elections, 984 F.2d 35, 39 (2d Cir. 1992); Hayes v. City University of New York, 503 F.Supp. 946, 963 (S.D.N.Y.), aff'd on other grounds 648 F.2d 110 (2d Cir.1981).

The Indenture Trustee filed an opposition to our stay motion (DI# 85), which was joined by the debtor (DI# 86) but their arguments are flawed. First, the argument that a transferor court loses all jurisdiction after a venue transfer is inapplicable in light of Rule 8005's express authorization for the district court on appeal to stay any other proceeding arising in a bankruptcy case. The adversary proceeding arose in the bankruptcy case and is one to resolve priorities to funds that are in the "exclusive" in rem jurisdiction (28 U.S.C. § 1334(e) of this Court's bankruptcy "unit" (28 U.S.C. § 151). As our memorandum of law revealed, the Supreme Court has held that a bankruptcy court may stay litigation anywhere in the country that threatens to undermine the proper administration of a bankruptcy estate.

---

4/ It is the intention of the undersigned to recommend further appeal in this matter if the order denying conversion is affirmed, although, to be candid, he will recommend that a stay not be sought from the Second Circuit prior to the scheduled trial date if Your Honor denies a stay in light of the pragmatic impossibility given the number of tasks involved. The Second Circuit has clearly ruled that the government is not required to seek a stay from the court of appeals in order to avoid mooting an appeal where any form of restitution remains possible. See In re Lilyknit Silk Underwear Co., 73 F.2d 52, 53 (2d Cir. 1934); In re Indian Motocycle Co., 261 B.R. 800, 805-06 (1st Cir. BAP 2001). The government maintains that it will be possible, if the government ultimately prevails on appeal in respect to its motion to convert to Chapter 7, to have the Delaware adversary proceeding be retried after the government has had access to all of the debtor's attorney-client files. But that is surely not to be considered a goal of justice and, since Your Honor is familiar with the issues, this Court is in a position to stay the trial in advance and assure that the government is not put to trial before gaining access to evidence it should arguably have had access to in 2002, if not in 2000 when it first moved to convert.

There is no logical basis for an appeal in Delaware.  There is no appeal already pending in which to seek a stay and the Indenture Trustee's response correctly argues that the Delaware order denying postponement of the trial is not appealable.  (It is neither appealable of right nor the proper subject of a motion for leave to take an interlocutory appeal.)  And, it is this Court's appellate jurisdiction that is sought to be protected by the stay motion and not the jurisdiction over any appeal in the Delaware District Court.

The argument that Rule 8005 requires the stay to be sought first before Judge Shiff is frivolous.  The point of the rule is to require a motion to the bankruptcy judge whose order is sought to be stayed pending the appeal.  By analogy, under appellees' logic, if Judge A recused himself from a particular adversary proceeding in a hypothetical bankruptcy case, but continued to preside over the underlying bankruptcy case, and if the adversary proceeding was assigned to Judge B, a motion to stay an order of the Judge B in the adversary proceeding would have to be filed before Judge A.  The contention is illogical.

The argument that a Chapter 7 trustee will have no funds is irrelevant because the majority of Chapter 7 cases are so-called "no asset" cases, and that does not prompt Chapter 7 trustees to abdicate their responsibilities.  In addition, the government disagrees that there are no funds to pay a Chapter 7 trustee for reasons that are beyond the scope of the government's stay motion (but which we will explain if the Court requests an explanation).

### In the Alternative to Issuing a Stay, the Court Should Reverse Without Delay

For the foregoing reasons, the Court should stay the Delaware adversary proceeding.  Alternatively, the court should reverse the denial of conversion without further delay so that the government may take advantage of Judge Carey's invitation to make an oral motion to postpone the trial in the event this Court actually issues an order of reversal prior to the trial on October 16, 2006 (subject to returning to this Court if Judge Carey does not then postpone the trial).  We also remind the Court that the appellees have filed a statement withdrawing their defense of this appeal and subsequently confirmed that this means they have waived the right to appeal a reversal to the Second Circuit (although we recognize that such a waiver does not mean that this Court may reverse the bankruptcy court without actually concluding that it erred).

Sincerely yours,

/s/ *Peter Sklarew*

Peter Sklarew

cc:    Shuba Satyaprasad (By email or fax: 212-872-1002)
       Ann M. Nevins   (By email or fax: 203-579-5575)
       Craig I. Lifland   (By email or fax: 203-367-9678)
       Kathleen M. LaManna  (By email or fax: 860-251-5899)