**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
In re:                       :
                             :
SCOTT CABLE COMMUNICATIONS,  :
INC.,                        :    No.3:02CV01725(AWT)
                             :    (Consolidated bankruptcy appeals)
         Debtor.            :
                             :    (Bankr. Ct. Case No. 98-51923)
                             :
-----------------------------x
UNITED STATES OF AMERICA,     :
                             :
         Appellant,          :
     v.                      :
                             :
SCOTT CABLE COMMUNICATIONS,   :
INC., STATE STREET BANK AND   :
TRUST CO. as Indenture        :
Trustee for certain note      :
holders, and AKIN, GUMP,      :
STRAUSS, HAUER & FELD, LLP,    :
                             :
         Appellees.          :
-----------------------------x
```

## OPINION AND ORDER

The United States appealed from orders issued by the Connecticut Bankruptcy Court on July 18, 2002 ("July Order") and December 23, 2002 ("December Order"). The July Order granted a cash collateral application by Scott Cable Communications, Inc. ("Debtor") and State Street Bank and Trust Co. ("Indenture Trustee"), and denied the government's motion to convert the case from Chapter 11 to Chapter 7 or, in the alternative, to appoint a Chapter 11 trustee. The December Order awarded interim fees and expenses to the Debtor's counsel for services in connection with

-1-

the case before the Connecticut Bankruptcy Court from the funds set aside pursuant to the order granting the cash collateral application.

The July Order has been affirmed with respect to the denial of the government's motion to convert the case or appoint a trustee and is being remanded with respect to the granting of the cash collateral application because that portion of the order was based on an erroneous view of the law.  Consequently, the December Order is also being vacated and remanded.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

On February 14, 1996, the Debtor filed a Chapter 11 case in the Delaware Bankruptcy Court and reorganized pursuant to a confirmed plan.  In that reorganization, certain shareholders of the Debtor exchanged unsecured notes for Junior Subordinated Secured Payment in Kind Notes ("Jr. Secured Notes").  On July 10, 1998, the Debtor entered into an agreement to sell substantially all of its assets.  The agreement expressly conditioned the sale on the confirmation of a prepackaged liquidating Chapter 11 plan, which was filed with Connecticut Bankruptcy Court on October 1, 1998.  The Connecticut Bankruptcy Court ultimately concluded that the principal purpose of the plan was to avoid taxes and denied confirmation.  See In re Scott Cable Communc'ns, Inc., 227 B.R. 596, 604 (Bankr. D. Conn. 1998) (noting the Debtor's statement that "[t]he principal purpose of the Plan . . . has always been

to structure a sale . . . that is acceptable to [the holders of the Jr. Secured Notes]" and concluding that the timing of the sale was an attempt to avoid tax liability in order to benefit the holders of the Jr. Secured Notes).  As described more fully in In re Scott Cable Commc'ns, Inc., 259 B.R. 536 (D. Conn. 2001), on November 19, 1998, the government brought an adversary action against the Indenture Trustee seeking to recharacterize the Jr. Secured Notes as equity, or in the alternative, equitably subordinate those notes to the tax liability arising out of the sale.

Then, on January 14, 1999, the Connecticut Bankruptcy Court granted the Debtor's motion for approval of the sale of its assets.  After all the debt senior to the Jr. Secured Notes was paid in full, approximately $30,291,296 remained.  The holders of the Jr. Secured Notes asserted a claim for $49,035,294 plus accrued interest.

On June 7, 2001, the Connecticut Bankruptcy Court sua sponte transferred the adversary proceeding, along with any administrative expense applications arising out of that proceeding, to the Delaware Bankruptcy Court but retained the rest of the case.  The Debtor then moved to intervene in the adversary proceeding in Delaware, and the Delaware Bankruptcy Court granted the motion over the government's opposition.  See United States v. State Street Bank and Trust, No. Adv. A-01-

-3-

04605, 2002 WL 417013 (Bankr. D. Del. March 4, 2002).

The government first moved to convert the case from Chapter 11 to Chapter 7 on June 29, 2000 in the Connecticut Bankruptcy Court. The government supplemented or renewed its motion to convert on July 2, 2001 and again on May 31, 2002. In May 2002, the government included an alternative request for appointment of a Chapter 11 trustee. On July 18, 2002, the Connecticut Bankruptcy Court issued an order which denied the motion to convert to Chapter 7 or appoint a trustee and also granted a joint cash collateral application by the Debtor and the Indenture Trustee to authorize the Debtor to use part of the remaining funds to pay its legal fees in the adversary proceeding. See In re Scott Cable Commc'ns, Inc., 287 B.R. 1 (Bankr. D. Conn. 2002). On December 23, 2002, the Connecticut Bankruptcy Court issued an order authorizing payment of interim fees and expenses to the Debtor's counsel for services rendered in the case before the Connecticut Bankruptcy Court.

Separate appeals were taken from the July Order and the December Order, but the appeals have been consolidated. By order of March 14, 2005, the court allowed a combined brief for both appeals. During a conference on October 6, 2006, the court informed counsel that the portion of the July Order that denied the government's motion to convert the case to Chapter 7 or in the alternative appoint a trustee was being affirmed.

## II.   DISCUSSION

### A.   Conversion to Chapter 7 or Appointment of Chapter 11 Trustee

A bankruptcy court's ruling on a motion to convert a case to Chapter 7 is reviewed for abuse of discretion.  See Blaise v. Wolinsky (In re Blaise), 219 B.R. 946, 949-50 (2d Cir. BAP 1998) (pointing to the use of "may" in the statutory text as an indication that the decision to convert a bankruptcy case to Chapter 7 is discretionary).  A court's ruling is an abuse of discretion if it is based "on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).  Thus, the underlying conclusions of law are reviewed de novo and the findings of fact are reviewed for clear error.  See Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 988-89 (2d Cir. 1990).

A bankruptcy court may convert a case under Chapter 11 to Chapter 7 at the request of a party in interest pursuant to 11 U.S.C. § 1112(b).  Section 1112(b) directs the court to consider "the best interests of the creditors and the estate" in evaluating whether to convert a Chapter 11 case to Chapter 7 or to dismiss the case, and includes a non-exclusive set of factors that would provide cause for conversion or dismissal.  Section 1112(b) provides, in pertinent part, that:

Except as provided in subsection (c) of this section, on

-5-

request of a party in interest or the United States trustee
or bankruptcy administrator, and after notice and a
hearing, the court may convert a case under this chapter to
a case under chapter 7 of this title or may dismiss a case
under this chapter, whichever is in the best interest of
creditors and the estate, for cause, including -

    (1) continuing loss to or diminution of the estate and
    absence of a reasonable likelihood of rehabilitation;

    (2) inability to effectuate a plan;

    . . . .

11 U.S.C.A. 1112(b) (West 2002).

A bankruptcy court may appoint a Chapter 11 trustee

pursuant to 11 U.S.C. § 1104:

    (1)  for cause, including fraud, dishonesty, incompetence,
    or gross mismanagement of the affairs of the debtor by
    current management, either before or after the commencement
    of the case . . .

    (2) if such appointment is in the interests of creditors,
    any equity security holders, and other interests of the
    estate . . .

11 U.S.C.A. § 1104 (West 2002).

Where a debtor-in-possession has a conflict of interest or

may have failed to fulfill its fiduciary responsibility to the

estate, conversion of a Chapter 11 case to Chapter 7 may be

appropriate.  See State Street Mortgage Co. v. Palmer (In re

Palmer), 134 B.R. 472, 476 (Bankr. D. Conn. 1991).  However, as

discussed below, conversion is not necessarily appropriate in all

such cases.

The government offered several reasons to convert the case

to Chapter 7 or appoint a Chapter 11 trustee.  First, it argued

-6-

that two of the factors that constitute cause for conversion
under Section 1112(b) are present here: (1) "continuing loss to
or diminution of the estate and an absence of a reasonable
likelihood of rehabilitation," and (2) an "inability to
effectuate a plan."  With respect to the first factor, the
government noted that the Debtor had incurred more than $170,000
in legal fees and expenses and had budgeted for an additional
$800,000, which was largely for the adversary proceeding in
Delaware.  The government contended that the projected legal
expenses were an unwarranted burden on the estate that would not
be incurred by an independent Chapter 7 trustee.  With respect to
the second factor, i.e., the estate's inability to effectuate a
plan, the government emphasized that it is undisputed that there
is no plan to reorganize the Debtor.

Second, the government argued that conversion or appointment
of a trustee was necessary because the Debtor's management
suffers from a conflict of interest that leads it to act contrary
to the best interests of the estate.  The Debtor's management has
a 21.5% stake in the Jr. Secured Notes, which are the only
remaining claim other than claims for taxes.  As a result, the
Debtor's management has a financial incentive to protect the
secured position of the Jr. Secured Notes, and the government
contends that this conflict of interest has distorted a number of
the Debtor's decisions.  The government asserts that the Debtor's

decision to intervene in the adversary proceeding was motivated
by the financial interest of the Debtor's management in the
outcome of that proceeding and that a disinterested trustee would
have concluded that there was no valid reason to support the
Indenture Trustee's efforts to uphold a lien against the estate,
and might have even sought to avoid the lien.

In response, the Debtor and the Indenture Trustee argued
that there is no advantage to the estate from conversion to
Chapter 7 or appointment of a Chapter 11 trustee.  They contended
that a trustee would be eligible to receive a commission of
approximately $1 million dollars from the distribution of monies
from the estate, and that additional expense would be incurred to
pay for any attorneys or other professionals the trustee hired.
The Debtor and the Indenture Trustee observed that this
additional administrative expense would not add value to the
estate because the Debtor is equipped to distribute the proceeds,
and that if the Indenture Trustee prevailed in the Delaware
adversary proceeding, there would be no estate to administer.

The focus of the July Order is the cash collateral
application.  Other than a sentence stating that the motion to
convert is being denied and the motion to appoint a trustee is
being denied, footnote 2 of the July Order is the only reference
to the motion to convert or appoint a trustee:

> The IRS has also filed separate motions to convert this case
> to chapter 7, see 11 U.S.C. § 1112, and for the appointment

of a chapter 11 trustee.  For the same reason, i.e., the
debtor's alleged conflict of interest, it opposes the
debtor's cash collateral application.

(July Order at 2, fn. 2).

The meaning of footnote 2 is unclear.  However, during the
hearing on May 1, 2002, the Connecticut Bankruptcy Court
articulated two factors it viewed as being important reasons for
not converting the case, i.e., the risk of disruption of the
adversary proceeding that was before the Delaware Bankruptcy
Court, and the fact that conversion to Chapter 7 would also
result in burdening the estate with expenses:

> THE COURT: All right.  I think that's fair.  I have
> ruled several times to defer the government's motion to
> dismiss or convert.
> And every time I did it, I did it on the basis that
> Judge Walsh was in the midst of administering the major, if
> not only issue left in this case.
> And that until a decision was made in Delaware on who
> gets what, it seemed to me that it would be premature to
> dismiss the case or convert it to Chapter 7.  If for example
> it were converted to Chapter 7, Judge Walsh might find
> himself in a position where he has to start all over again
> because then there would be somebody else representing.
> I am not even taking up the question of if a Chapter 7
> trustee is appointed, the administrative expense or the
> expense for the trustee, if you figure $42 million in the
> pot, would be somewhere in excess of $1.2 million and that's
> just for his commission.
> MS. NEVINS: Well, that's --
> THE COURT: On top of that there would be attorney's
> fees and professional fees.
> MS. NEVINS: Your Honor, if I may just respectfully
> point out that that figure is the maximum allowed under the
> statute and the Court has discretion to alter that fee
> amount to an appropriate amount.
> THE COURT: Right.
> MS. NEVINS: I also would like to point out that if the
> case were to be converted and a Chapter 7 trustee were to be
> appointed, that would be an individual different from the

current management of the debtor who would then review the
debtor's litigation position --
    THE COURT: No.
    MS. NEVINS: -- in Delaware and may determine to proceed
exactly as the debtor in possession has proceeded.
    THE COURT: It may be that this case will be converted,
this adversary proceeding, or this case will be converted.
I didn't mean adversary proceeding.
    When I said I'm telegraphing, what I meant to say and
what that means is that unless I hear a compelling reason
different from the reasons I've heard every time it's come
up, that it seems to me that I'm going to stay consistent.

(Hr'g. Tr. 78-80, May 1, 2002)

A finding that there is continuing loss to the estate or
that there is no reasonable prospect of rehabilitation does not
necessarily require that the bankruptcy court convert a Chapter
11 case to Chapter 7.  See Loop Corp. v. U.S. Trustee, 379 F.3d
511, 516 (8th Cir. 2004) (the language of § 1112(b) may be
understood "to permit the court to deny both conversion and
dismissal despite a showing for cause.").  Moreover, "courts have
been reluctant to convert a case to Chapter 7 or to appoint a
trustee based solely on the existence of claims against an
insider." Ad Hoc Comm. of Bondholders v. Citicorp Venture
Capital Ltd. (In re Fairwood Corp.), No. 99CIV3177, 2000 WL
264319 at *3 (S.D.N.Y. March 9, 2000).  "The reluctance of the
debtor to pursue claims against its insider, taken alone, does
not justify [a court's] precipitous decision to convert the case
and appoint a trustee." Ribkov Realty Corp. v. Neck Road One
Realty LLC (In re Ribkov Realty Corp.), No. 99CV984, 1999 WL
529557 at *11 (E.D.N.Y. July 21, 1999).  The court in Ribkov

-10-

Realty noted that allowing a third party such as the creditors'
committee to pursue claims in which the debtor had a conflict of
interest "may be less expensive than the appointment of a trustee
and the awarding of his commission, and it is also less
disruptive than conversion of a chapter 11 proceeding to chapter
7." Id. at *11.

    The two factors cited by the Connecticut Bankruptcy Court
track those highlighted by the court in Ribkov Realty, and the
July Order did not create a situation where there was no person
with an incentive and the ability to pursue questions related to
the conflict of interest on the part of the Debtor's management.
While the government emphasized the expense expected to be
incurred by counsel for the Debtor in the adversary proceeding,
it was also the case that significant expense could be expected
to be incurred as a result of a decision to convert the case to
Chapter 7 or appoint a trustee in Chapter 11. Thus, under either
scenario, there was likely to be a continuing loss to or
diminution of the estate. Also, while the Debtor's management
had a financial interest in protecting the secured position of
the Jr. Secured Notes, it was quite apparent that the government
sought conversion or appointment of a trustee in Chapter 11 in
the hope that the Chapter 7 or Chapter 11 trustee would seek to
avoid the lien of the Jr. Secured Notes, which would result in
financial benefit to the government. In addition, to the extent

the government highlighted the conflict of interest as supporting
its contention that management of the Debtor had engaged in
misconduct, it was assuming it would prevail in the adversary
proceeding in the Delaware Bankruptcy Court.

The court concludes that under these circumstances, the
Connecticut Bankruptcy Court did not abuse its discretion in
denying the government's motion to convert the Chapter 11 case to
Chapter 7 or appoint a Chapter 11 trustee.

**B.    <u>Cash Collateral Application</u>**

The government also appeals the portion of the July Order
granting the cash collateral application.  On appeal, a
bankruptcy court's authorization of the debtor's use of cash
collateral is reviewed for abuse of discretion.  <u>See</u> <u>United</u>
<u>States v. National Westminster Bank USA (In re Q-C Circuits</u>
<u>Corp.)</u>, 231 B.R. 506, 511 (E.D.N.Y. 1999).  Findings of fact are
reviewed for clear error and conclusions of law are reviewed de
novo.  <u>See</u> <u>Shugrue v. Air Line Pilots Ass'n, Int'l (In re</u>
<u>Ionosphere Clubs, Inc.)</u>, 922 F.2d 984, 988-89 (2d Cir. 1990);
Fed. R. Bankr. P. 8013.

Many of the arguments advanced by the government in
opposition to the cash collateral application are in substance
the same as those made by the government to the Delaware
Bankruptcy Court in opposition to the Debtor's motion to
intervene in the adversary proceeding.  The Connecticut

-12-

Bankruptcy Court rejected the government's contention that, inter alia, intervention by the Debtor in the adversary proceeding was an "unwarranted and unreasonable economic burden" on the creditors of the estate, noting that the Delaware Bankruptcy Court had "expressly found that [the Debtor's] intervention in the adversary proceeding was warranted." (July Order at 2). The July Order then quotes the opinion of the Delaware Bankruptcy Court:

> The United States argues that Debtor is not entitled to intervene as a "party in interest" because it has no meaningful financial or other interest to protect in the adversary proceeding. I disagree.
>
> *Although the Debtor may not have a significant financial interest in the outcome of the adversary proceeding*, it does have an interest and fiduciary duty, as debtor-in-possession, to ensure that the Estate's assets are distributed in accordance with the proper legal and equitable priorities of the parties in interest. It also has an interest in the adversary proceeding because the outcome of the proceeding has the potential to disrupt Debtor's current capital structure as established by the confirmation order entered in connection with Debtor's prior reorganization case.

(July Order at 2-3) (quoting United States v. State Street Bank (In re Scott Cable Communications, Inc.), No. ADV A-01-04605, 2002 WL 417013 at *3 (Bankr. D. Del., March 4, 2002) (emphasis added). The Connecticut Bankruptcy Court concluded by stating that "[t]he final order of the Delaware Bankruptcy Court is not subject to collateral review." (July Order at 3).

The Connecticut Bankruptcy Court's statement that "the final order of the Delaware Bankruptcy Court is not subject to

collateral review" indicates that the Connecticut Bankruptcy Court understood the question of whether the proposed use of the cash collateral to intervene in the adversary proceeding was justified to have been decided by necessary implication when the Delaware Bankruptcy Court granted the Debtor's motion to intervene.  See also In re Scott Cable Commc'ns, 287 B.R. 1, 2 (Bankr. D. Conn. December 23, 2002) ("On July 18, 2002, the court overruled the IRS' objection, observing that Judge Walsh's March 4, 2002 order, which was not appealed, established the law of this case."); (Hr'g. Tr. at 82, May 1, 2002) ("Let me suggest to you that it may be that the law of the case already is the words used by the chief judge in Delaware when he said this duty includes opposing claims and contentions by certain predators [sic] which seek to undermine the priority position of other secured or unsecured creditors."); (Hr'g. Tr. at 64, May 1, 2002) ("[T]hat is the law of this case.  Judge Walsh, to say yet again, has authorized this.  There is obviously going to be an expense, the question is, how much of an expense.  He wouldn't let them in and not say that they couldn't get paid.").[1]

    There are material differences between the legal standard

_____

    [1]A footnote in the July Order makes it clear that any expenditure would only be approved after a further hearing on the fee application: "The State of Connecticut's suggestion that 'once this court approves a cash collateral order . . . the money will be spent' is rejected for the reason that no fee applications will be approved without notice and opportunity for objection." (July Order at fn. 3).

applicable to a motion to intervene and that applicable to a cash collateral application.  On the motion to intervene, the question before the Delaware Bankruptcy Court was whether the Debtor was entitled to intervene in the adversary proceeding pursuant to Fed. R. Civ. P. 24(a), which provides that anyone may intervene in an action:

> (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).  Relying on the Third Circuit's interpretation of 11 U.S.C. § 1109(b) in Matter of Marin Motor Oil, Inc., 689 F.2d 445 (3d Cir. 1982), the Delaware Bankruptcy Court concluded that § 1109(b) conferred upon the Debtor an unconditional right to intervene pursuant to Rule 24(a)(1). State Street Bank, 2002 WL 417013 at *3.  The Delaware Bankruptcy Court then stated:

> Even if the Debtor did not have the right to intervene under Rule 24(a)(1) as a "party in interest" under § 1109(b), which it does, I find that Debtor also has the right to intervene under Rule 24(a)(2).  As discussed above, the Third Circuit requires proof of four elements for an applicant to establish a right to intervene under Rule 24(a)(2).  First, the applicant must establish that its motion for leave to intervene was timely.  Second, the entity seeking to intervene must show that it has a sufficient interest in the litigation.  Third, the entity must demonstrate that there is a threat that the interest will be impaired or affected by the disposition of the proceeding in which it seeks to intervene.  Finally, the

-15-

prospective intervenor must also show that the existing
parties to the litigation inadequately represent its
interest.  Debtor has satisfied each of these four elements.

There is no dispute that the Debtor's motion to intervene
was timely.  Rather, the parties' dispute focuses on whether
Debtor has a sufficient interest in the adversary proceeding
to warrant intervention. . . .

Id. at *3 (citations omitted).  The Delaware Bankruptcy Court's

conclusion that the Debtor had a sufficient interest in the

litigation to satisfy the requirements under Fed. R. Civ. P.

24(a)(2) was based on its finding that the Debtor had an interest

in protecting its capital structure and a fiduciary duty to

protect the estate for the benefit of its creditors.  See id.

    In contrast, a cash collateral application is reviewed under

either 11 U.S.C. § 363(c)(2) or § 363(b)(1), depending on whether

the proposed use of the collateral is in the ordinary course of

business.  Pursuant to § 363(c)(2):

The trustee may not use, sell, or lease cash collateral
under paragraph (1) of this subsection unless –

    (A) each entity that has an interest in such cash
    collateral consents; or

    (B) the court, after notice and a hearing, authorizes
    such use, sale, or lease in accordance with the
    provisions of this section.

11 U.S.C. § 363(c)(2) (West 2002) (governing proposals to use

property in the ordinary course of business).  Similarly,

§ 363(b)(1) provides that "[t]he trustee, after notice and a

hearing, may use, sell, or lease, other than in the ordinary

course of business, property of the estate."  11 U.S.C. §

-16-

363(b)(1) (West 2002).

The question of whether a cash collateral application is a request to use property in the ordinary course of business is evaluated under a two part test:

> Two tests have emerged to determine whether a transaction is ordinary. These tests are (1) the creditor's expectation test, also known as the vertical test, and (2) the industry-wide test also called the horizontal test.  Under this two-part analysis, the touchstone of ordinariness is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business.

Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379, 384-85 (2d Cir. 1997) (citations and internal quotation marks omitted).

"Under the vertical test, the court 'views the disputed transaction from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to enter into a contract with the debtor." Id. at 385 (quoting Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.), 853 F.2d 700, 705 (9th Cir. 1988)).  "The horizontal test . . . is whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business." Id.  Furthermore, "some transactions either by their size, nature or both are not within the day-to-day operations of a business and are therefore extraordinary." Id.

Payment to counsel of legal fees that are "not necessary or

incidental to the business" of a debtor is generally held to be
out of the ordinary course of business.  See In re Garden Manor
Associates, 70 B.R. 477, 484-485 (Bankr. N.D. Cal. 1987); In re
McDonald Bros. Constr., Inc., 114 B.R. 989, 994 (Bankr. N.D. Ill.
1990) ("[T]he employment of bankruptcy professionals would
presumably not be in the ordinary course of business.").
Moreover, Section 363(b)(1) has been used to authorize the
retention of counsel for a debtor's employees, see Official Comm.
of Unsecured Creditors v. Enron Corp. (In re Enron Corp.), 335
B.R. 22 (S.D.N.Y. 2005), and for the debtor itself, see United
States Trustee v. Bethlehem Steel Corp. et al. (In re Bethlehem
Steel Corp.), No. 02CIV2854, 2003 WL 21738964 (S.D.N.Y. July 28,
2003).  But see Pereira v. Cogan, No. 00CIV619, 2001 WL 243537
(S.D.N.Y. March 8, 2001) (holding that a debtor's pursuit of
litigation against former insiders of the debtor company was in
the ordinary course of business and noting that no fees would be
paid by the estate until after notice and a hearing on the fee
application).

        Here, it is undisputed that the Debtor has not been engaged,
at any relevant time, in any ongoing business activity.  The
estate has been reduced to a bank account and has no plan of
reorganization.  Disbursement of the remaining property of the
estate, i.e., the cash in the bank account, awaits only a
determination in the adversary proceeding of whether the holders

of the Jr. Secured Notes are entitled to the remaining funds.
Under these circumstances, use of property of the estate to pay
the fees and expenses of the Debtor's attorneys does not satisfy
either the vertical or the horizontal test for ordinary course of
business.

When the proposed use of cash collateral is out of the
ordinary course of business, the court reviewing the cash
collateral application must, prior to granting the application,
expressly find that there is a good business reason to grant it:

> [T]here must be some articulated business justification,
> other than appeasement of major creditors, for using,
> selling or leasing property out of the ordinary course of
> business. . . . The rule we adopt requires that a judge
> determining a § 363(b) application expressly find from the
> evidence presented before him at the hearing a good business
> reason to grant such an application.

The Comm. of Equity Sec. Holders v. The Lionel Corp. (In re The
Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983). See also The
Institutional Creditors of Continental Airlines, Inc. v.
Continental Airlines Inc. (In re Continental Airlines), 780 F.2d
1223, 1226 (5th Cir. 1986) ("We also agree with the Second
Circuit that implicit in § 363(b) is the further requirement of
justifying the proposed transaction.") (citations omitted); The
Traveler's Ins. Co. v. Plaza Family P'ship (In the Matter of
Plaza Family P'ship), 95 B.R. 166, 173 (E.D. Cal. 1989)
("However, it is evident that cash collateral can be used by the
debtor under Section 363 only for a business purpose.")

-19-

The requirement of an express finding by the Connecticut Bankruptcy Court from the evidence presented before it that there was a good business purpose to grant the cash collateral application is not satisfied by the Delaware Bankruptcy Court's conclusion that § 1109(b) conferred upon the Debtor an unconditional right to intervene in the adversary proceeding pursuant to Rule 24(a)(1).  Nor is it satisfied by the Delaware Bankruptcy Court's finding that the Debtor has a sufficient interest in the adversary proceeding because it has an interest in protecting its capital structure and a fiduciary duty to preserve the estate for the benefit of its creditors.  Therefore, the court concludes that granting the cash collateral application based on application of the doctrine of law of the case was based on an erroneous view of the law.

Accordingly, the portion of the July Order that grants the cash collateral application should be vacated and remanded.

### C.    **The December Order; The Interim Fee Award**

The December Order awarded interim fees and expenses to the law firm of Akin Gump Strauss Hauer & Feld LLP for services rendered to the Debtor in connection with proceedings in the Connecticut Bankruptcy Court.  See In re Scott Cable Commc'ns, Inc., 287 B.R. 1 (Bankr. D. Conn. 2002).  The December Order noted that the July Order had "authorized an $829,400 carve out from the escrow fund to pay administrative expenses, subject to

-20-

any further orders from this or the Delaware court." Because the court is vacating the portion of the July Order granting the cash collateral application and the July Order authorized payment of interim fees and expenses to Akin Gump out of the $829,400 carve out for administrative expenses, the December Order must also be vacated.

## III. <u>CONCLUSION</u>

For the reasons set forth above, that portion of the July Order denying the motion to convert the case to Chapter 7 or in the alternative appoint a Chapter 11 trustee has been AFFIRMED, and that portion of the July Order granting the cash collateral application is hereby VACATED and REMANDED for further proceedings in accordance with this opinion. In addition, the December Order is hereby VACATED and REMANDED for further proceedings after an express finding has been made as to whether there is a good business reason to grant the cash collateral application.

It is so ordered.

Dated this 6th day of September 2007 at Hartford, Connecticut.

/s/AWT
_____
Alvin W. Thompson
United States District Judge
