UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | **No. 3:02-CV-1725 (AWT)** |
| SCOTT CABLE COMMUNICATIONS, INC., | ) | (Consolidated Bankruptcy Appeals) |
| | ) | |
| Debtor. | ) | |
| | ) | (Bankr. Ct. Case No. 98-51923) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | |
| | ) | |
| SCOTT CABLE COMMUNICATIONS, INC. and | ) | |
| STATE STREET BANK AND TRUST CO. as | ) | |
| Indenture Trustee for certain note holders | ) | |
| | ) | |
| Appellees | ) | |

**Motion of United States, Pursuant to Rule 8015,
(1) for Partial Rehearing on Cash Collateral and Fees (to Consider If
a Remand May Be Futile and, If Not, to Clarify or Expand its Scope), and
(2) for Rehearing on Conversion (to Consider Requiring the Bankruptcy
Court to Re-Exercise Its Discretion, Freed From Its Incorrect
Belief That It Was Precluded from Weighing an Important Factor)**

The United States of America, by its undersigned counsel, moves this Court, pursuant to

Bankruptcy Rule 8015, for partial rehearing with respect to the cash collateral and fee application

issues, and rehearing regarding the conversion issues, as disposed of in this Court's *Opinion and

Order* dated September 6 and filed September 7, 2007 (2007 WL 2669108), and also notes a

concern regarding the finality of the denial of conversion, as follows.

**Preface, Summary, and Explanation of Why this Motion is Needed**

In No. 3:02-cv-1725, the United States appealed a 7/18/02 order of the Bankruptcy Court

["July Order"] that contained tandem rulings in two unconsolidated proceedings – (1) overruling

the government's objections to a stipulation to use estate funds, claimed as "cash collateral" by the

Indenture Trustee, in order to pay litigation expenses; and (2) denying the government's motion to

convert to Chapter 7 or appoint a Chapter 11 trustee. (For efficiency, "conversion" hereinafter

refers to the motion to convert or alternatively to appoint a Chapter 11 trustee.)  In No.

3:03-cv-357, the United States appealed a 12/23/02 order of the Bankruptcy Court ["December

Order"] granting an in interim fees application of debtor's counsel.  On March 14, 2005, this Court

consolidated the appeals, making No. 3:02-cv-1725 the lead case for filing purposes.

On September 7, 2007, this Court entered its *Opinion and Order* ["Opinion"] affirming the

denial of conversion, while vacating the portion of the July Order addressing the cash collateral, as

well as the December Order regarding fees, and remanding.  The Court held that denying

conversion was not an abuse of discretion.  In the cash collateral matter, the Court ruled that the

proposed use of the estate funds was plainly not in the ordinary course of business, and that the

Bankruptcy Court erred because it did not make any finding of a "good business reason" for

granting use of cash collateral out of the ordinary course of business, pursuant to § 363.  (All

§ references are to the Bankruptcy Code unless otherwise indicated.)  Specifically, this Court ruled

that the requisite finding is not satisfied by pointing to the Delaware Bankruptcy Court's

conclusion that § 1109(b) conferred upon the Debtor an unconditional right to intervene in the

adversary proceeding there, or by its alternative ruling that the debtor had a sufficient interest in

"protecting its capital structure and a fiduciary duty to preserve the estate for the benefit of its

creditors."  (Opn. at 16.)  Accordingly, this Court concluded that it was error to grant the cash

collateral application merely on the bases of the "law of the case" emanating from that grant of

intervention by the Delaware Bankruptcy Court.  This Court remanded to reconsider the "good

business reason" issue, and vacated the December Order because it depended on the § 363 ruling.

The United States first seeks partial rehearing of the remand portion of the Opinion either

(1) to eliminate the remand, based on the legal impossibility of satisfying the required finding of a

proper use of estate funds where the purpose is to pay counsel for a debtor in possession to litigate

*against* the objective pecuniary interests of the bankruptcy estate and *in favor* of upholding a lien

that would completely exhaust the estate, or (2) at the very least to clarify (or expand) the scope of

the remand by instructing the Bankruptcy Court not to treat as precluded by collateral estoppel or law of the case any of the government's arguments, including the contention that it is improper to authorize the use of estate funds under § 363 to pay, or grant compensation under § 330 for, attorneys to litigate in favor of a disputed security interest against all of the debtor's assets, and thus against the objective pecuniary interests of the estate.

This Court's decision is ambiguous as to whether it too may believe that issue preclusion could, at least in some respects, flow from the Delaware intervention order' alternative reasoning that the debtor had an interest in defending its capital structure, etc. Without clarification, Judge Shiff, when considering on remand whether there was a "good business reason" to authorize use of estate funds under § 363, or when reconsidering the fees application under § 330, may hew to his holding that the government's arguments about it being inappropriate to permit the estate's funds to be used to finance litigation in favor of a lien *against* the estate are barred by collateral estoppel or law of the case. That may then result in another appeal in which the same issue is presented to this Court. And, should this matter ever reach the Second Circuit, it will want this Court's view on whether the intervention order in Delaware could constitute any sort of bar, given the repeated arguments of the appellees that it does.

In part I-A of the argument below, we first thoroughly demonstrate that, under the case law governing collateral estoppel and law of the case,[1] it is patently wrong to apply issue preclusion to the merits of any of the issues in these appeals (or in any remand proceedings), based on the Delaware Bankruptcy Court's procedural order granting the debtor's motion to intervene. We present this argument first because it bears on all that follow it, including rehearing on conversion.

In short, Judge Shiff's collateral estoppel ruling was unprecedented, and this Court should

---

[1] The July Order referred to the unavailability of "collateral review," and the December Order referred to "law of the case." As shown below, the applicable (or more accurately inapplicable) doctrine relied on by the Connecticut Bankruptcy Court was collateral estoppel.

not hesitate to remove it from re-influencing his decision(s) on remand.  There appears to be no reported decision anywhere to support the application, in a proceeding on the merits of one cause of action, of issue preclusion stemming from a preliminary procedural ruling of a trial judge in another proceeding involving another cause of action.  And even if the procedural (intervention) order in the Delaware adversary proceeding could possibly justify issue preclusion before Judge Shiff, the case law makes clear that such a trial-level procedural ruling cannot possibly bind this appellate court in a proceeding on appeal from a final appealable order (whether the Delaware proceeding is considered a separate case or part of the same case).

There is a second and separate preclusion issue, which this Court's Opinion completely overlooked, and which, if not corrected, will also send the remand off course.  Judge Shiff's 12/3/02 bench ruling leading to the December Order explicitly held that the government was precluded by the *confirmation order* in the 1996 bankruptcy case from arguing that the escrowed proceeds of the sale of the debtor's assets are not "collateral" subject to the security interest for the junior PIK notes.  We believe that the reversal of at least that aspect of the December Order is *implicit* in this Court's approach to the § 363 issue, or else the government would lack standing to appeal the cash collateral or fees orders, but we submit that the Court should make explicit its rejection of the notion that the United States is bound by the 1996 confirmation order for any purpose in the 1998 case.  (This Court already held in a prior appeal that the United States was not bound for purposes of the merits of the adversary complaint.)

In part I-B of the argument below, we urge that no remand is necessary on the cash collateral issue because, if the issue preclusion error is eliminated, any analysis of whether there is a valid business reason for using the estate funds under § 363 must take cognizance of limitations imposed by other Code provisions.  Under § 330, it is simply never appropriate to use estate money to finance litigation *against* the pecuniary interests of the estate.  Debtors in possession have a fiduciary duty to defend the estate, including by prosecuting non-frivolous objections to

claims under § 502 (unless it would be uneconomical to do so) and actions to avoid liens that are arguably avoidable under § 544. These duties are a lens through which any business purpose contentions by the debtor on remand must be viewed.

The United States notes that, if there is no point to a remand on the § 363 issue, then by disposing of the appeal from the July Order it its entirety and with finality, the Court will avoid posing for the parties a difficult question, as to whether the conversion ruling is final for purposes of any possible further appeal, or instead must await the conclusion of the remand on the cash collateral order.[2] This would not necessarily preclude a remand on the fees issue – we believe that a remand on the December Order is independently appropriate and will have no effect on the finality of the July Order if there is no remand in the appeal from that one.[3]

In part I-C of the argument below, the government maintains that, even if this Court declines to determine at this time whether the government is correct in arguing that estate funds can never, as a matter of law, properly be authorized to be used to finance litigation against the estate's pecuniary interests, it should at least assure that the Bankruptcy Court on remand is not hamstrung but its erroneous application of issue preclusion. Unless this Court unambiguously

---

[2] Normally, district court judgments remanding matters to a bankruptcy court for substantial further proceedings (*i.e.*, other than ministerial implementation of an appellate mandate) are considered interlocutory. But normally there is one trial-level proceeding involved in the appeal. In this case, the conversion motion under § 1112 and the cash collateral application under § 363 were entirely separate "contested matters" under Bankruptcy Rule 9013 and 9014. They were never consolidated in the bankruptcy court. Rather, the bankruptcy judge simply determined to dispose of both matters in a unitary order. As this Court may recall, there was a battle at the outset of the first appeal – from the July Order – as to whether the cash collateral and/or conversion denial rulings were final. This Court separately analyzed each ruling and determined, in 2005, that each was final and appealable and reset a merits briefing schedule. The United States questions whether the bankruptcy court's tandem determination of the two separate matters in a single (July) order can have the effect of negating the separateness of the conversion proceeding in the Bankruptcy Court. Accordingly, a question arises as to whether, if this rehearing motion is denied, the United States, assuming it determines it wishes to appeal the affirmance of the conversion denial, must do so now, or risk being unable to appeal it after the conclusion of the remand proceedings in respect to the cash collateral and fees orders.

[3] We do not think consolidating *appeals* can alter the rules of finality as to each separate matter if a final disposition in one of the appeals is then appealed to the Second Circuit, even if the other is remanded.

instructs the Bankruptcy Court on remand to determine the issues without treating any arguments as barred, there is great risk that the parties will be duplicating much of the instant appeal in an appeal from a ruling on remand.

The United States separately seeks rehearing with respect to the denial of conversion (part II below), and submits that at least a remand for re-exercise of discretion is appropriate, based on several points of law the United States believes that the Court has overlooked or misapprehended (the traditional bases for rehearing motions). First, the United States believes that this Court has not sufficiently accounted for the extent to which the misapplication of the doctrine of collateral estoppel or "law of the case" (discussed fully in part I-A of the argument) may have tainted Judge Shiff's exercise of discretion in determining the government's motion to convert. It is inappropriate to affirm a judgment on the premise that it was not an abuse of discretion if the trial judge himself may have believed, incorrectly, that his discretion was constrained by another court's ruling when it was not. Indeed, the refusal, based on a legal error, to consider an appropriate factor in weighing all factors is a quintessential abuse of discretion.[4]

This Court's Opinion acknowledges that the bankruptcy court's reasons for denying conversion are "unclear," including the meaning of footnote 2 of the July Order. But the footnote explicitly describes the government's motion to convert as resting on "the same reasons, *i.e.*, the debtor's alleged conflict of interest," as the government's objection to the cash collateral stipulation. Immediately following the footnote, the July Order launches into its fundamental ruling that the 3/4/02 order of the Delaware Bankruptcy Court granting the debtor's motion to intervene precludes the government's conflict of interest contentions because that court held that

---

[4] "To the extent that abuse of discretion conjures up images of opprobrious conduct, it is a misnomer." Peerless Ins. Co. v. Rivera, 208 B.R. 313, 314 (D.R.I. 1997). Among other ways, "[g]enerally speaking, abuse of discretion occurs when a court ignores important and relevant factors in making its decision, considers improper factors, or errs in balancing factors that were properly considered." Id. (citing Ross-Simons of Warwick, Inc. v. Baccarat Inc., 102 F.3d 12, 16 (1st Cir.1996)).

the debtor had a duty to assure a distribution of the debtor's assets in accordance with proper legal and equitable priorities and had an interest in defending the "capital structure" established by the confirmation order in the 1996 case. The July Order then added that "[t]he final order of the Delaware Bankruptcy Court is not subject to collateral review." And, during the hearings leading up to the July Order, Judge Shiff repeatedly (multiple times) told counsel for the government that it was attempting an "end-run" around the intervention ruling. If it were indeed true that collateral estoppel or law of the case precluded reliance on a conflict of interest argument to object to use of estate funds to support litigation against the estate, then the same issue preclusion would logically and similarly apply to one of the government's main arguments for conversion (the argument that the debtor was litigating against the debtor's own estate due to a conflict of interest of its management). So it is clear that the collateral estoppel or law-of-the-case assumption at least influenced Judge Shiff's determination of the conversion motion as well. And, if that assumption was wrong, then the government is entitled to a "do over" without the impact of the incorrect legal assumption.

This Court's Opinion observes that conflicts of interest do not invariably mandate conversion, as there may be other ways to address that problem, but that does not necessarily mean that the trial judge exercised *his* discretion or even considered those potential alternatives. Judge Shiff never remotely suggested that he believed the conflict could be ameliorated in some other way and, as explained in the argument below, there are reasons why the other remedies for a conflict would not have worked in this case.

This Court's Opinion goes on to observe that, during the May 1, 2002 hearing, the bankruptcy judge mentioned two factors weighing against conversion – the risk of disruption to the Delaware adversary proceeding and that conversion 7 would result in burdening the estate with Chapter 7 expenses. As demonstrated below, however, the expense concern is imaginary since no expense of a Chapter 7 trustee can come out of the funds subject to the asserted security interest for the junior PIK notes if the security interest is upheld. And if the government prevails in the Dela-

ware proceeding, then the only parties that can possibly be harmed by the expenses of a Chapter 7

trustee are the taxing authorities that jointly *sought* conversion in the Connecticut Bankruptcy

Court, since no funds will reach the junior note claim regardless of any Chapter 7 expenses.

The other concern – possible disruption of an adversary proceeding – is, we submit, not an

appropriate factor weighing against conversion where a conflict of interest is clearly tainting the

debtor's conduct *in that very adversary proceeding*.  Where a debtor's role in an adversary

proceeding is heavily tainted by a conflict of interest, there can be no possible remedy without

disruption – *i.e.*, no matter who (a trustee or a creditors committee or a creditor) is appointed to

represent the interests of the bankruptcy estate.  In other words, the less intrusive remedies this

Court hypothesized would have been equally disruptive in the Delaware adversary proceeding.

Moreover, Judge Shiff's suggestions at the 5/1/02 hearing were not part of a bench decision

or included in his written order on appeal, and are not sufficiently detailed to permit meaningful

appellate review when the only issue mentioned in the written order was that "collateral review" of

the Delaware intervention ruling was unavailable.  Cf. O'Hara v. Memorial Sloan-Kettering Cancer

Center, 79 Fed.Appx. 471, 475 (2d Cir. 2003) (where trial court was determined to have erred in

ruling on collateral estoppel grounds, Second Circuit refused to entertain trial judge's alternative

holding because it "was not sufficiently detailed to allowing meaningful appellate review," and

instead remanded for reconsideration).

The bottom line remains that, even if expense and/or disruption were appropriate concerns,

it is not possible to ascertain whether the *bankruptcy judge* would have come out the same way if

he was freed of the mistaken view that the Delaware intervention order precluded the government

from relying in any way on the conflict of interest of the debtor's management as a basis to seek

conversion or the appointment of a Chapter 11 Trustee.  Accordingly, assuming it was within the

bankruptcy court's discretion to deny conversion on the facts of this case (which we do not

concede), there should at the very least be a remand to direct the Bankruptcy Court to exercise that

discretion in the first instance, uninfluenced in the exercise of that discretion by any notion that the Delaware intervention order precludes the government from raising the conflict of interest as weighing in support of conversion.

We are constrained to note that this Court may be aware that the trial phase of the Delaware adversary proceeding has concluded (post-trial briefing will conclude November 30, 2007). Conceivably, this Court may wonder whether the conversion issue is moot. It is not. The conclusion of the trial phase at most might, assuming this Court were to grant this motion and remand on the conversion matter, be a reason for the Bankruptcy Court to defer ruling on the conversion issue on remand until there is a decision in Delaware at the trial level, to see which side has thus far prevailed, and to consider the bearing of any judicial reasoning that may shed light on issues likely to dominate any appeals. But the conversion issue, even then, is unlikely to become moot. It is almost certain, given the sum at stake and the novelty of some of the issues in the Delaware adversary proceeding, that the trial court decision will be appealed by one side or the other (as the Delaware bankruptcy judge has repeatedly acknowledged). Regardless of which side wins, if an appeal by the other results in reopening the trial record, the government's interest in having a trustee determine whether to waive the debtor's attorney-client privilege will be as strong as it ever was. The government has also preserved, in the Delaware proceeding, its right to appeal the denial of its motion to retransfer venue back to Connecticut, where several important witnesses who could not be subpoenaed in Delaware would then come within trial subpoena range of the Connecticut Bankruptcy Court. If the adversary proceeding is retransferred as a result of any appeal, it would be particularly appropriate for the Connecticut Bankruptcy Court to reconsider whether it would be useful to have a trustee participate, without regard to the fall-back premise for the 3/4/02 order granting the debtor's motion to intervene.

For this reason as well, it would be more appropriate to remand the conversion issue to the bankruptcy court to re-exercise discretion without the influence of its mistaken collateral estoppel

conclusion, rather than to speculate, as this Court's Opinion effectively does, that two factors identified by the bankruptcy judge in a hearing, and which were not mentioned in its written order (expense and potential to disrupt the Delaware adversary proceeding) outweigh all the other factors favoring conversion, when the conflict of interest of debtors' management is properly added to the mix of factors to weigh. That mix also includes the undisputed inability to ever confirm a Chapter 11 plan. On the other side, potential disruption is no longer a factor, since the trial has been concluded and, while it conceivably could become a factor anew, that is unlikely.[5/] And the mix of factors to weigh still may include the diminution of the estate if, on remand, debtor's litigation expenses are allowed against the estate's only remaining asset – a bank account.

In that last regard, there is an interrelationship between the motion to convert and the fees issues, that also impacts the finality concerns noted above. That is, if the government were to prevail ultimately on the conversion issue, that ruling would almost certainly militate further in favor of denying the use of estate funds to pay the debtor's litigation expenses. Such a ruling may indicate that the government was correct all along in arguing that it was improper for the debtor in possession – as fiduciary for the estate – to side with upholding a security interest *against* the estate. For that reason alone, the conversion issue will not likely be mooted, even if the government first were to prevail with finality in the Delaware adversary proceeding. The Akin Gump firm that is the appellee in the appeal from the December Order is seeking to be paid from the estate even if it is otherwise distributable wholly to the taxing authorities. If the conversion

---

[5/] The reason it is unlikely is that, with a trial that involved 33 days of live testimony, the government will probably be disinclined to request a complete "do over" even if there is an appellate reversal of an initial adverse merits decision, and we suspect defendants will feel the same if they lose and secure reversal and remand. Rather, in the event any appellate decision in Delaware results in a retrial or even a transfer of venue back to Connecticut, we would be more likely to ask that the existing trial record be used and that it merely be supplemented as warranted by the appellate rulings and any changed circumstances. For example, it might be supplemented by any additional evidence coming to light as a result of a trustee's determination to waive the debtor's attorney-client privilege, and/or by testimony from witnesses that become available in Connecticut who were not available in Delaware (and there could be a need to call back one or two witnesses who testified at the trial for related but limited purposes).

issue is remanded along with a remand for the cash collateral and/or fees issues at this time, with an instruction that the Bankruptcy Court not treat the government as collaterally estopped from making arguments that depend upon the conflict of interest of debtor's management, then the government can avoid a situation where it must appeal now from the affirmance of the denial of conversion if it wishes to preserve that issue for, *inter alia*, its potential impact on the ultimate determination of the government's objection to the payment of the debtor's litigation expenses.  If, after such a remand on all issues, the government then prevails in the Delaware adversary proceeding, and if the Connecticut Bankruptcy Court then rules on remand that estate funds may not be used to pay fees for litigation *against* the pecuniary interests of the estate *regardless* of conversion, then the conversion issue may be mooted.  That is yet another reason for this Court to remand for the bankruptcy judge to re-exercise discretion on the conversion issue without assuming the conflict of interest is barred from consideration, rather than jumping the gun by speculating on how the bankruptcy judge conceivably might have exercised discretion in favor of denying conversion even if it had not improperly refused to weigh the conflict of interest, and thereby forcing the government to appeal now or risk never being able to appeal.

**Argument**

The United States does not include a fact statement because this Court has just issued its decision, which contains a synopsis of facts and procedural history that suffice for this motion.

**I.    PARTIAL REHEARING ON CASH COLLATERAL AND FEES ISSUES**

        **A.    The Conclusion in the 3/4/02 Delaware Order that Debtor Could Defend its Capital Structure Has No Preclusive Effect Because It Was Merely a Preliminary Procedural Ruling (on a Motion to Intervene), Could Not Be Appealed Directly, and Was Secondary to a Primary Holding That the Government Concedes Was Correct**

This Court's Opinion on the one hand correctly observes that the Bankruptcy Court erred in its application of collateral estoppel or law of the case doctrine because the ruling of the Delaware Bankruptcy Court (Walsh, J.) in its 3/4/02 order granting the debtor's motion to

- 11 -

intervene did not necessarily lead to a conclusion in respect to the cash collateral or fees issues.  At the same time, however, this Court's decision is ambiguous on whether it is appropriate to apply collateral estoppel or law of the case principles at all, and thus left it unclear whether, on remand, any of the government's points should still be ignored, based on issue preclusion.  In that regard, the government's primary argument for rejecting the cash collateral stipulation and the later interim fees application was that it simply cannot be a "reasonable and necessary expense" of administration of a bankruptcy estate, under § 330 and § 503, for the attorney representing the estate under § 327 to support litigation that would strip the estate of all its assets and turn them over to a secured creditor whose security interest is the subject of a pending non-frivolous challenge.  It was this very argument that the Bankruptcy Court ruled was precluded by the order granting the debtor's motion to intervene in the Delaware adversary proceeding.  This Court's Opinion does not discuss that argument.  Instead, this Court remanded for the Bankruptcy Court to consider whether there was a "good business purpose" to authorize use of the estate funds, under § 363, to finance the debtor's litigation choices – an argument that the government's briefs had only briefly made.

But the government's main argument informs the issue for remand, because the determination of whether there is a "good business purpose" must take account of the special responsibilities superimposed on a "debtor in possession," which § 1107 vests with the powers and duties of a bankruptcy trustee.   So whether any of the government's arguments are or are not precluded on remand needs to be clarified.

Moreover, in discussing the Bankruptcy Court's reliance on issue preclusion, this Court never squarely addressed whether there could be *any* law of the case or collateral estoppel based on the Delaware Bankruptcy Court's 3/4/02 order granting the debtor's motion to intervene.  This Court apparently felt that, even assuming the "back-up" ruling in the 3/4/02 order (that the debtor had a legitimate interest in defending its capital structure) had preclusive force, the issue before

- 12 -

Judge Shiff under § 363 – whether there is a "good business reason" for financing the litigation – was a different issue.  But if we are correct that the 3/4/02 order on intervention could not possibly have any preclusive force, then the government should at least be entitled to have the bankruptcy court weigh, as part of its remand determination, the conflict of interest of the debtors' management, when the court determines whether to accept any "good business reason" proffered by the debtor in support of authorizing the use of *estate* funds to finance litigation.  The court should be free to question whether the debtor's business judgment is being improperly influenced in determining whether to follow the debtor's recommendation.

Additionally, it is the government's position, also not addressed in this Court's Opinion, that even if there could otherwise be some business justification for using a company's funds to finance litigation against that company's objective pecuniary interests, the stated purpose here was to provide a pool from which to grant § 330 compensation, and § 330 itself simply does not allow any compensation for services in aid of stripping a bankruptcy estate of all its value by seeking to defend a debatable lien on all of the debtor's assets.  Judge Shiff refused to entertain this argument at all, once again because of his view that his hands were tied by collateral estoppel from the Delaware intervention order.  That was error and it should be reversed.

Preliminarily, "collateral estoppel" rather than "law of the case" is the correct label for the theory of the Bankruptcy Court's issue preclusion rulings.  (The July Order referred to "collateral review" and the December Order to "law of the case.")  Law of the case refers to prior rulings in the same civil proceeding.  The Delaware "adversary proceeding" (Bankruptcy Rule 7001) involves the validity or subordination of an asserted secured claim by the junior note holders under §§ 502 and § 510(c), and is a discrete "civil proceeding" "arising under title 11" within the meaning of the jurisdictional statute, 28 U.S.C. § 1334(b).  The "contested matters" (Bankruptcy Rule 9014) on appeal here are the government's motion to convert under § 1112, the debtor and Indenture Trustee's joint application to use estate funds under § 363, and the application of the

Akin Gump law firm for compensation under § 330.  Either way, the Delaware adversary

proceeding in which the intervention order was issued is not the same "judicial unit" as the ones on

appeal here.  See Bowers v. Connecticut Nat. Bank, 847 F.2d 1019, 1022 (2d Cir. 1988) ("each

contested matter 'should be considered a separate judicial unit for purposes of determining

finality'").  Were that not so, the adversary proceeding could not have been transferred to another

venue.  See 28 U.S.C. § 1412.  There is no "law of the case" from one cause of action to another in

a different court (or even in the same court), although there may be collateral estoppel.

There are several reasons why collateral estoppel (or law of the case or any other basis for

issue preclusion) does not apply here.  First, the Delaware Bankruptcy Court's grant of

intervention was an interlocutory procedural ruling that could not be appealed (even, as a

pragmatic matter, by leave of court).[6]  In this connection, law of the case, collateral estoppel, and

preclusion of relitigation of issues generally reflects the policy that "litigants should not ordinarily

be allowed to take serial bites at the appellate apple."  United States v. Connell, 6 F.3d 27, 20 (1st

Cir. 1993).  But this appeal is the government's first bite an any "appellate apple" on the issue of

whether it is appropriate for a debtor in possession, in its capacity as the trustee for the estate under

§ 1107, to litigate *against* the pecuniary interests of the bankruptcy estate it has a duty to protect

and preserve (regardless of whether the debtor has an unconditional statutory right to intervene in

any particular proceeding as it chooses).

As the Second Circuit stated in Gelb v. Royal Globe Ins. co., 798 F.2d 38, 44 (2d Cir.

1986), "[a]ppellate review plays a central role in assuring the accuracy of decisions" and,

---

[6] The government could not have met the test for making a good faith motion for leave to appeal the interlocutory order under Bankruptcy Rule 8003.  The order merely allowed the debtor to intervene.  To support interlocutory appeal, the government would have had to argue that immediate appeal would materially advance the litigation, and to point to a serious issue of law on which reasonable minds could disagree, or give some other cogent reason for a district court to permit an immediate appeal.  Regardless of the merits of the back-up ruling that the debtor had a right to defend its capital structure, the primary ruling – that under binding Third Circuit precedent a debtor has an unconditional statutory right to intervene in *any* adversary proceeding – would have made a motion for leave to appeal untenable and possibly sanctionable.  Leave to pursue a futile appeal would never be granted and it need not be sought.

"although failure to appeal does not prevent preclusion [citations omitted], inability to obtain appellate review, or the lack of such review once an appeal is taken, does prevent preclusion."  It should follow that the disposition of preliminary procedural disputes in a case that has not yet reached trial or summary judgment motions should not become the stuff of collateral estoppel on the *merits* of a claim in another court on another cause of action, particularly a higher-level court. As the First Circuit stated in United States v. Bell, 988 F.2d 247, 250 (1st Cir.1993), "a legal decision . . . unchallenged in a subsequent appeal despite the existence of ample opportunity to do so, becomes the law of the case."  In the instant situation, not only has the government never had an "ample opportunity" to challenge in any appeal the Delaware intervention order's conclusion that the debtor could appropriately defend its capital structure; it also probably never will be able to appeal that suggestion directly (in Delaware).[7]

In Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387, 395 (5th Cir. 1998), the Fifth Circuit repeated its earlier observation in Avondale Shipyards, Inc. v. Insured Lloyd's, 786 F.2d 1265, 1271 n.8 (5th Cir.1986), that it was "unaware of 'any federal appellate decision which has applied preclusion to a prior nonfinal ruling as to which appellate review was unavailable,'" citing *Restatement (2d) of Judgments,* § 28, comment a.  (Both Fifth Circuit decisions involved prior grants of partial summary judgment, and both rejected that such interlocutory decisions could support issue preclusion in another case between the same parties.)   We would add that, insofar as we have been able to ascertain from our own research, the July and December Orders may be the first two by any federal judge ever to hold that a party that has lost a mere preliminary procedural

---

[7] Assuming the government loses the Delaware adversary proceeding, the secondary reasoning in the 3/4/02 order granting the debtor's motion to intervene will be academic because of the unassailability of the primary holding – that Third Circuit precedent mandated granting the motion.  The entire intervention order, moreover, would be collateral to the main issues and thereby insulated from appeal as a pragmatic matter.  See Halpern v. Schwartz, 426 F.2d 102, 105 (2d Cir. 1970) (losing party, pragmatically, cannot appeal based on an error incidental or collateral to the merits).  And, if the government wins the Delaware adversary proceeding, it cannot appeal at all.

skirmish, collateral to the merits of a lawsuit, is collaterally estopped or otherwise precluded from challenging the fact findings or legal premises underlying that procedural ruling when attempting to litigate the *merits* of a different dispute in another court.

Any appeal from the Delaware intervention order would have been controlled by Third Circuit precedent, and that court of appeals has squarely held that "[i]nterlocutory orders on matters that are simply collateral or incidental to the main suit do not operate as res judicata or collateral estoppel." In re Diet Drugs, 282 F.3d 220, 240 (3d Cir. 2002). See id. ("[a]n order or judgment that is merely a ruling on a technical or procedural aspect of a case is not res judicata"). See also Schaffran v. Mt. Vernon-Woodberry Mills, 70 F.2d 963 (3d Cir. 1934) (determinations in order denying motion to strike complaint have no preclusive force). In determining collateral estoppel, courts generally apply the law of the jurisdiction that issued the first decision (often a state law rule). Accordingly, Third Circuit law should govern here. In any event, the Second Circuit has similarly noted that collateral estoppel will not foreclose relitigation of an issue that was "incident" or "collateral" to a prior final judgment. Halpern v. Schwartz, 426 F.2d 102, 105 (2d Cir. 1970). The Second Circuit explained that an "appeal from the prior judgment by the losing litigant, asserting error in the determination of an issue not central to the judgment, probably would be deemed frivolous by the appellate court, which would affirm without considering the merits of the claim of alleged error." Id.

In this regard, we are not suggesting that in no situation can a non-final ruling ever support collateral estoppel. But the first litigation must at least have reached a stage where the party sought to be collaterally estopped in the second litigation can no longer prevail on a claim of substance, absent eventual reversal of the non-final ruling (whether through appeal or reconsideration by the trial judge). As concisely explained in Toro v. Gainer, 370 F.Supp.2d 736 (N.D.Ill. 2005), as concerns non-final rulings, "[p]reclusive effect is extended to a decision that poses an 'insuperable obstacle' to a party's success on the merits." Id. at 741 (citing Miller

Brewing Co. v. Joseph Schlitz Brewing Co., 605 F.2d 990, 995 (7 Cir. 1979)).  In Miller Brewing,
the Seventh Circuit applied preclusive force to its basis for a holding in an earlier ruling in an
*appeal* from a preliminary injunction because the preliminary injunction ruling necessarily
implicated the merits issues.  (It was also appealable and was actually appealed.)  In Toro, the
district court, using the Miller Brewing test, refused to apply, in the context of a malicious
prosecution suit, collateral estoppel to a preliminary probable-cause ruling in a criminal case,
because the adverse probable-cause ruling was not an "insuperable obstacle" to prevailing (as
confirmed by the eventual acquittal of the civil plaintiff, as the defendant in the previous criminal
case).  In the instant case, the grant of the debtor's motion to intervene, similarly, was obviously
not an "insuperable obstacle" to the government's ultimately prevailing in the Delaware adversary
proceeding.  Similarly, the First Circuit has held that law of the case doctrine is inapplicable where
a party had no reason to appeal a prior ruling at the time of the ruling, because it did not stand as a
serious obstacle to prevailing on the merits.  Field v. Mans, 157 F.3d 35, 40-41 (1st Cir. 1998).

    In the instant case, the entire intervention issue was but a minor procedural ruling in an
adversary proceeding that subsequently proceeded to a merits trial involving weeks of testimony.
If the government loses, it will be hard-pressed to blame that on the order granting intervention
(which is quite distinct from whether it should have been able to have a trustee appointed to
determine whether to waive the debtor's attorney-client privilege).  There is simply no basis to
apply collateral estoppel to the procedural intervention order.[8/]  So, assuming *arguendo* that Judge

_____

8/ While we have focused our argument on the fact that the intervention order was a preliminary
procedural one, we should note that quite a few courts of appeals have flatly refused to give collateraal
estoppel effect to any aspect of a non-final judgment, even on the merits, save those that are non-final
only because a Rule 59 motion is pending.  E.g., Vardon Golf Co., Inc. v. Karsten Manufacturing Corp.,
294 F.3d 1330, 1334 (Fed.Cir. 2002); Gray v. Lacke, 885 F.2d 399, 406-07 (7th Cir. 1989); Humphreys
v. B.I.C. Corp., 1991 WL 4705 at *3 (6th Cir. 1991).  In the Second Circuit, the rule is more flexible.  In
Lummus Co. v. Commonwealth Oil Ref. Co., Inc., 297 F.2d 80, 89 (2d Cir.1961), Judge Friendly
established the rule, which is still good law in this circuit, that, whether a non-final decision should be
accorded preclusive force may depend on "such factors as the nature of the decision (i.e., that it was not
avowedly tentative), the adequacy of the hearing, and the opportunity for review."  Applying the Lummus
test, the Second Circuit has since refused to accord preclusive effect to rulings made as part of a denial of

Walsh's 3/4/02 intervention order carried an implicit approval of the debtor's election to side with the note holders against the bankruptcy estate, Judge Shiff did not have to follow that view.

Moreover, even if Judge Shiff was bound, certainly this District Court *in this appeal* is not bound by the still non-final ruling of a trial judge, in another proceeding, in another district, and in another circuit. A trial court's reasons for granting a motion to intervene cannot possibly tie the hands of a higher level (appellate) court in a related proceeding. See Holloway v. Brush, 220 F.3d 767, 786 n.2 (6th Cir. 2000) ("[o]f course, a [trial] court's decision to adhere to or to deviate from the law of the case cannot bind an appellate court's review of the matter"). Thus, this Court can reverse and instruct the Bankruptcy Court on remand not to treat the government's arguments as barred in any way.

An independent and separate reason why collateral estoppel or law of the case cannot apply here stems from the relationship between the alternative bases for the 3/4/02 order granting the debtor's motion to intervene in the Delaware adversary proceeding. The intervention order was premised foremost on an unassailable determination that there was an absolute statutory right to intervene by the debtor under Third Circuit precedent, without regard to the appropriateness of the debtor's request to do so, or on which side. It follows that the government cannot possibly win reversal of the intervention order in any appeal from a final judgment in the adversary proceeding. Because of that circumstance, the intervention order's fall-back reasoning, that the debtor was entitled to defend its capital structure or had a "duty" to help secured creditors defend against an attack on the validity of a lien that will leave the bankruptcy estate penniless, is essentially dictum in view of the compelling Third Circuit precedent on the statutory right to intervene. See

---

summary judgment, since the ruling could not be appealed as a matter of right, and also emphasizing that such a ruling is tentative as to the merits. Kay-R Elec. Corp. v. Stone & Webster Const. Co., Inc., 23 F.3d 55, 59 (2d Cir. 1994). Similarly, in the instant situation, the Delaware intervention order could not be appealed as a matter of right and it did not even implicate the merits. And, as already noted, the Second Circuit has separately held that rulings of a collateral or incidental nature do not support collateral estoppel. See Halpern.

Schwabenbauer v. Board of Educ. of City School Dist. of City of Olean, 777 F.2d 837, 841-42 (2d Cir. 1985) (dicta does not give rise to issue preclusion).

We submit that where a trial court's mere procedural ruling is explicitly premised on two alternative grounds, one of which is indisputable in light of clear binding precedent identified in the ruling, the other ground cannot properly form the basis for issue preclusion on the merits of an issue in another proceeding between the same parties. See Stebbins v. Keystone Ins. Co., 481 F.2d 501, 508 (D.C.Cir. 1973) (party is not "required to burden the appellate courts with an essentially futile appeal" in order to keep alive a contention without being bound by an alternative ruling).[9] The rule may be otherwise where two alternative grounds for a *final* judgment on the *merits* are not appealed, in which event the Second Circuit has given collateral estoppel effect to both grounds in some cases, although other circuits insist even that is improper. Compare Winters v. Levine, 574 F.2d 46, 66-68 (2d Cir. 1978) (alternative bases for appealable judgments may have preclusive force), with Winters v. Diamond Shamrock Chemical Co., supra, 149 F.3d at 393-94 (no collateral estoppel should be accorded to the decision of a court of first instance where the judgment is based on alternative theories, due to absence of sufficient incentives for appellate review). The inter-circuit conflict and its sources (the Restatement of Judgments first adopted one position and then switched to the other) is discussed in Nat'l Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 909 (6th Cir.2001), in which the Sixth Circuit refused to commit itself for all purposes, but ruled that collateral estoppel is not available for a ruling that is clearly secondary to a more compelling primary ruling. Nat'l Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 909 (6th Cir.2001)

---

[9] The judicial inefficiency that would follow from the Connecticut Bankruptcy Court's expansive view of issue preclusion, if correct, if difficult to overstate. Parties would suddenly be on notice that they must seek leave to appeal to the district courts (and higher) with respect to every single issue of disagreement presented by every single procedural or other pre-trial order in every bankruptcy adversary proceeding or contested matter, solely to avoid having the court's *reasoning* in such pre-trial orders operate as collateral estoppel on the merits in any future disputes, in causes of action the nature of which may not yet even be predictable. We doubt that most of the judges of the district courts would want that to be the law. Fortunately, it is not.

("where ... one ground for the decision is clearly primary and the other only secondary, the secondary ground is not 'necessary to the outcome' for the purposes of issue preclusion").

But even in the Second Circuit, the rule allowing issue preclusion to flow from alternative rulings in a prior case is limited to merits determinations – collateral estoppel will not attach to an issue that is merely collateral to the merits of a final appealable judgment. See Halpern, 426 F.2d at 105. Moreover, even as to merits determinations, the Second Circuit, in Winters v. Levine, held that, although alternative rulings may be given preclusive effect, "[i]f, however, the two lawsuits are not predicated on 'identical' causes of action, . . . the resolution of the issue in the earlier case must have been necessary to the judgment there." 574 F.2d at 56. In the instant case, the fall-back reasoning in the 3/4/02 Delaware intervention order regarding the debtor's right to defend its capital structure was by no stretch "necessary" to the order granting intervention, where the court first observed that the debtor had an unconditional statutory right to intervene under binding Third Circuit precedent. See also Dedham Water v. Cumberland Farms Dairy, 972 F.2d 453, 459 (1st Cir. 1992) ("observations relevant, but not essential, to the determination of the legal questions then before the court" constitute "neither the law of the case nor the stuff of binding precedent").

Quite apart from relying on preclusion from the 3/4/02 intervention order, Judge Shiff, in his 12/3/02 bench ruling leading to the December Order, also held that the government was precluded by the *confirmation order* in the 1996 case from arguing that the escrowed proceeds of the sale of the debtor's assets are not "collateral" of the security interest for the junior PIK notes. If that ruling is not corrected in this appeal, it threatens to side-track the remand proceedings. We refer the Court to pages 60-61 of our opening appeal brief (DI# 35) for a demonstration of why this additional collateral estoppel ruling is patently wrong. In addition, we note that the Delaware Bankruptcy Court has already held that the 1996 confirmation order is not binding on the United States in any way. United States v. State Street Bank and Trust, 303 B.R. 35 (Bankr. Del. 2003) (the IRS was not a "creditor" in the 1996 case and therefore was not bound by anything in the plan

since, under § 1141(d), only creditors and certain other named entities are bound).

In sum, there is no basis for issue preclusion in these appeals or on remand. Accordingly, this Court should consider whether any of the arguments the government made on the merits make a remand unnecessary (subpart B next) or at least clarify that the Bankruptcy Court may consider all of the government's contentions on remand (subpart C below).

> **B.      Once Issue Preclusion is Eliminated, This Court Should Consider Whether the Arguments in the Government's Briefs That, As a Matter of Law, Estate Money May Not be Used to Finance Litigation Against the Estate, Make a Remand Pointless**

This Court only addressed § 363 and the use of estate property in general terms. But the specific restrictions on compensating counsel for a debtor in possession under § 330 negate, as a matter of law, any possibility of a legitimate business reason to authorize the use of estate money, out of the ordinary course of business, to finance the litigation in Delaware. This is not merely an argument for reversing the December Order allowing fees; it is also a reason to reverse the cash collateral authorization in the July Order. The government appealed that authorization primarily because of its endorsement of a substantial ($800,000) litigation budget for the Delaware adversary proceeding and other litigation in Connecticut (such as the opposition to the motion to convert, which was directed at avoiding the appointment of a trustee in order to preserve the Debtor's ability to continue litigating on the side of the note holders in the Delaware litigation).

The argument that § 330 simply does not authorize any compensation for services that can only reduce or otherwise harm the estate economically is presented at pages 62-67 of the United States' opening appeal brief. Unless the argument is barred by collateral estopped (and it is not), it leads irrevocably to the conclusion that there also could be no authorization under § 363 to use estate funds for that purpose. While those arguments cannot be reduced substantially without losing force, we emphasize that "an unbroken chain of authority holds that services rendered for the benefit of the debtor only, and contrary to the interest of the estate, such as opposing issuance

of a turnover order [which would enlarge the estate], cannot be compensated from the estate." In re Global Int'l Airways Corp., 82 B.R. 520, 522 (Bankr. W.D.Mo. 1988). See also id. ("[b]ased upon this eminent and well established principle alone, the court would be compelled to deny the application at bar, even without determining whether applicant counsel were working in the interests of [the CEO] at a time when those interests were directly opposed to those of the estate"). See also In re Reed, 890 F.2d 104, 105-106 (8th Cir. 1989) (overwhelming weight of authority is that use of estate to pay for attorney fees must be for services that are intended to benefit the estate; see also cases cited therein); In re Kendavis Industries Intern., Inc., 91 B.R. 742, 751-52 (Bankr. N.D.Tex. 1988) (estate cannot be used to pay fees for attorneys that actually are defending the interests of the management or owners of the debtor, not the debtor).

This principle was codified in 1994 by the addition of § 330(a)(4)(A)(ii), which expressly prohibits compensation for "services that were not -- (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." Since the "case" administration remains in Connecticut, the Delaware services cannot fall under clause (II) (and in any event would not). In In re Top Grade Sausage, Inc., 227 F.3d 123, 128-30 (3d Cir. 2000), the Third Circuit held that § 330(a)(4) requires that "the debtor's attorney must show that the representation was reasonably likely to benefit the debtor's estate" and affirmed the disallowance of compensation. 227 F.3d at 132. (See discussion of additional cases and additional statutory provisions in the government's opening brief.)

A remand is not invariably required in bankruptcy appeals. Rule 8013 gives district courts the power to modify directly a judgment appealed from. This Court could and should modify the July Order simply to prohibit use of estate funds, at least to the extent the cash collateral order provided for financing the debtor's litigation expenses to support the lien of the junior note holders and to oppose the government's efforts to expunge that lien.

**C.    This Court Should At Least Clarify that the Bankruptcy Court on Remand Should Not Treat the 3/4/02 Intervention Order or the 1996 Confirmation Order As Barring the Government from Making Any Arguments**

If this Court remains unwilling to address the merits of the cash collateral application and application for fees, even to the extent they may be disposed of as a matter of law, then it should at the very least clarify that the Bankruptcy Court on remand should not treat the 3/4/02 Delaware order granting debtor's motion to intervene, or the 1996 confirmation order, as precluding any arguments whatsoever that the government may wish to make on remand. Without at least that clarification, the remand is almost certain to result in another appeal raising many of the exact same legal issues that this Court presently has before it.

**II.    CONVERSION**

**A.    It Is Not Possible to Say that the Bankruptcy Court's Discretion Would Have Been Exercised the Same Way But For Its Belief that the Law of the Case Precluded Considering the Debtor's Conflict of Interest; Where a Trial Court Fails to Consider an Appropriate Factor, An Appellate Court Should Remand, Not Speculate**

Faced with July Order's omission of a cogent explanation for denying conversion, this Court turned to the May 1, 2002 hearing transcript and observed that Judge Shiff had expressed two concerns at that hearing that may have influenced his decision on the motion – risk of disrupting the Delaware adversary proceeding, and the expenses of a Chapter 7 trustee, including compensation under § 326. As demonstrated in subpart C below, these concerns are weak if not wholly illusory. The more important point, however, is that it is beyond cavil that Judge Shiff refused to give any weight whatsoever to the conflict of interest of debtor's management because he felt that argument was precluded.

Preliminarily, the two concerns briefly noted by Judge Shiff at the May 1, 2002 hearing were stated after he insisted that he would not take up the conversion motion at all that day because there had not been adequate notice to creditors. The context of Judge Shiff's mention of the two

concerns was in explaining why he had previously *deferred* the motion to convert several times.  In that regard, he informed AUSA Nevins, as quoted on page 10 of this Court's Opinion, that he was "telegraphing" that "unless I hear a compelling reason different from the reasons I've heard every time [conversion's] come up, that it seems to me that I'm going to stay consistent."  But the original conversion motion had been filed long before the debtor moved to intervene in Delaware.  And, prior to the May 1, 2002 hearing, the government's conflict of interest argument had concerned only the need for a neutral trustee to determine whether to assert § 506(c) as a basis for recovering part of the tax claim from the escrowed funds, even assuming the security interest was upheld.  In the meantime, Judge Shiff had already rejected the § 506(c) argument on the merits.  In the meantime, after the government moved to convert, the Supreme Court held that only a trustee has standing to invoke § 506(c), so the United States sought a trustee in part to renew the § 506(c) argument and then appeal.  Hartford Underwriters, Ins. Co. v. Union Planters Bank, 530 U.S. 1 (2000).  With that history, Judge Shiff did not view the § 506(c) matters as very weighty, and thus would not have been concerned about the conflict of interest in that context.

*After* Judge Shiff "telegraphed" at the May 1, 2002 hearing that he would require some additional reason to convert to Chapter 7, the government, on May 31, 2002, filed a supplement (Chap. 11 case docket item #373) to its long-pending motion, based on recent events, in which it first indicated its arguments that the 21.5% stake of the debtor's management in a recovery by the junior note holders had begun skewing the debtor's litigation decisions.  The government then argued that a trustee would be duty-bound to oppose the security interest for the junior notes, rather than support it.  The government's supplement also used the recently filed cash collateral stipulation as evidence of the "continuing diminution of the estate" – a statutory factor supporting conversion – pointing to the $800,000 litigation budget for just the year 2002.

The motion to convert was then actually formally heard at the June 5, 2002 hearing (not the May 1, 2002 hearing).  At the hearing, government counsel outlined the new arguments in the

supplement to the motion to convert (6/5/02 Tr. at 45-49), and emphasized that a trustee would be required to determine whether to exercise or waive the debtor's attorney-client privilege in the best interest of creditors, rather than in the best interests of the debtor's conflicted management (*ibid.* at 48). All of this was brand new to Judge Shiff, since his prior indication that he had not been shown enough reason to overcome his concern about expense or disruption of the Delaware adversary proceeding.

After the State of Connecticut then spoke in support of all the United States' points, the debtor's primary argument in response was that the government was collaterally estopped from asserting any of them by the 3/4/02 Delaware order granting the debtor's motion to intervene. (*Ibid.* at 55-56.) In fact, this was essentially debtor's entire argument. On rebuttal, government counsel pointed out that debtor's counsel completely ignored the conflict of interest (*ibid.* at 63), reminding the court of the problem of the assertion of the attorney-client privilege, which he argued was a "very significant" issue (*ibid.* at 64-65).

Against this backdrop, the July Order did not mention as a reason for denying conversion either expense or disruption (possibly for the reasons suggested in subpart C below). But the July Order did explicitly observe that the government's primary argument for conversion was the same as its primary basis for objecting to the cash collateral stipulation – the conflict of interest. And, the July Order had already, in overruling the objection to the cash collateral stipulation, squarely held that collateral estoppel from the Delaware intervention order precluded the government's conflict of interest argument.

Based on the foregoing, it is beyond peradventure that Judge Shiff viewed the 3/4/02 Delaware intervention order as precluding the government's conflict of interest argument in support of conversion as well. This left the court weighing only the government's previous arguments resting on § 506(c) and the inability to confirm a plan against the concern about expense and potential disruption of the Delaware adversary proceeding.

And given that, it is simply not possible to say, with any certainty, that the Bankruptcy Court's discretion would have been exercised the same way but for its belief that the law of the case precluded consideration of the conflict of interest of debtor's management, its impact on the debtor's decision to take the side of the junior note holders, its impact on the debtor's assertion of the attorney-client privilege, and its indirect impact on the continuing diminution of the estate (*i.e.*, the $800,000 litigation budget for 2002 alone).

We submit that it is simply not appropriate for this Court now to uphold the supposed exercise of discretion in weighing the reasons in favor of conversion against the reasons to keep the case in Chapter 11, when a central factor in that discretionary determination was a mistake of law in applying collateral estoppel. As stated by the Second Circuit in Ratliff v. Davis Polk & Wardwell, 354 F.3d 165, 168 (2d Cir. 2003), "[w]here a district court exercises its discretion premised on the misapplication of a legal principle, the court by definition abuses its discretion and makes an error of law" (citing Koon v. United States, 518 U.S. 81, 100 (1996). (See also cases in footnote 4 supra.) In O'Hara v. Memorial Sloan-Kettering Cancer Center, supra, the district court entered summary judgment against a claim of employer retaliation based on collateral estoppel and included an explicit fall-back ruling that the record did not "provide a basis on which a rational trier of fact could conclude that the Hospital's stated reason for terminating Plaintiff was a pretext." 79 Fed.Appx. at 475. Upon reversing the mistaken collateral estoppel ruling, the Second Circuit held that "[b]ecause the district court relied principally on collateral estoppel grounds, this alternative holding is not sufficiently detailed to allow meaningful appellate review." Id. It then vacated and remanded to consider aspects of the record that the district court had not addressed or sufficiently explained. Id. at 475-76. That is the more appropriate thing to do here (unless the Court now agrees with the government that, as a matter of law, conversion is required on this record). See also DeShane v. Deere & Co., 726 F.2d 443, 446 (8th Cir. 1984). In DeShane, the court of appeals observed that "[a]s the record now stands we are not in a position to determine

whether the district court considered and properly weighed all the legally relevant factors involved in a forum *non conveniens* ruling." It therefore "vacate[d] the judgment and remand[ed] the case to the district court for appropriate findings and reasons for its resolution of the factual, legal *and discretionary issues* presented." Id. (emphasis added).

> **B.    The Alternative Ways to Address the Conflict Would Not Have Solved the Problems Asserted by the Government in this Case**

This Court's Opinion observes that conflicts of interest on the part of a debtor's management do not invariably require conversion or the appointment of a Chapter 11 Trustee, as there may be other ways to ameliorate the problem. This Court noted that the "reluctance of the debtor to pursue claims against its insider, taken alone, does not justify [a court's] precipitous decision to convert the case." Opn. at 11 (citing In re Ribkov Realty Corp., 1999 WL 529557 at *11 (E.D.N.Y.). That is because, as Ribkov notes, it may be more prudent to allow a third party, such as a creditors committee, to prosecute the action, and conversion is generally disruptive. The Opinion suggests those points "track" the concerns of Judge Shiff stated at the 5/1/02 hearing.

Preliminarily, the disruption concern suggested by Judge Shiff was nothing like the one referred to in Ribkov Realty, which has no relevance in this case. Ribkov Realty was referring to the disruption to the case – *i.e.*, terminating a debtor's effort to reorganize – and not to disrupting the as yet unfiled adversary complaint that a third party might be authorized to prosecute on behalf of the estate. Also, here there is far more than "reluctance" to sue an insider or fraudulent transferee. There is active litigation on the side of insiders in opposition to a suit already filed against them. And, there is no countervailing concern for preserving the ability to reorganize, since it is simply not possible to confirm a plan, as all parties have admitted.

More fundamentally, in the instant case, having a third party represent the estate could not possibly cure the problems created by the conflict. In fact, the United States was already prosecuting an action, and pragmatically for the benefit of the estate (since four state taxing authorities

will collect administrative taxes *pro rata* with the IRS if the United States prevails.)  And, the United States did not need court authorization to object to the secured claim of the note holders or to seek its equitable subordination under § 510(c).  Ribcov Realty was concerned with the kinds of actions that only a trustee can file, such as a fraudulent transfer suit under § 544(b) or § 548.[10/]

The problem in the instant case is not so much the want of prosecution of the action as it is the fact that the debtor has consistently asserted the attorney-client privilege to shield its deliberative process during the 1996 case from government counsel, notwithstanding that intent is a core issue in the Delaware trial.  (During the trial in Delaware, claims of privilege were asserted numerous times.)  Appointing a creditor or creditor's committee to prosecute a suit on behalf of the estate against an insider does not carry with it the right to waive the debtor's attorney-client privilege and the courts have no power to alter that.  Only if a trustee is appointed does the ability to exercise or waive the privilege transfer (to that trustee).  C.F.T.C. v. Weintraub, 471 U.S. 343 (1985).

Moreover, we submit that it is inappropriate for this appellate court to speculate that the kinds of alternatives identified in the Opinion were in the bankruptcy judge's mind, when there is absolutely no reason to believe that they were.  To the contrary, the bankruptcy judge plainly felt that the government was collaterally estopped from raising the conflict of interest.  The task of this Court on appeal is not to ascertain if there is any conceivable set of factors that could have supported an exercise of discretion that would reach the same result; this Court's appellate function is to review what the Bankruptcy Court *actually* considered and to say whether it abused its discretion by either considering an improper factor, refusing to consider a proper one, or reaching a

---

10/ Ironically, in the midst of the Delaware trial, the United States moved for authority to represent the estate by adding a § 544(b) count to its complaint in Delaware in order to conform its pleadings to the evidence under Rule 15(d).  (The United States had consistently been arguing throughout the trial that one way in which there was "inequitable conduct" justifying equitable subordination was that the security interest was transferred in actual fraud of the taxing authorities.)  Judge Shiff transferred the motion to Delaware where it was denied for various reasons not germane here.  The denial was appealed and the Delaware bankruptcy judge granted a government motion to stay the transmittal of the appeal to the Delaware District Court for docketing until he enters a judgment on the merits so the appeal may be consolidated with any appeal on the merits if the issue does not become moot.

result that is outside the boundaries of what is reasonable when all proper factors are considered.

We also note that the Opinion misses the point where it says that the government's contention of management misconduct assumes it will win the Delaware proceeding. Our contention here is not about the "misconduct" in the 1996 grant of the security interest to leapfrog the priority of the worthless junior notes over the inevitable tax with the debtor receiving no cash or other value in exchange. The point in these appeals is that the debtors' management has a conflict of interest due to the 21.5% stake in a recovery for the side that is adverse to the debtor's estate, and that is causing the debtor to litigate against its own estate, and to assert the attorney-client privilege where waiving the privilege might help establish the fraud in the granting of the security interest, and to oppose anything that would shift control to a disinterested trustee who might then waive the privilege.

**C.    The Expense and Disruption Concerns Mentioned At the 5/1/02 Hearing, Which Were Not Part of Any Bench Decision or Included in the July Order, Are Weak or Imaginary and Cannot Outweigh the Other Factors**

The considerations noted by Judge Shiff at the May 1, 2002 hearing were not contained in the July Order or any bench decision, and they actually evaporate when scrutinized. First, the disruption to the adversary proceeding is not an appropriate consideration if the problem to be remedied is that the debtor's activities in the adversary proceeding are the product of its management's conflict of interest. In that situation, disruption is inherently a consequence of any remedy. And, this again confirms the profound effect of the incorrect preclusion ruling, in that it prevented the Bankruptcy Court from considering whether having a new and disinterested fiduciary was an appropriate goal.

Additionally, the Opinion's alternative remedies would have been equally disruptive. There was no creditors committee, and appointing one of the taxing authorities to represent the estate would still remove the debtor as its representative in the Delaware adversary proceeding.

(No committee was created because there was never any chance of a distribution to unsecured prepetition creditors – if the security interest of the junior note holders is expunged, all the escrowed funds will go to pay *postpetition* gains taxes.)

Moreover, discovery had barely begun at the time of the July Order.  The proceedings had been temporarily derailed by summary judgment (which this Court reversed), followed by transfer of venue to Delaware and the government's efforts to get venue transferred back.  And, the judge presiding over the Delaware trial soon thereafter indicated he thought the case should have been converted and failed to understand why it had not been.[11/]

As for the expenses of a Chapter 7 Trustee's commissions and attorney's fees, to which the debtor and Indenture Trustee objected, these could not possibly have been charged against their "collateral" if the security interest were to be upheld in the Delaware adversary proceeding. Simply put, security interests trump priority claims – even administrative (first order) priority claims under paragraph (1) of § 507(a).  In that regard, the tax claim is an administrative expense as well under § 507(a)(1) (and § 503(b)), and it is because security interests trump administration expenses that the United States needed to file the adversary complaint in the first place.

Since the security interest for the junior notes would beat the claims of a Chapter 7 trustee and his attorney for compensation, the only parties in interest that can possibly be harmed by a trustee's commissions or a trustee's attorney's fees are the taxing authorities that jointly moved for conversion, and only if the United States prevails in the Delaware proceeding.  If the United States loses, the funds would go to satisfy the security interest, pursuant to § 725, and there will be nothing to distribute to anyone else (including a Chapter 7 trustee) under § 726.  If the United States prevails in Delaware, the junior notes will receive no recovery whether or not a trustee is

---

11/ At the outset of an October 1, 2003 hearing in the Delaware proceeding, Judge Walsh of the Delaware Bankruptcy Court spontaneously indicated he could not understand why the case had not been converted to Chapter 7.  See Adv. No. 01-4605 (Bankr. Del.), docket item #233 at pp. 4, 6 (available by hyperlink on Pacer system).

appointed and paid from the estate, since the tax claims would have priority and would exhaust the estate. A trustee's fees would come before the administrative tax claims, thus reducing the taxing authorities' *pro rata* distributions that would not satisfy their claims in any event. It follows that the Indenture Trustee for the note holders (as well as debtor's management with their 21.5% stake in any recovery on the junior notes) lacked standing to raise fear of excessive Chapter 7 administration expenses as a basis for objecting to conversion. And, the debtor corporation itself will receive nothing no matter what happens in any of the proceedings anywhere.

Besides, conversion is inevitable since, even if the junior note holders prevail in Delaware, they have already indicated that they would not wish to expose themselves to the consequences of dismissal. During the closing arguments in the Delaware adversary proceeding on June 22, 2007, the lead attorney for the holders of the majority of the junior notes, when asked by Judge Carey (who replaced Judge Walsh) how the defendants would receive a distribution if they win in Delaware, explained that "there can't be a plan" after which Judge Carey asked, "Okay, so if there's no plan, then there's a chapter 7, is that correct?" Defendant's counsel answered: "That seems like the likely alternative," and then further agreed that conversion was more likely than the only other possibility – dismissal of the case. A few moments later, lead counsel for the holders of the majority of the junior notes explained that "there's a trustee at that point and the trustee is essentially bound to pay the proceeds of the sale to the secured claims" that prevailed in Delaware (under the hypothetical). Tr. of 6/22/07 hearing in No. 01-4605 (Bankr.Del.) at pp.160-61. (Attorneys for the other defendants in the adversary proceeding, who spoke thereafter, did not disagree.) The government agrees that no plan can ever be confirmed (because § 1129 gives the IRS the absolute right to prevent a plan that fails to pay the administrative tax claim) and maintains that no final *bankruptcy* disbursement of funds to creditors may lawfully be made without conversion to Chapter 7. The only alternative is dismissal of the entire case, and that would result in the bankruptcy court losing jurisdiction, with potential consequences that we are

confident the junior note holds will not wish to risk, and which we can explain if this Court so

requests. So, in the end, while the Indenture Trustee and debtor continue to pretend, in these

appeals, that they may somehow avoid conversion to Chapter 7, lead counsel for the holder of the

majority of the junior notes has admitted, in the Delaware proceeding, that the Chapter 11 case

must eventually be converted to Chapter 7 regardless of which party prevails there. Stalling that

conversion has no purpose left other than to deprive the United States of the benefits of a trustee in

the meantime (including the possibility that a trustee will release attorney-client communications

and/or join the government's object to the application of debtor's counsel for fees).

### Conclusion

For all of the foregoing reasons, the Court should grant partial rehearing on the cash

collateral and fees issues and either reverse the approval of the use of estate funds to finance any

litigation to help the junior note holders in any way, or at least clarify that the Bankruptcy Court

may, on remand, consider the merits of all of the government's arguments in support of that result.

With respect to conversion, the Court should reverse the conclusion that collateral estoppel or law

of the case precludes the government's conflict of interest arguments or any other arguments in

support of conversion, and should then remand for reconsideration in light of that reversal.

KEVIN J. O'CONNOR
United States Attorney

　　*/s/ Peter Sklarew*　　　　　　　
PETER SKLAREW
Federal Bar No. CT 17864
U.S. Department of Justice, Tax Div.
P.O. Box 55
Washington, D.C. 20044-0055
(202) 307-6571
peter.a.sklarew@usdoj.gov

## CERTIFICATE OF SERVICE

IT IS CERTIFIED that I have caused the foregoing **Motion of the United States for (1) Partial Rehearing on Cash Collateral and Fees . . . and (2) Rehearing on Conversion . . . .** to be electronically filed, which will result in automated electronic service, this  17th  day of September, 2007, for the same by the Court's ECF system and, in addition, to the extent any of the following are not indicated as served on the ECF confirmation notices, I will immediate cause them to be served by other means.

Daniel H. Golden
Akin, Gump, Strauss, Hauer & Feld, LLP
590 Madison Avenue
New York, NY  10022

Craig I. Lifland
Zeisler & Zeisler
558 Clinton Avenue
Bridgeport, CT  06605

Ira Goldman
Shipman & Goodwin
One American Row
Hartford, CT  06103-2819

Patricia Beary
Asst. U.S. Trustee
265 Church Street, Ste. 1103
New Haven, CT  06510-7016

Joan Pilver
Assistant Attorney General
State of Connecticut
55 Elm Street, 5th Floor
Hartford, CT 06141

   /s/ Peter Sklarew
PETER SKLAREW
Federal Bar No. CT 17864
U.S. Department of Justice, Tax Div.
P.O. Box 55
Washington, D.C. 20044-0055
(202) 307-6571