UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re:<br><br>SCOTT CABLE COMMUNICATIONS, INC.,<br><br>　　　　Debtor.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Appellant,<br>　v.<br><br>SCOTT CABLE COMMUNICATIONS, INC. and<br>STATE STREET BANK AND TRUST CO. as<br>Indenture Trustee for certain note holders<br><br>　　　　Appellees | **No. 3:02-CV-1725 (AWT)**<br>(Consolidated Bankruptcy Appeals)<br><br>(Bankr. Ct. Case No. 98-51923) |

**Reply of United States, Addressing Only Procedural Issues, to
the Objection of U.S. Bank (DI# 114), and in Support of
the Motion of Virginia Department of Taxation (DI# 112)
to Present a Statement in Support of U.S. Rehearing Motion**

The Commonwealth of Virginia, Department of Taxation (VDT) has moved for leave to submit a statement in support of the United States' pending motion for rehearing. (DI# 112.) The Indenture Trustee objects (DI#114), arguing that it is "inappropriate for a non-party, at this stage in the proceeding, to file such a pleading in an effort to lend support to a rehearing motion." The United States replies in order to demonstrate (1) that VDT only recently learned of this appeal and any possible interest in being heard herein, and (2) that this Court does have discretion to allow VDT to be heard, and doing so would be consistent with Second Circuit precedent.

**Recent Notification to State Taxing Authorities**

VDT is one of four state taxing authorities that years ago filed 1999 income tax claims in the Chapter 11 case totaling about $3 million.[1/] In 2002, the Connecticut Department of Revenue

---

[1/] Scott Cable sold assets in ten States. There has been no bar date for administrative claims and it remains possible that other States could still file claims for tax on gain from the sale in 1999.

- 1 -

("CDR") joined the United States' in moving for conversion to Chapter 7. When that motion was denied, CDR's counsel indicated to counsel for the United States that it was leaving the appeal to the United States since CDR's claim was only about $60,000. The other State tax claimants (Virginia, California, and Louisiana) were never active in the Chapter 11 case, and thus are supposed to be indirectly represented by the estate's fiduciary – *i.e.*, the debtor in possession.

When Judge Shiff entered the order to show case why the United States' adversary complaint should not be transferred to Delaware, no other State taxing authorities were notified. (*See* pacer docket for Case No. 98-51923 (Bankr. Conn.), DI#s 301, 303.) While CDR was aware of the transfer or became aware soon after it, it appears that the other State taxing authorities have been unaware until recently that the adversary proceeding was even pending, let alone that it had been transferred to Delaware.[2/] The debtor in possession also apparently never notified the other State taxing authorities of the pendency of these appeals. (*See* attached letter from California Franchise Tax Board to debtor's counsel, at ¶ 10 and final paragraph.)

After the United States received the proposed findings and conclusions filed by the defendants in the Delaware adversary proceeding on October 19, 2007, counsel for the United States believed it was his ethical duty to try to inform the four State tax claimants that the defendants in Delaware (including the debtor) had taken the position that the United States lacked standing to prosecute its equitable subordination count, on the premise that only a bankruptcy trustee (or debtor in possession) could do that, and were further arguing that even if the United States could prosecute the action, it could not seek relief for the State taxing authorities. As noted

---

2/ In this connection, it is also noteworthy that neither the debtor's motion to intervene in Delaware nor the Delaware Bankruptcy Court's 3/4/02 order granting that motion were served on anyone other than the parties to the adversary proceeding in Delaware. (*See* pacer docket for Adv. No. 01-4605 (Bankr. Del.), DI# 68-2.) The 3/4/02 order granting intervention by the debtor is the one that Judge Shiff held collaterally estops the United States, in seeking conversion to Chapter 7, from relying on any alleged conflict of interest of the debtor's management. That ruling (collateral estoppel) forms part of the focus of the United States' motion for rehearing in these appeals.

in prior filings, when the Delaware Bankruptcy Court denied the United States' motion for leave to represent the bankruptcy estate in asserting a B.C. § 544(b) defense (under § 502(d)) to the security interest of the junior notes (*i.e.*, seeking to argue the security interest was a fraudulent transfer), the Delaware Bankruptcy Court indicated that it saw little need to grant such authority because the equitable subordination count of the adversary complaint under § 510(c) appeared to that Court to enable the United States to make arguments based on an alleged fraudulent transfer of the security interest. At the time of that ruling, the Delaware defendants had not yet taken the position – subsequently included in their proposed conclusions of law filed after the Delaware trial (as noted in the United States' reply in support of rehearing in these appeals) – that only a trustee could prosecute the equitable subordination action. The Delaware defendants are also arguing that, to the extent the United States is relying on what amounts to a fraudulent transfer of a security interest to prove its claims of "inequitable conduct" justifying subordination, allowing that would circumvent § 544(b)'s explicit limitation of standing to a "trustee" to bring fraudulent transfer actions. Thus, the Delaware defendants argue that § 544(b) "preempts" § 510(c).

Except for Connecticut, none of the State taxing authorities was aware, prior to the government's motion for authority to represent the estate by asserting § 544(b), that the debtor in possession in the Delaware proceeding is not representing their interests.[3/] More crucially, until the State taxing authorities were contacted after the parties in Delaware recently filed their post-trial submissions, no one could predict that the Delaware defendants would begin to argue that the lack of a trustee on the side of the United States in the Delaware adversary proceeding is a fatal flaw in the United States' claims. Accordingly, until recently, VDT had no readily apparent reason

---

3/ VDT first initiated contact with counsel for the United States when it received notice of hearing in the Connecticut Bankruptcy Court on the United States' motion for authority to represent the estate for purposes of § 544(b), in early 2007. That motion was then transferred to Delaware and VDT made inquiry. When the Delaware Bankruptcy Court denied that motion, and gave as part of its reasons that it thought the equitable subordination count made it unnecessary to raise fraudulent transfer claims separately, counsel for the United States informed VDT's counsel.

to seek to be heard in the instant appeal. The California Franchise Tax Board (Ca.FTB), after requesting a considerable volume of materials from counsel for the United States, has sent a letter to counsel for the debtor in possession (copy attached), insisting that the debtor in possession take certain steps to correct the situation in which it is failing to represent the interests of the Ca.FTB.[4/]

### The Court has Discretion to Accept the VDT Submission

Given the fact that VDT was not on notice of these appeals until very recently, the United States submits that VDT has grounds for seeking to be heard even at this late stage, whether in the nature of *amicus curiae* or by intervention in the appeal, or pursuant to 11 U.S.C. § 1109(b). Starting with the latter, § 1109(b) provides that a "party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter" – referring to Chapter 11, which is the current status of the bankruptcy case in Connecticut (although the United States has been seeking to change that). Cf Southern Pacific Transp. Co. v. Voluntary Purchasing Groups, Inc., 227 B.R. 788, 793 (E.D.Tex.,1998) ("right to appear and be heard in bankruptcy cases extends to both trial and appellate court proceedings"). VDT is a "party in interest" in the case since it has filed a $1.3 million administrative claim.

While normally a party in interest would be expected to participate in a contested matter in the bankruptcy court, rather than seeking to be heard for the first time in an appeal, VDT, as already explained above, was unaware of the instant appeals until recently and also had no reason previously to expect that its interests would not be represented by the estate's fiduciary.

It is not uncommon for courts of appeals to consider (or even invite) *amicus* briefs

---

[4/] Counsel for the United States left a message with an attorney in the office of the Louisiana Attorney General who returned the call and left a return message but, when the latter call was returned, that lawyer had left his job and no longer works in that office. Accordingly, the United States believes that Lousiana – which has a claim well over $1 million – remains in the dark about the nature or existence of these appeals as well as the Delaware adversary proceeding.

submitted in support of a petition for rehearing and this has been as true in the Second Circuit as in any other.  E.g., Weil v. Retirement Plan Administrative Committee of Terson Co., Inc., 933 F.2d 106, 107 (2d Cir. 1991) (indicating that IRS was invited to file *amicus* brief after plaintiffs filed a petition for rehearing); Allied Bank Intern. v. Banco Credito Agricola de Cartago, 757 F.2d 516, 519 (2d Cir. 1985) (noting that the government appeared for the first time as amicus in support of rehearing, and that the panel agreed to alter its prior reasoning as a result); Alcoa Steamship Company, Inc. v. M/V Nordic Regent, 654 F.2d 165, 173 n.2 (2d Cir. 1978) (dissenting opinion noting that amicus appearing in support of rehearing had convinced the Court to reverse itself).[5/] See also U. S. ex rel. Frizer v. McMann, 437 F.2d 1312, 1313 (2d Cir. 1971) (indicating that a number of entities had been invited to submit amicus briefs after rehearing en banc was granted).

The fact that VDT's interest is similar to the United States' interests in these appeals should not mean that it is inappropriate to grant it leave to be heard in the nature of *amicus curiae*. Indeed, one of the things required of a party seeking leave to file an amicus brief in an appellate court is to show some actual interest in the outcome of the matter, rather than merely an academic interest.  *See* Fed.R.App.P. 29(a)(1).  *See also* Fed.R.Bankr.P. 8018(b) (suggesting that district courts in bankruptcy appeals may borrow from other procedural norms where there is no explicit rule or other controlling law on a matter of procedure).

Finally, courts of appeals, including the Second Circuit, have sometimes allowed parties to intervene in appeals.  E.g., Corroon v. Reeve, 258 F.3d 86, 90 (2d Cir. 2001); ABB Indus. Systems, Inc. v. Prime Technology, Inc., 120 F.3d 351, 356 (2d Cir. 1997).  See also Doyle v. Suffolk County, 786 F.2d 523, 526 (2d Cir. 1986) (noting that court had "invited" the State to

---

5/ The cases cited in the text are those in which amicus briefs in support of petitions for rehearing were invited or plainly affected the result.  There are many other cases in which it appears that amici appeared in support of rehearing for the first time.  E.g., Xiao Ji Chen v. U.S. Dept. of Justice, 471 F.3d 315, 319 (2d Cir. 2006); Brown v. City of Oneonta, N.Y., 235 F.3d 769, 787 n.13 (2d Cir. 2000); B.F. Goodrich v. Betkoski, 112 F.3d 88, 90 (2d Cir. 1997); Romney v. Lin, 105 F.3d 806, 807, 808 (2d Cir. 1997).

intervene in the appeal, and also noting that the "views" of the New York Attorney General had been invited and received "in lieu of intervention" in another case). We do not suggest intervention be granted here, however, because VDT's circumstances are not identical to that of the United States, and granting intervention could risk creating confusion if the State later determines to make its own motion to convert in the bankruptcy court. For example, since the State taxing authorities are not parties in Delaware, they are not conceivably precluded from making any arguments based on collateral estoppel resulting from the grant of the debtor's motion to intervene in that proceeding. And, as the attached letter from the CFTB indicates, the States may have additional recent grounds for seeking conversion that were not available to the United States in 2002. A possible approach to this problem is indicated by the opinion in <u>Sklaroff v. Rosenberg</u>, 18 Fed.Appx. 28, 30 (2d Cir. 2001), in which the court of appeals indicated that leave to intervene in the appeal had been "contingently granted" and later denied when the Court ruled in a manner that might have been adverse to the intervenor, while instead making clear that it was not bound and its interest could be determined in future proceedings. In other words, the court of appeals was sensitive to the need not to disable the movant inadvertently by granting intervention and then ruling against it when it had not had an opportunity to present its own situation to the trial court.

**Conclusion**

The Court should grant VDT's motion to be heard under § 1109(b) or as *amicus*, while making clear that it is not making VCT an intervening "appellant."

                       KEVIN J. O'CONNOR
                       United States Attorney

                        /s/ Peter Sklarew
                       PETER SKLAREW
                       Federal Bar No. CT 17864
                       U.S. Department of Justice, Tax Div.
                       P.O. Box 55
                       Washington, D.C. 20044-0055
                       (202) 307-6571
                       peter.a.sklarew@usdoj.gov

**CERTIFICATE OF SERVICE**

      IT IS CERTIFIED that I have caused the foregoing **Reply of United States, Addressing Only Procedural Issues, to the Objection of U.S. Bank (DI# 114), and in Support of the Motion of Virginia Department of Taxation (DI# 112) to Present a Statement in Support of U.S. Rehearing Motion** to be electronically filed, which will result in automated electronic service, this  26th  day of December, 2007, for the same by the Court's ECF system and, in addition, to the extent any of the following are not indicated as served on the ECF confirmation notices, I will immediate cause them to be served by mail or other means acceptable to them.

| | |
|---|---|
| Daniel H. Golden<br>Akin, Gump, Strauss, Hauer & Feld, LLP<br>590 Madison Avenue<br>New York, NY  10022 | United States Trustee's Office<br>265 Church Street, Ste. 1103<br>New Haven, CT  06510-7016 |
| Craig I. Lifland<br>Zeisler & Zeisler<br>558 Clinton Avenue<br>Bridgeport, CT  06605 | Joan Pilver<br>Assistant Attorney General<br>State of Connecticut<br>55 Elm Street, 5th Floor<br>Hartford, CT 06141 |
| Ira Goldman<br>Shipman & Goodwin<br>One American Row<br>Hartford, CT  06103-2819 | Marc K. Ames<br>2812 Emerywood Pkwy, #220<br>Richmond, VA  23294 |

                                         */s/ Peter Sklarew*
                                         PETER SKLAREW
                                         Federal Bar No. CT 17864
                                         U.S. Department of Justice, Tax Div.
                                         P.O. Box 55
                                         Washington, D.C. 20044-0055
                                         (202) 307-6571